# EXHIBIT A





# Glancy Prongay & Murray LLP Files Securities Class Action on Behalf of Cadence Bancorporation Investors

September 16, 2019 04:10 PM Eastern Daylight Time

LOS ANGELES--(BUSINESS WIRE)--Glancy Prongay & Murray LLP ("GPM") announces that it has filed a class action lawsuit in the United States District Court for the Southern District of Texas captioned *Miller v. Cadence Bancorporation et al.*, (Case No 4:19-cv-03492), on behalf of persons and entities that purchased or otherwise acquired Cadence Bancorporation (NYSE: CADE) ("Cadence" or the "Company") securities between **July 23, 2018 and July 22, 2019**, inclusive (the "Class Period"). Plaintiff pursues claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

Investors are hereby notified that they have **60 days from the date of this notice** to move the Court to serve as lead plaintiff in this action.

If you are a shareholder who suffered a loss, click here to participate.

On July 22, 2019, the Company disclosed that "higher credit costs including net charge-offs of $18.6 million and loan provisions of $28.9 million" negatively impacted its second quarter 2019 financial results.

On this news, shares of Cadence fell $3.75 per share, or over 19%, to close at $15.86 per share on July 22, 2019, thereby injuring investors.

The complaint filed in this class action alleges that throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company lacked adequate internal controls to assess credit risk; (2) that, as a result, certain of the Company's loans posed an increased risk of loss; (3) that, as a result, the Company was reasonably likely to incur significant losses for certain loans; (4) that the Company's financial results would suffer a material adverse impact; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

Follow us for updates on Twitter: twitter.com/GPM_LLP.

If you purchased Cadence securities during the Class Period, you may move the Court no later than **60 days from the date of this notice** to ask the Court to appoint you as lead plaintiff. To be a member of the Class you need not take any action at this time; you may retain counsel of your choice or take no action and remain an absent member of the Class. If you wish to learn more about this action, or if you have any questions concerning this announcement or your rights or interests with respect to these matters, please contact Lesley Portnoy, Esquire, of GPM, 1925 Century Park East, Suite

2100, Los Angeles, California 90067 at 300-201-9150, Toll-Free at 888-773-9224, by email to shareholders@glancylaw.com, or visit our website at www.glancylaw.com. If you inquire by email please include your mailing address, telephone number and number of shares purchased.

This press release may be considered Attorney Advertising in some jurisdictions under the applicable law and ethical rules.

Contacts

Glancy Prongay and Murray LLP, Los Angeles

Lesley Portnoy, 310-201-9150 or 888-773-9224

www.glancylaw.com

shareholders@glancylaw.com

$Cashtags

$CADE

# EXHIBIT B

## SWORN CERTIFICATION OF PLAINTIFF

## CADENCE BANCORPORATION SECURITIES LITIGATION

I, Frank Miller, certify that:

1.  I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.  I am duly authorized to institute legal action Cadence Bancorporation and other defendants.

3.  I did not purchase Cadence Bancorporation securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

4.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

5.  My transactions in Cadence Bancorporation securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

6.  I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years.

7.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

9/12/19
Date

Frank Miller

**Frank Miller's Transactions in Cadence Bancorporation (CADE)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 10/2/2018 | Bought | 600 | $25.7000 |

**Submission Date**

2019-11-04 15:13:27

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.    I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Cadence Bancorporation ("Cadence" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Cadence securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Cadence securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Cadence securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

# Name

**Print Name**

Patrick Gordon

**Signature**



**Full Name**

Patrick Gordon

**Cadence Bancorporation (CADE)**                                                           **Gordon, Patrick**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|------------------------|----------------------|
| 5/1/2019 | Purchase | 430 | $22.4500 |

# EXHIBIT C

# Loss Chart

**Company Name:**  Cadence Bancorporation
**Ticker:**  CADE
**Class Period:**  July 23, 2018 to July 22, 2019

**Name:**  Frank Miller

| Date | Shares | Price Bought | Total Bought | Price Sold | Total Sold | Balance |
|------|--------|--------------|--------------|------------|------------|---------|
| 10/2/2018 | 600 | $25.7000 | -$15,420.0000 | | $0.0000 | -$15,420.00 |
| 8/28/2019[ii] | -600 | | $0.0000 | $15.7941 | $9,476.4445 | $9,476.44 |

| | | | | | | |
|------|--------|--------------|--------------|------------|------------|---------|
| **Shares Remaining:** | **0** | | | | **Subtotal:** | **-$5,943.56** |
| | | | **90-Day Average Price[i]** | **Shares Remaining** | **90-Day Average:** | $0.00 |
| | | | $16.4935 | 0 | **Total:** | **-$5,943.56** |

**Name:**  Patrick Gordon

| Date | Shares | Price Bought | Total Bought | Price Sold | Total Sold | Balance |
|------|--------|--------------|--------------|------------|------------|---------|
| 5/1/2019 | 430 | $22.4500 | -$9,653.5000 | | $0.0000 | -$9,653.50 |

| | | | | | | |
|------|--------|--------------|--------------|------------|------------|---------|
| **Shares Remaining:** | **430** | | | | **Subtotal:** | **-$9,653.50** |
| | | | **90-Day Average Price[i]** | **Shares Remaining** | **90-Day Average:** | $7,092.20 |
| | | | $16.4935 | 430 | **Total:** | **-$2,561.30** |

(i) Using the average closing price between July 23, 2019 and October 18, 2019

Note: post-class period sales valued using the greater of: (ii) the average closing price between the end of the class period and the sales date or (iii) the actual sales price

| Loss Summary | |
|-------------|---------|
| Frank Miller | -$5,943.56 |
| Patrick Gordon | -$2,561.30 |
| **Group Loss:** | **-$8,504.85** |

# EXHIBIT D



1925 Century Park East, Suite 2100
Los Angeles, CA 90067
T: 310.201.9150

**FIRM RESUME**

**Glancy Prongay & Murray LLP** (the "Firm") has represented investors, consumers and employees for over 25 years. Based in Los Angeles, with offices in New York City and Berkeley, the Firm has successfully prosecuted class action cases and complex litigation in federal and state courts throughout the country.  As Lead Counsel, Co-Lead Counsel, or as a member of Plaintiffs' Counsel Executive Committees, the Firm's attorneys have recovered billions of dollars for parties wronged by corporate fraud, antitrust violations and malfeasance. Indeed, the Institutional Shareholder Services unit of RiskMetrics Group has recognized the Firm as one of the top plaintiffs' law firms in the United States in its Securities Class Action Services report for every year since the inception of the report in 2003.  The Firm's efforts have been publicized in major newspapers such as the *Wall Street Journal*, the *New York Times*, and the *Los Angeles Times*.

Glancy Prongay & Murray's commitment to high quality and excellent personalized services has boosted its national reputation, and we are now recognized as one of the premier plaintiffs' firms in the country. The Firm works tenaciously on behalf of clients to produce significant results and generate lasting corporate reform.

The Firm's integrity and success originate from our attorneys, who are among the brightest and most experienced in the field. Our distinguished litigators have an unparalleled track record of investigating and prosecuting corporate wrongdoing. The Firm is respected for both the zealous advocacy with which we represent our clients' interests as well as the highly-professional and ethical manner by which we achieve results. We are ideally positioned to pursue securities, antitrust, consumer, and derivative litigation on behalf of our clients. The Firm's outstanding accomplishments are the direct result of the exceptional talents of our attorneys and employees.

**SECURITIES CLASS ACTION SETTLEMENTS**

Appointed as Lead or Co-Lead Counsel by judges throughout the United States, Glancy Prongay & Murray has achieved significant recoveries for class members in numerous securities class actions, including:

*In re Mercury Interactive Corporation Securities Litigation*, USDC Northern District of California, Case No. 05-3395-JF, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at over $117 million.

*In re Real Estate Associates Limited Partnership Litigation*, USDC Central District of California, Case No. 98-7035-DDP, in which the Firm served as local counsel and

plaintiffs achieved a $184 million jury verdict after a complex six week trial in Los Angeles, California and later settled the case for $83 million.

*In Re Yahoo! Inc. Securities Litigation*,  USDC Northern District of California, Case No. 5:17-cv-00373-LHK, in which the Firm served as Co-Lead Counsel and achieved an $80 million settlement.

*The City of Farmington Hills Employees Retirement System v. Wells Fargo Bank, N.A.*, USDC District of Minnesota, Case No. 10-cv-04372-DWF/JJG, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at $62.5 million.

*Schleicher v. Wendt*, (Conseco Securities Litigation), USDC Southern District of Indiana, Case No. 02-1332-SEB, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of over $41 million.

*Robb v. Fitbit, Inc.*, USDC Northern District of California, Case No. 3:16-cv-00151, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of $33 million.

*Yaldo v. Airtouch Communications*, State of Michigan, Wayne County, Case No. 99-909694-CP, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at over $32 million for defrauded consumers.

*Lapin v. Goldman Sachs*, USDC Southern District of New York, Case No. 03-0850-KJD, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $29 million.

*In re Heritage Bond Litigation*, USDC Central District of California, Case No. 02-ML-1475-DT, where as Co-Lead Counsel, the Firm recovered in excess of $28 million for defrauded investors and continues to pursue additional defendants.

*In re Livent, Inc. Noteholders Litigation*, USDC Southern District of New York, Case No. 99 Civ 9425-VM, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of over $27 million.

*In re ECI Telecom Ltd. Securities Litigation*, USDC Eastern District of Virginia, Case No. 01-913-A, in which the Firm served as sole Lead Counsel and recovered almost $22 million for defrauded ECI investors.

*Senn v. Sealed Air Corporation*, USDC New Jersey, Case No. 03-cv-4372-DMC, a securities fraud class action, in which the Firm acted as co-lead counsel for the Class and achieved a settlement of $20 million.

*In re Gilat Satellite Networks, Ltd. Securities Litigation*, USDC Eastern District of New York, Case No. 02-1510-CPS, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $20 million.

New York  |  Los Angeles  |  Berkeley
**www.glancylaw.com**

*In re Lumenis, Ltd. Securities Litigation*, USDC Southern District of New York, Case No.02-CV-1989-DAB, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at over $20 million.

*In re Infonet Services Corporation Securities Litigation*, USDC Central District of California, Case No. CV 01-10456-NM, in which as Co-Lead Counsel, the Firm achieved a settlement of $18 million.

*In re ESC Medical Systems, Ltd. Securities Litigation*, USDC Southern District of New York, Case No. 98 Civ. 7530-NRB, a securities fraud class action in which the Firm served as sole Lead Counsel for the Class and achieved a settlement valued in excess of $17 million.

*In re Musicmaker.com Securities Litigation*, USDC Central District of California, Case No. 00-02018-CAS, a securities fraud class action in which the Firm was sole Lead Counsel for the Class and recovered in excess of $13 million.

*In re Lason, Inc. Securities Litigation*, USDC Eastern District of Michigan, Case No. 99 76079-AJT, in which the Firm was Co-Lead Counsel and recovered almost $13 million for defrauded Lason stockholders.

*In re Inso Corp. Securities Litigation*, USDC District of Massachusetts, Case No. 99 10193-WGY, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of $12 million.

*In re National TechTeam Securities Litigation*, USDC Eastern District of Michigan, Case No. 97-74587-AC, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of $11 million.

*Taft v. Ackermans (KPNQwest Securities Litigation)*, USDC Southern District of New York, Case No. 02-CV-07951-PKL, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement worth $11 million.

*Jenson v. First Trust Corporation*, USDC Central District of California, Case No. 05-cv-3124-ABC, in which the Firm was appointed sole lead counsel and achieved an $8.5 million settlement in a very difficult case involving a trustee's potential liability for losses incurred by investors in a Ponzi scheme. Kevin Ruf of the Firm also successfully defended in the 9th Circuit Court of Appeals the trial court's granting of class certification in this case.

*In re Ramp Networks, Inc. Securities Litigation*, USDC Northern District of California, Case No. C-00-3645-JCS, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of nearly $7 million.

*Capri v. Comerica, Inc.*, USDC Eastern District of Michigan, Case No. 02-CV-60211-MOB, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $6.0 million.

New York    |    Los Angeles    |    Berkeley
**www.glancylaw.com**

*Plumbing Solutions Inc. v. Plug Power, Inc.*, USDC Eastern District of New York, Case No. CV 00 5553-ERK, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of over $5 million.

*Ree v. Procom Technologies, Inc.*, USDC Southern District of New York, Case No. 02-CV-7613-JGK, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $2.7 million.

*Tatz v. Nanophase Technologies Corp.*, USDC Northern District of Illinois, Case No. 01-C-8440-MCA, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $2.5 million.

*In re F & M Distributors Securities Litigation*, USDC Eastern District of Michigan, Case No. 95 CV 71778-DT, a securities fraud class action in which the Firm served on the Executive Committee and helped secure a $20.25 million settlement.

## ANTITRUST PRACTICE GROUP AND ACHIEVEMENTS

Glancy Prongay & Murray's Antitrust Practice Group focuses on representing individuals and entities that have been victimized by unlawful monopolization, price-fixing, market allocation, and other anti-competitive conduct. The Firm has prosecuted significant antitrust cases and has helped individuals and businesses recover billions of dollars. Prosecuting civil antitrust cases under federal and state laws throughout the country, the Firm's Antitrust Practice Group represents consumers, businesses, and Health and Welfare Funds and seeks injunctive relief and damages for violations of antitrust and commodities laws. The Firm has served, or is currently serving, as Lead Counsel, Co-Lead Counsel or Class Counsel in a substantial number of antitrust class actions, including:

*In re Nasdaq Market-Makers Antitrust Litigation*, USDC Southern District of New York, Case No. 94 C 3996-RWS, MDL Docket No. 1023, a landmark antitrust lawsuit in which the Firm filed the first complaint against all of the major NASDAQ market makers and served on Plaintiffs' Counsel's Executive Committee in a case that recovered $900 million for investors.

*Sullivan v. DB Investments*, USDC District of New Jersey, Case No. No. 04-cv-2819, where the Firm served as Co-Lead Settlement Counsel in an antitrust case against DeBeers relate to the pricing of diamonds that settled for $295 million.

*In re Korean Air Lines Antitrust Litig.*, USDC Central District of California, Master File No. CV 07-05107 SJO(AGRx), MDL No. 07-0189, where the Firm served as Co-Lead Counsel in a case related to fixing of prices for airline tickets to Korea that settled for $86 million.

New York    |    Los Angeles    |    Berkeley
**www.glancylaw.com**

*In re Urethane Chemical Antitrust Litig*., USDC District of Kansas, Case No. MDL 1616, where the Firm served as Co-Lead counsel in an antitrust price fixing case that settled $33 million.

*In re Western States Wholesale Natural Gas Litig*., USDC District of Nevada, Case No. MDL 1566, where the Firm served as Class Counsel in an antitrust price fixing case that settled $25 million.

*In re Aggrenox Antitrust Litig.,* USDC District of Connecticut, Case No. 14-cv-2516, where the Firm played a major role in achieving a settlement of $54,000,000.

*In re Solodyn Antitrust Litig.,* USDC District of Massachusetts, Case No. MDL 2503, where the Firm played a major role in achieving a settlement of $43,000,000.

*In re Generic Pharmaceuticals Pricing Antitrust Litig*., USDC Eastern District of Pennsylvania, Case No. 16-md-2427, where the Firm is representing a major Health and Welfare Fund in a case against a number of generic drug manufacturers for price fixing generic drugs.

*In re Actos End Payor Antitrust Litig*., USDC Southern District of New York, Case No. 13-cv-9244, where the Firm is serving on Plaintiffs' Executive Committee.

*In re Heating Control Panel Direct Purchaser* Action, USDC Eastern District of Michigan, Case No. 12-md-02311, representing a recreational vehicle manufacturer in a price-fixing class action involving direct purchasers of heating control panels.

*In re Instrument Panel Clusters Direct Purchaser Action,* USDC Eastern District of Michigan, Case No. 12-md-02311, representing a recreational vehicle manufacturer in a price-fixing class action involving direct purchasers of instrument panel clusters.

In addition, the Firm is currently involved in the prosecution of many market manipulation cases relating to violations of antitrust and commodities laws, including *Sullivan v. Barclays PLC* (manipulation of Euribor rate), *In re Foreign Exchange Benchmark Rates Antitrust Litig*., *In re LIBOR-Based Financial Instruments Antitrust Litig*., *In re Gold Futures & Options Trading Litig*., *In re Platinum & Palladium Antitrust Litig*., *Sonterra Cap. Master Fund v. Credit Suisse Group AG* (Swiss Libor rate manipulation), *Twin City Iron Pension Fund v. Bank of Nova Scotia* (manipulation of treasury securities), and *Ploss v. Kraft Foods Group* (manipulation of wheat prices).

Glancy Prongay & Murray has been responsible for obtaining favorable appellate opinions which have broken new ground in the class action or securities fields, or which have promoted shareholder rights in prosecuting these actions.  The Firm successfully argued the appeals in a number of cases:

In *Smith v. L'Oreal*, 39 Cal.4th 77 (2006), Firm partner Kevin Ruf established ground-breaking law when the California Supreme Court agreed with the Firm's position that

New York     |     Los Angeles     |     Berkeley
**www.glancylaw.com**

waiting penalties under the California Labor Code are available to *any* employee after termination of employment, regardless of the reason for that termination.

## OTHER NOTABLE ACHIEVEMENTS

Other notable Firm cases are: *Silber v. Mabon I*, 957 F.2d 697 (9th Cir. 1992) and *Silber v. Mabon II*, 18 F.3d 1449 (9th Cir. 1994), which are the leading decisions in the Ninth Circuit regarding the rights of opt-outs in class action settlements. In *Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000), the Firm won a seminal victory for investors before the Second Circuit Court of Appeals, which adopted a more favorable pleading standard for investors in reversing the District Court's dismissal of the investors' complaint. After this successful appeal, the Firm then recovered millions of dollars for defrauded investors of the GT Interactive Corporation. The Firm also argued *Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002), *as amended*, 320 F.3d 905 (9th Cir. 2003), and favorably obtained the substantial reversal of a lower court's dismissal of a cutting edge, complex class action initiated to seek redress for a group of employees whose stock options were improperly forfeited by a giant corporation in the course of its sale of the subsidiary at which they worked.

The Firm is also involved in the representation of individual investors in court proceedings throughout the United States and in arbitrations before the American Arbitration Association, National Association of Securities Dealers, New York Stock Exchange, and Pacific Stock Exchange. Mr. Glancy has successfully represented litigants in proceedings against such major securities firms and insurance companies as A.G. Edwards & Sons, Bear Stearns, Merrill Lynch & Co., Morgan Stanley, PaineWebber, Prudential, and Shearson Lehman Brothers.

One of the Firm's unique skills is the use of "group litigation" - the representation of groups of individuals who have been collectively victimized or defrauded by large institutions. This type of litigation brought on behalf of individuals who have been similarly damaged often provides an efficient and effective economic remedy that frequently has advantages over the class action or individual action devices. The Firm has successfully achieved results for groups of individuals in cases against major corporations such as Metropolitan Life Insurance Company, and Occidental Petroleum Corporation.

Glancy Prongay & Murray LLP currently consists of the following attorneys:

## PARTNERS

**LEE ALBERT**, a partner, was admitted to the bars of the Commonwealth of Pennsylvania, the State of New Jersey, and the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey in 1986. He received his B.S. and M.S. degrees from Temple University and Arcadia University in 1975 and 1980, respectively, and received his J.D. degree from Widener University School of Law in 1986. Upon graduation from law school, Mr. Albert spent several years working as a

civil litigator in Philadelphia, PA.  Mr. Albert has extensive litigation and appellate practice experience having argued before the Supreme and Superior Courts of Pennsylvania and has over fifteen years of trial experience in both jury and non-jury cases and arbitrations.  Mr. Albert has represented a national health care provider at trial obtaining injunctive relief in federal court to enforce a five-year contract not to compete on behalf of a national health care provider and injunctive relief on behalf of an undergraduate university.

Currently, Mr. Albert represents clients in all types of complex litigation including matters concerning violations of federal and state antitrust and securities laws, mass tort/product liability and unfair and deceptive trade practices.  Some of Mr. Albert's current major cases include *In Re Automotive Wire Harness Systems Antitrust Litigation* (E.D. Mich.*); In Re Heater Control Panels Antitrust Litigation* (E.D. Mich.); *Kleen Products, et al. v. Packaging Corp. of America* (N.D. Ill.); *and In re Class 8 Transmission Indirect Purchaser Antitrust Litigation* (D. Del.).  Previously, Mr. Albert had a significant role in *Marine Products Antitrust Litigation* (C.D. Cal.); *Baby Products Antitrust Litigation* (E.D. Pa.); *In re ATM Fee Litigation* (N.D. Cal.); *In re Canadian Car Antitrust Litigation* (D. Me.); *In re Broadcom Securities Litigation* (C.D. Cal.); and has worked on *In re Avandia Marketing, Sales Practices and Products Liability Litigation* (E.D. Pa.); *In re Ortho Evra Birth Control Patch Litigation* (N.J. Super. Ct., Middlesex County); *In re AOL Time Warner, Inc. Securities Litigation* (S.D.N.Y.); *In re WorldCom, Inc. Securities Litigation* (S.D.N.Y.); and *In re Microsoft Corporation Massachusetts Consumer Protection Litigation* (Mass. Super. Ct.).

**PETER A. BINKOW** has prosecuted lawsuits on behalf of consumers and investors in state and federal courts throughout the United States.  He served as Lead or Co-Lead Counsel in many class action cases, including: *In re Mercury Interactive Securities Litigation* ($117.5 million recovery); *The City of Farmington Hills Retirement System v Wells Fargo* ($62.5 million recovery); *Schleicher v Wendt* (Conseco Securities litigation - $41.5 million recovery); *Lapin v Goldman Sach*s ($29 million recovery); *In re Heritage Bond Litigation* ($28 million recovery); *In re National Techteam Securities Litigation* ($11 million recovery for investors); *In re Lason Inc. Securities Litigation* ($12.68 million recovery), *In re ESC Medical Systems, Ltd. Securities Litigation* ($17 million recovery); and many others.  In *Schleicher v Wendt*, Mr. Binkow successfully argued the seminal Seventh Circuit case on class certification, in an opinion authored by Chief Judge Frank Easterbrook. He has argued and/or prepared appeals before the Ninth Circuit, Seventh Circuit, Sixth Circuit and Second Circuit Courts of Appeals.

Mr. Binkow joined the Firm in 1994.  He was born on August 16, 1965 in Detroit, Michigan.  Mr. Binkow obtained a Bachelor of Arts degree from the University of Michigan in 1988 and a Juris Doctor degree from the University of Southern California in 1994.

**JOSEPH D. COHEN** has extensive complex civil litigation experience, and currently oversees the firm's settlement department, negotiating, documenting and obtaining court approval of the firm's securities, merger and derivative settlements.

Prior to joining the firm, Mr. Cohen successfully prosecuted numerous securities fraud, consumer fraud, antitrust and constitutional law cases in federal and state courts throughout the country.  Cases in which Mr. Cohen took a lead role include: *Jordan v. California Dep't of Motor Vehicles*, 100 Cal. App. 4th 431 (2002) (complex action in which the California Court of Appeal held that California's Non-Resident Vehicle $300 Smog Impact Fee violated the Commerce Clause of the United States Constitution, paving the way for the creation of a $665 million fund and full refunds, with interest, to 1.7 million motorists); *In re Geodyne Res., Inc. Sec. Litig.* (Harris Cty. Tex.) (settlement of securities fraud class action, including related litigation, totaling over $200 million); *In re Cmty. Psychiatric Centers Sec. Litig.* (C.D. Cal.) (settlement of $55.5 million was obtained from the company and its auditors, Ernst & Young, LLP); *In re McLeodUSA Inc., Sec. Litig.* (N.D. Iowa) ($30 million settlement); *In re Arakis Energy Corp. Sec. Litig.* (E.D.N.Y.) ($24 million settlement); *In re Metris Cos., Inc., Sec. Litig.* (D. Minn.) ($7.5 million settlement); *In re Landry's Seafood Rest., Inc. Sec. Litig.* (S.D. Tex.) ($6 million settlement); and *Freedman v. Maspeth Fed. Loan and Savings Ass'n*, (E.D.N.Y) (favorable resolution of issue of first impression under RESPA resulting in full recovery of improperly assessed late fees).

Mr. Cohen was also a member of the teams that obtained substantial recoveries in the following cases: *In re: Foreign Exchange Benchmark Rates Antitrust Litig.* (S.D.N.Y.) (partial settlements of approximately $2 billion); *In re Washington Mutual Mortgage-Backed Sec. Litig.* (W.D. Wash.) (settlement of $26 million); *Mylan Pharm., Inc. v. Warner Chilcott Public Ltd. Co.* (E.D. Pa.) ($8 million recovery in antitrust action on behalf of class of indirect purchasers of the prescription drug Doryx); *City of Omaha Police and Fire Ret. Sys. v. LHC Group, Inc.* (W.D. La.) (securities class action settlement of $7.85 million); and *In re Pacific Biosciences of Cal., Inc. Sec. Litig.* (Cal. Super. Ct.) ($7.6 million recovery).

In addition, Mr. Cohen was previously the head of the settlement department at Bernstein Litowitz Berger & Grossmann LLP.  While at BLB&G, Mr. Cohen had primary responsibility for overseeing the team working on the following settlements, among others: *In Re Merck & Co., Inc. Sec., Deriv. & "ERISA" Litig.* (D.N.J.) ($1.062 billion securities class action settlement); *New York State Teachers' Ret. Sys. v. General Motors Co.* (E.D. Mich.) ($300 million securities class action settlement); *In re JPMorgan Chase & Co. Sec. Litig.* (S.D.N.Y.) ($150 million settlement); *Dep't of the Treasury of the State of New Jersey and its Division of Inv. v. Cliffs Natural Res. Inc., et al.* (N.D. Ohio) ($84 million securities class action settlement); *In re Penn West Petroleum Ltd. Sec. Litig.* (S.D.N.Y.) ($19.76 million settlement); and *In re BioScrip, Inc. Sec. Litig.* ($10.9 million settlement).

**JOSHUA L. CROWELL**, a partner in the firm's Los Angeles office, concentrates his practice on prosecuting complex securities cases on behalf of investors.

Recently, he was co-lead counsel in *In re Yahoo! Inc. Securities Litigation*, No. 17-CV-00373-LHK (N.D. Cal.), which resulted in an $80 million settlement for the class. He also led the prosecution of *In re Akorn, Inc. Securities Litigation*, No. 1:15-cv-01944 (N.D. Ill.), achieving a $24 million class settlement.

Prior to joining Glancy Prongay & Murray LLP, Joshua was an Associate at Labaton Sucharow LLP in New York, where he substantially contributed to some of the firm's biggest successes. There he helped secure several large federal securities class settlements, including:

- *In re Countrywide Financial Corp. Securities Litigation*, No. CV 07-05295 MRP (MANx) (C.D. Cal.) – $624 million

- *In re Schering-Plough Corp. / ENHANCE Securities Litigation*, No. 08-397 (DMC) (JAD) (D.N.J.) – $473 million

- *In re Broadcom Corp. Class Action Litigation*, No. CV-06-5036-R (CWx) (C.D. Cal.) – $173.5 million

- *In re Fannie Mae 2008 Securities Litigation*, No. 08-civ-7831-PAC (S.D.N.Y.) – $170 million

- *Oppenheimer Champion Fund* and *Core Bond Fund* actions, Nos. 09-cv-525-JLK-KMT and 09-cv-1186-JLK-KMT (D. Colo.) – $100 million combined

He began his legal career as an Associate at Paul, Hastings, Janofsky & Walker LLP in New York, primarily representing financial services clients in commercial litigation.

Super Lawyers has selected Joshua as a Rising Star in the area of Securities Litigation from 2015 through 2017.

Prior to attending law school, Mr. Joshua was a Senior Economics Consultant at Ernst & Young LLP, where he priced intercompany transactions and calculated the value of intellectual property. Joshua received a J.D., cum laude, from The George Washington University Law School. During law school, he was a member of The George Washington Law Review and the Mock Trial Board. He was also a law intern for Chief Judge Edward J. Damich of the United States Court of Federal Claims. Joshua earned a B.A. in International Relations from Carleton College.

**LIONEL Z. GLANCY**, a graduate of University of Michigan Law School, is the founding partner of the Firm.  After serving as a law clerk for United States District Judge Howard McKibben, he began his career as an associate at a New York law firm concentrating in securities litigation.  Thereafter, he started a boutique law firm specializing in securities litigation, and other complex litigation, from the Plaintiff's perspective.  Mr. Glancy has established a distinguished career in the field of securities litigation over the last fifteen years, having appeared and been appointed lead counsel on behalf of aggrieved investors in securities class action cases throughout the country.  He has appeared and argued before dozen of district courts and a number of appellate courts.  His efforts have resulted in the recovery of hundreds of millions of dollars in settlement proceeds for huge classes of shareholders.  Well known in securities law, he has lectured on its developments and practice, including having lectured before Continuing Legal Education seminars and law schools.

Mr. Glancy was born in Windsor, Canada, on April 4, 1962.  Mr. Glancy earned his undergraduate degree in political science in 1984 and his Juris Doctor degree in 1986,

New York    |    Los Angeles    |    Berkeley
**www.glancylaw.com**

both from the University of Michigan.  He was admitted to practice in California in 1988, and in Nevada and before the U.S. Court of Appeals, Ninth Circuit, in 1989.

**MARC L. GODINO** has extensive experience successfully litigating complex, class action lawsuits as a plaintiffs' lawyer. Since joining the firm in 2005, Mr. Godino has played a primary role in cases resulting in settlements of more than $100 million.  He has prosecuted securities, derivative, merger & acquisition, and consumer cases throughout the country in both state and federal court, as well as represented defrauded investors at FINRA arbitrations.  Mr. Godino manages the Firm's consumer class action department.

While a senior associate with Stull Stull & Brody, Mr. Godino was one of the two primary attorneys involved in *Small v. Fritz Co.*, 30 Cal. 4th 167 (April 7, 2003), in which the California Supreme Court created new law in the State of California for shareholders that held shares in detrimental reliance on false statements made by corporate officers.  The decision was widely covered by national media including *The National Law Journal*, the *Los Angeles Times*, the *New York Times*, and the *New York Law Journal*, among others, and was heralded as a significant victory for shareholders.

Mr. Godino's successes with Glancy Prongay & Murray LLP include: *Good Morning To You Productions Corp., et al., v. Warner/Chappell Music, Inc., et al.*, Case No. 13-04460 (C.D. Cal.) (In this highly publicized case that attracted world-wide attention, Plaintiffs prevailed on their claim that the song "Happy Birthday" should be in the public domain and achieved a $14,000,000 settlement to class members who paid a licensing fee for the song); *Ord v. First National Bank of Pennsylvania,* Case No. 12-766 (W. D. Pa.) ($3,000,000 settlement plus injunctive relief); *Pappas v. Naked Juice Co. of Glendora, Inc.,* Case No. 11-08276 (C.D. Cal.) ($9,000,000 settlement plus injunctive relief);*Astiana v. Kashi Company,* Case No. 11-1967 (S.D. Cal.) ($5,000,000 settlement); *In re Magma Design Automation, Inc. Securities Litigation*, Case No. 05-2394 (N.D. Cal.) ($13,500,000 settlement); *In re Hovnanian Enterprises, Inc. Securities Litigation*, Case No. 08-cv-0099 (D.N.J.) ($4,000,000 settlement); *In re Skilled Healthcare Group, Inc. Securities Litigation*, Case No. 09-5416 (C.D. Cal.) ($3,000,000 settlement); *Kelly v. Phiten USA, Inc.*, Case No. 11-67 (S.D. Iowa) ($3,200,000 settlement plus injunctive relief); (*Shin et al., v. BMW of North America*, 2009 WL 2163509 (C.D. Cal. July 16, 2009) (after defeating a motion to dismiss, the case settled on very favorable terms for class members including free replacement of cracked wheels); *Payday Advance Plus, Inc. v. MIVA, Inc.*, Case No. 06-1923 (S.D.N.Y.) ($3,936,812 settlement); *Esslinger, et al. v. HSBC Bank Nevada, N.A.*, Case No. 10-03213 (E.D. Pa.) ($23,500,000 settlement); *In re Discover Payment Protection Plan Marketing and Sales Practices Litigation*, Case No. 10-06994 ($10,500,000 settlement ); *In Re: Bank of America Credit Protection Marketing and Sales Practices Litigation,* Case No. 11-md-02269 (N.D. Cal.) ($20,000,000 settlement).

Mr. Godino was also the principal attorney in the following published decisions: *In re Zappos.com, Inc., Customer Data Sec. Breach Litigation*, 714 Fed Appx. 761 (9th Cir. 2018) (reversing order dismissing class action complaint); *Small et al., v. University Medical Center of Southern Nevada, et al.*, 2017 WL 3461364 (D. Nev. Aug. 10, 2017)

482505.2 OFFICE                                   Page 10

(denying motion to dismiss); *Sciortino v. Pepsico, Inc.*, 108 F.Supp. 3d 780 (N.D. Cal.. June 5, 2015) (motion to dismiss denied); *Peterson v. CJ America, Inc.*, 2015 WL 11582832 (S.D. Cal. May 15, 2015) (motion to dismiss denied); *Lilly v. Jamba Juice Company*, 2014 WL 4652283 (N. D. Cal. Sep 18, 2014) (class certification granted in part); *Kramer v. Toyota Motor Corp.,* 705 F. 3d 1122 (9th Cir. 2013) (affirming denial of Defendant's motion to compel arbitration); *Sateriale, et al. v. R.J. Reynolds Tobacco Co.*, 697 F. 3d 777 (9th Cir. 2012) (reversing order dismissing class action complaint); *Shin v. BMW of North America*, 2009 WL 2163509 (C.D. Cal. July 16, 2009) (motion to dismiss denied); *In re 2TheMart.com Securities Litigation*, 114 F. Supp. 2d 955 (C.D. Cal. 2002) (motion to dismiss denied); *In re Irvine Sensors Securities Litigation*, 2003 U.S. Dist. LEXIS 18397 (C.D. Cal. 2003) (motion to dismiss denied).

The following represent just a few of the cases Mr. Godino is currently litigating in a leadership position: *Small v. University Medical Center of Southern Nevada*, Case No. 13-00298 (D. Nev.); *Courtright, et al., v. O'Reilly Automotive Stores, Inc., et al.*, Case No. 14-334 (W.D. Mo); *Keskinen v. Edgewell Personal Care Co., et al.*, Case No. 17-07721 (C.D. CA); *Ryan v. Rodan & Fields, LLC*, Case No. 18-02505 (N.D. Cal)

**MATTHEW M. HOUSTON**, a partner in the firm's New York office, graduated from Boston University School of Law in 1988. Mr. Houston is an active member of the Bar of the State of New York and an inactive member of the bar for the Commonwealth of Massachusetts. Mr. Houston is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and the District of Massachusetts, and the Second, Seventh, Ninth, and Eleventh Circuit Court of Appeals of the United States. Mr. Houston repeatedly has been selected as a New York Metro Super Lawyer.

Mr. Houston has substantial courtroom experience involving complex actions in federal and state courts throughout the country. Mr. Houston was co-lead trial counsel in one the few ERISA class action cases taken to trial asserting breach of fiduciary duty claims against plan fiduciaries, *Brieger et al. v. Tellabs, Inc.*, No. 06-CV-01882 (N.D. Ill.), and has successfully prosecuted many ERISA actions, including *In re Royal Ahold N.V. Securities and ERISA Litigation*, Civil Action No. 1:03-md-01539. Mr. Houston has been one of the principal attorneys litigating claims in multi-district litigation concerning employment classification of pickup and delivery drivers and primarily responsible for prosecuting ERISA class claims resulting in a $242,000,000 settlement; *In re FedEx Ground Package Inc. Employment Practices Litigation*, No. 3:05-MD-527 (MDL 1700). Mr. Houston recently presented argument before the Eleventh Circuit Court of Appeals on behalf of a class of Florida pickup and delivery drivers obtaining a reversal of the lower court's grant of summary judgment. Mr. Houston represented the interests of Nevada and Arkansas drivers employed by FedEx Ground obtaining significant recoveries on their behalf. Mr. Houston also served as lead counsel in multi-district class litigation seeking to modify insurance claims handling practices; *In re UnumProvident Corp. ERISA Benefits Denial Actions*, No. 1:03-cv-1000 (MDL 1552).

Mr. Houston has played a principal role in numerous derivative and class actions wherein substantial benefits were conferred upon plaintiffs*: In re: Groupon Derivative Litigation*, No. 12-cv-5300 (N.D. Ill. 2012) (settlement of consolidated derivative action

New York    |    Los Angeles    |    Berkeley
**www.glancylaw.com**

resulting in sweeping corporate governance reform estimated at $159 million)  *Bangari v. Lesnik, et al.*, No. 11 CH 41973 (Illinois Circuit Court, County of Cook) (settlement of claim resulting in payment of $20 million to Career Education Corporation and implementation of extensive corporate governance reform); *In re Diamond Foods, Inc. Shareholder Litigation*, No. CGC-11-515895 (California Superior Court, County of San Francisco) ($10.4 million in monetary relief including a $5.4 million clawback of executive compensation and significant corporate governance reform); *Pace American Shareholder Litigation*, 94-92 TUC-RMB (securities fraud class action settlement resulting in a recovery of $3.75 million); *In re Bay Financial Securities Litigation*, Master File No. 89-2377-DPW, (D. Mass.) (J. Woodlock) (settlement of action based upon federal securities law claims resulting in class recovery in excess of $3.9 million); *Goldsmith v. Technology Solutions Company*, 92 C 4374 (N.D. Ill. 1992) (J. Manning) (recovery of $4.6 million as a result of action alleging false and misleading statements regarding revenue recognition).

In addition to numerous employment and derivative cases, Mr. Houston has litigated actions asserting breach of fiduciary duty in the context of mergers and acquisitions. Mr. Houston has been responsible for securing millions of dollars in additional compensation and structural benefits for shareholders of target companies: *In re Instinet Group, Inc. Shareholders Litigation*, C.A. No. 1289 (Delaware Court of Chancery); *Jasinover v. The Rouse Company*, Case No. 13-C-04-59594 (Maryland Circuit Court); *McLaughlin v. Household International, Inc.*, Case No. 02 CH 20683 (Illinois Circuit Court); *Sebesta v. The Quizno's Corporation*, Case No. 2001 CV 6281 (Colorado District Court); *Crandon Capital Partners v. Sanford M. Kimmel*, C.A. No. 14998 (Del. Ch.); and *Crandon Capital Partners v. Kimmel*, C.A. No. 14998 (Del. Ch. 1996) (J. Chandler) (settlement of an action on behalf of shareholders of Transnational Reinsurance Co. whereby acquiring company provided an additional $10.4 million in merger consideration).

**JASON L. KRAJCER** is a partner in the firm's Los Angeles office.  He specializes in complex securities cases and has extensive experience in all phases of litigation (fact investigation, pre-trial motion practice, discovery, trial, appeal).

Prior to joining Glancy Prongay & Murray LLP, Mr. Krajcer was an Associate at Goodwin Procter LLP where he represented issuers, officers and directors in multi-hundred million and billion dollar securities cases.  He began his legal career at Orrick, Herrington & Sutcliffe LLP, where he represented issuers, officers and directors in securities class actions, shareholder derivative actions, and matters before the U.S. Securities & Exchange Commission.

Mr. Krajcer is admitted to the State Bar of California, the Bar of the District of Columbia, the United States Supreme Court, the Ninth Circuit Court of Appeals, and the United States District Courts for the Central and Southern Districts of California.

**SUSAN G. KUPFER** is the founding partner of the Firm's Berkeley office. Ms Kupfer joined the Firm in 2003.  She is a native of New York City, and received her A.B. degree from Mount Holyoke College in 1969 and her Juris Doctor degree from Boston

University School of Law in 1973.  She did graduate work at Harvard Law School and, in 1977, was named Assistant Dean and Director of Clinical Programs at Harvard, supervising and teaching in that program of legal practice and related academic components.

For much of her legal career, Ms. Kupfer has been a professor of law.  Her areas of academic expertise are Civil Procedure, Federal Courts, Conflict of Laws, Constitutional Law, Legal Ethics, and Jurisprudence. She has taught at Harvard Law School, Hastings College of the Law, Boston University School of Law, Golden Gate University School of Law, and Northeastern University School of Law.  From 1991 through 2002, she was a lecturer on law at the University of California, Berkeley, Boalt Hall, teaching Civil Procedure and Conflict of Laws.  Her publications include articles on federal civil rights litigation, legal ethics, and jurisprudence.  She has also taught various aspects of practical legal and ethical training, including trial advocacy, negotiation and legal ethics, to both law students and practicing attorneys.

Ms. Kupfer previously served as corporate counsel to The Architects Collaborative in Cambridge and San Francisco, and was the Executive Director of the Massachusetts Commission on Judicial Conduct.  She returned to the practice of law in San Francisco with Morgenstein & Jubelirer and Berman DeValerio LLP before joining the Firm.

Ms. Kupfer's practice is concentrated in complex antitrust litigation.  She currently serves, or has served, as Co-Lead Counsel in several multidistrict antitrust cases: *In re Photochromic Lens Antitrust Litig.* (MDL 2173, M.D. Fla. 2010); *In re Fresh and Process Potatoes Antitrust Litig.* (D. ID. 2011); *In re Korean Air Lines Antitrust Litig.* (MDL No. 1891, C.D. Cal. 2007); *In re Urethane Antitrust Litigation* (MDL 1616, D. Kan. 2004); *In re Western States Wholesale Natural Gas Litigation* (MDL 1566, D. Nev. 2005); and *Sullivan et al v. DB Investments et al* (D. N.J. 2004).  She has been a member of the lead counsel teams that achieved significant settlements in: *In re Sorbates Antitrust Litigation* ($96.5 million settlement); *In re Pillar Point Partners Antitrust Litigation* ($50 million settlement); and *In re Critical Path Securities Litigation* ($17.5 million settlement).

Ms. Kupfer is a member of the bar of Massachusetts and California, and is admitted to practice before the United States District Courts for the Northern, Central, Eastern and Southern Districts of California, the District of Massachusetts, the Courts of Appeals for the First and Ninth Circuits, and the U.S. Supreme Court.

**GREGORY B. LINKH** works out of the New York office, where he litigates antitrust, securities, shareholder derivative, and consumer cases. Greg graduated from the State University of New York at Binghamton in 1996 and from the University of Michigan Law School in 1999. While in law school, Greg externed with United States District Judge Gerald E. Rosen of the Eastern District of Michigan. Greg was previously associated with the law firms Dewey Ballantine LLP, Pomerantz Haudek Block Grossman & Gross LLP, and Murray Frank LLP.

Previously, Greg had significant roles in *In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation* (settled for $125 million); *In re Crompton Corp. Securities Litigation* (settled $11 million); *Lowry v. Andrx Corp.* (settled for $8 million); *In re*

482505.2 OFFICE                                      Page 13

*Xybernaut Corp. Securities MDL Litigation* (settled for $6.3 million); and *In re EIS Int'l Inc. Securities Litigation* (settled for $3.8 million). Greg also represented the West Virginia Investment Management Board ("WVIMB") in *WVIMB v. Residential Accredited Loans, Inc., et al.*, relating to the WVIMB's investment in residential mortgage-backed securities.

Currently, Greg is litigating various antitrust and securities cases, including *In re Korean Ramen Antitrust Litigation*, *In re Automotive Parts Antitrust Litigation*, and *In re Horsehead Holding Corp. Securities Litigation*.

Greg is the co-author of Inherent Risk In Securities Cases In The Second Circuit, NEW YORK LAW JOURNAL (Aug. 26, 2004); and Staying Derivative Action Pursuant to PSLRA and SLUSA, NEW YORK LAW JOURNAL, P. 4, COL. 4 (Oct. 21, 2005).

**BRIAN MURRAY** is the managing partner of the Firm's New York Park Avenue office and the head of the Firm's Antitrust Practice Group. He received Bachelor of Arts and Master of Arts degrees from the University of Notre Dame in 1983 and 1986, respectively.  He received a Juris Doctor degree, *cum laude,* from St. John's University School of Law in 1990.  At St. John's, he was the Articles Editor of the ST. JOHN'S LAW REVIEW.  Mr. Murray co-wrote: *Jurisdição Estrangeira Tem Papel Relevante Na De Fiesa De Investidores Brasileiros,* ESPAÇA JURÍDICO  BOVESPA (August 2008); *The Proportionate Trading Model: Real Science or Junk Science?,* 52 CLEVELAND ST. L. REV. 391 (2004-05); *The Accident of Efficiency: Foreign Exchanges, American Depository Receipts, and Space Arbitrage,* 51 BUFFALO L. REV. 383 (2003); *You Shouldn't Be Required To Plead More Than You Have To Prove,* 53 BAYLOR L. REV. 783 (2001); *He Lies, You Die: Criminal Trials, Truth, Perjury, and Fairness,* 27 NEW ENGLAND J. ON CIVIL AND CRIMINAL CONFINEMENT 1 (2001); *Subject Matter Jurisdiction Under the Federal Securities Laws: The State of Affairs After Itoba,* 20 MARYLAND J. OF INT'L L. AND TRADE 235 (1996); *Determining Excessive Trading in Option Accounts: A Synthetic Valuation Approach,* 23 U. DAYTON L. REV. 316 (1997); *Loss Causation Pleading Standard,* NEW YORK LAW JOURNAL (Feb. 25, 2005); *The PSLRA 'Automatic Stay' of Discovery,* NEW YORK LAW JOURNAL (March 3, 2003); and *Inherent Risk In Securities Cases In The Second Circuit,* NEW YORK LAW JOURNAL (Aug. 26, 2004).  He also authored *Protecting The Rights of International Clients in U.S. Securities Class Action Litigation,* INTERNATIONAL LITIGATION NEWS (Sept. 2007); Lifting the PSLRA "Automatic Stay" of Discovery, 80 N. DAK. L. REV. 405 (2004); *Aftermarket Purchaser Standing Under § 11 of the Securities Act of 1933,* 73 ST. JOHN'S L. REV.633 (1999); *Recent Rulings Allow Section 11 Suits By Aftermarket Securities Purchasers,* NEW YORK LAW JOURNAL (Sept. 24, 1998); and *Comment, Weissmann v. Freeman: The Second Circuit Errs in its Analysis of Derivative Copyrights by Joint Authors,* 63 ST. JOHN'S L. REV. 771 (1989).

Mr. Murray was on the trial team that prosecuted a securities fraud case under Section 10(b) of the Securities Exchange Act of 1934 against Microdyne Corporation in the Eastern District of Virginia and he was also on the trial team that presented a claim under Section 14 of the Securities Exchange Act of 1934 against Artek Systems Corporation and Dynatach Group which settled midway through the trial.

New York    |    Los Angeles    |    Berkeley
**www.glancylaw.com**

Mr. Murray's major cases include *In re Horsehead Holding Corp. Sec. Litig.*, No. 16-cv-292, 2018 WL 4838234 (D. Del. Oct. 4, 2018) (recommending denial of motion to dismiss securities fraud claims where company's generic cautionary statements failed to adequately warn of known problems); *In re Deutsche Bank Sec. Litig.*, --- F.R.D. ---, 2018 WL 4771525 (S.D.N.Y. Oct. 2, 2018) (granting class certification for Securities Act claims and rejecting defendants' argument that class representatives' trading profits made them atypical class members); *Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017 (N.D. Cal. 2016) (denying motion to dismiss securities fraud claims where confidential witness statements sufficiently established scienter); *In re Eagle Bldg. Tech. Sec. Litig.,* 221 F.R.D. 582 (S.D. Fla. 2004), 319 F. Supp. 2d 1318 (S.D. Fla. 2004) (complaint against auditor sustained due to magnitude and nature of fraud; no allegations of a "tip-off" were necessary); *In re Turkcell Iletisim A.S. Sec. Litig.,* 209 F.R.D. 353 (S.D.N.Y. 2002) (defining standards by which investment advisors have standing to sue); *In re Turkcell Iletisim A.S. Sec. Litig.*, 202 F. Supp. 2d 8 (S.D.N.Y. 2001) (liability found for false statements in prospectus concerning churn rates); *Feiner v. SS&C Tech., Inc.,* 11 F. Supp. 2d 204 (D. Conn. 1998) (qualified independent underwriters held liable for pricing of offering); *Malone v. Microdyne Corp.*, 26 F.3d 471 (4th Cir. 1994) (reversal of directed verdict for defendants); and *Adair v. Bristol Tech. Systems, Inc.,* 179 F.R.D. 126 (S.D.N.Y. 1998) (aftermarket purchasers have standing under section 11 of the Securities Act of 1933). Mr. Murray also prevailed on an issue of first impression in the Superior Court of Massachusetts, in Cambridge Biotech Corp. v. Deloitte and Touche LLP, in which the court applied the doctrine of continuous representation for statute of limitations purposes to accountants for the first time in Massachusetts. 6 Mass. L. Rptr. 367 (Mass. Super. Jan. 28, 1997). In addition, in *Adair v. Microfield Graphics, Inc.* (D. Or.), Mr. Murray settled the case for 47% of estimated damages. *In the Qiao Xing Universal Telephone* case, claimants received 120% of their recognized losses.

Among his current cases, Mr. Murray represents a class of investors in a securities litigation involving preferred shares of Deutsche Bank and is lead counsel in a securities class action against Horsehead Holdings, Inc. in the District of Delaware.

Mr. Murray served as a Trustee of the Incorporated Village of Garden City (2000-2002); Commissioner of Police for Garden City (2000-2001); Co-Chairman, Derivative Suits Subcommittee, American Bar Association Class Action and Derivative Suits Committee, (2007-2010); Member, Sports Law Committee, Association of the Bar for the City of New York, 1994-1997; Member, Litigation Committee, Association of the Bar for the City of New York, 2003-2007; Member, New York State Bar Association Committee on Federal Constitution and Legislation, 2005-2008; Member, Federal Bar Council, Second Circuit Committee, 2007-present.

Mr. Murray has been a panelist at CLEs sponsored by the Federal Bar Council and the Institute for Law and Economic Policy, at the German-American Lawyers Association Annual Meeting in Frankfurt, Germany, and is a frequent lecturer before institutional investors in Europe and South America on the topic of class actions.

**LESLEY F. PORTNOY** represents domestic and international clients in securities litigation and class actions. Mr. Portnoy focuses his practice on recovering losses suffered by investors resulting corporate fraud and other wrongdoing.

Mr. Portnoy has extensive experience litigating complex cases in state and federal courts nationwide, and previously served as counsel to investors in the Bernard L. Madoff securities, assisting the SIPC trustee Irving Picard in recovering assets on behalf of defrauded investors. During law school, he worked in the New York Supreme Court Commercial Division, the Second Circuit Court of Appeals, and the New York City Law Department. Mr. Portnoy has represented pro bono clients in New York and California.

**ROBERT V. PRONGAY** is a partner in the Firm's Los Angeles office where he focuses on the investigation, initiation, and prosecution of complex securities cases on behalf of institutional and individual investors.  Mr. Prongay's practice concentrates on actions to recover investment losses resulting from violations of the federal securities laws and various actions to vindicate shareholder rights in response to corporate and fiduciary misconduct.

Mr. Prongay has extensive experience litigating complex cases in state and federal courts nationwide.  Since joining the Firm, Mr. Prongay has successfully recovered millions of dollars for investors victimized by securities fraud and has negotiated the implementation of significant corporate governance reforms aimed at preventing the recurrence of corporate wrongdoing.

Mr. Prongay was recently recognized as one of thirty lawyers included in the Daily Journal's list of Top Plaintiffs Lawyers in California for 2017.  Several of Mr. Prongay's cases have received national and regional press coverage.  Mr. Prongay has been interviewed by journalists and writers for national and industry publications, ranging from *The Wall Street Journal* to the *Los Angeles Daily Journal*.  Mr. Prongay has appeared as a guest on Bloomberg Television where he was interviewed about the securities litigation stemming from the high-profile initial public offering of Facebook, Inc.

Mr. Prongay received his Bachelor of Arts degree in Economics from the University of Southern California and his Juris Doctor degree from Seton Hall University School of Law.  Mr. Prongay is also an alumnus of the Lawrenceville School.

**DANIELLA QUITT**, a partner in the firm's New York office, graduated from Fordham University School of Law in 1988, is a member of the Bar of the State of New York, and is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second, Fifth, and Ninth Circuits.

Ms. Quitt has extensive experience in successfully litigating complex class actions from inception to trial and has played a significant role in numerous actions wherein substantial benefits were conferred upon plaintiff shareholders, such as *In re Safety-Kleen Corp. Stockholders Litigation*, (D.S.C.) (settlement fund of $44.5 million); *In re*

*Laidlaw Stockholders Litigation*, (D.S.C.) (settlement fund of $24 million); *In re UNUMProvident Corp. Securities Litigation*, (D. Me.) (settlement fund of $45 million); *In re Harnischfeger Industries* (E.D. Wisc.) (settlement fund of $10.1 million); *In re Oxford Health Plans, Inc. Derivative Litigation*, (S.D.N.Y.) (settlement benefit of $13.7 million and corporate therapeutics); *In re JWP Inc. Securities Litigation*, (S.D.N.Y.) (settlement fund of $37 million); *In re Home Shopping Network, Inc., Derivative Litigation*, (S.D. Fla.) (settlement benefit in excess of $20 million); *In re Graham-Field Health Products, Inc. Securities* Litigation, (S.D.N.Y.) (settlement fund of $5.65 million); *Benjamin v. Carusona*, (E.D.N.Y.) (prosecuted action on behalf of minority shareholders which resulted in a change of control from majority-controlled management at Gurney's Inn Resort & Spa Ltd.); *In re Rexel Shareholder Litigation*, (Sup. Ct. N.Y. County) (settlement benefit in excess of $38 million); and *Croyden Assoc. v. Tesoro Petroleum Corp., et al.*, (Del. Ch.) (settlement benefit of $19.2 million).

In connection with the settlement of *Alessi v. Beracha*, (Del. Ch.), a class action brought on behalf of the former minority shareholders of Earthgrains, Chancellor Chandler commented: "I give credit where credit is due, Ms. Quitt. You did a good job and got a good result, and you should be proud of it.""

Ms. Quitt has focused her practice on shareholder rights and ERISA class actions but also handles general commercial and consumer litigation. Ms. Quitt serves as a member of the S.D.N.Y. ADR Panel and has been consistently selected as a New York Metro Super Lawyer.

**JONATHAN M. ROTTER** leads the Firm's intellectual property litigation practice. He recently served for three years as the first Patent Pilot Program Law Clerk at the United States District Court for the Central District of California, both in Los Angeles and Orange County. There, he assisted the Honorable S. James Otero, Andrew J. Guilford, George H. Wu, John A. Kronstadt, and Beverly Reid O'Connell with hundreds of patent cases in every major field of technology, from complaint to post-trial motions. Mr. Rotter also served as a law clerk for the Honorable Milan D. Smith, Jr. on the United States Court of Appeals for the Ninth Circuit.

Before his service to the court, Mr. Rotter practiced at an international law firm, where he argued appeals at the Federal Circuit, Ninth Circuit, and California Court of Appeal, tried cases, argued motions, and managed all aspects of complex litigation. He also served as a volunteer criminal prosecutor for the Los Angeles City Attorney's Office. His cases have involved diverse technologies in both "wet" and "dry" disciplines, and he excels at the critical skill of translating complex subject matter into a coherent story that can be digested by judges and juries.

In addition to intellectual property matters, Mr. Rotter litigates consumer protection, healthcare, antitrust, and securities class actions. Mr. Rotter handles cases on contingency, partial contingency, and hourly bases. He works collaboratively with other lawyers and law firms across the country.

Mr. Rotter graduated with honors from Harvard Law School in 2004.  He served as an editor of the Harvard Journal of Law & Technology, and was a Fellow in Law and Economics at the John M. Olin Center for Law, Economics, and Business, and a Fellow in Justice, Welfare, and Economics at the Weatherhead Center For International Affairs.  He graduated with honors from the University of California, San Diego in 2000 with a B.S. in molecular biology and a B.A. in music.

Mr. Rotter serves on the Merit Selection Panel for Magistrate Judges in the Central District of California, and the Model Patent Jury Instructions and Model Patent Local Rules subcommittees of the American Intellectual Property Law Association.  He has written extensively on intellectual property issues, and has been honored for his work with legal service organizations.  He is admitted to practice before the United States Patent & Trademark Office, the United States Courts of Appeals for the Second, Ninth and Federal Circuits, and the United States District Courts for the Northern, Central, and Southern Districts of California.

**KEVIN F. RUF** graduated from the University of California at Berkeley with a Bachelor of Arts in Economics and earned his Juris Doctor degree from the University of Michigan. He was an associate at the Los Angeles firm Manatt Phelps and Phillips from 1988 until 1992, where he specialized in commercial litigation.  In 1993, he joined the firm Corbin & Fitzgerald (with future federal district court Judge Michael Fitzgerald) specializing in white collar criminal defense work.  Kevin joined the Glancy firm in 2001 and is the head of the firm's Labor practice.

Kevin has successfully argued a number of important appeals, including in the 9th Circuit Court of Appeals.  He has twice argued cases before the California Supreme Court – winning both.   In *Smith v. L'Oreal* (2006), the California Supreme Court established a fundamental right of all California workers to immediate payment of all earnings at the conclusion of their employment. The second California Supreme Court case, *Lee v. Dynamex* (2018), has been called a "blockbuster" and "bombshell" as it altered 30 years of California law and established a new definition of employment that brings more workers within the protections of California's Labor Code.

Kevin has been named one of California's "Top 75 Employment Lawyers" by the Daily Journal.  He has consistently been named a "Super Lawyer."

Since 2014, Kevin has been an elected member of the Ojai Unified School District Board of Trustees.  Kevin was also a Main Company Member of the world-famous Groundlings improv and sketch comedy troupe – "where everyone else got famous."

**BENJAMIN I. SACHS-MICHAELS**, a partner in the firm's New York office, graduated from Benjamin N. Cardozo School of Law in 2011. His practice focuses on shareholder derivative litigation and class actions on behalf of shareholders and consumers.

While in law school, Mr. Sachs-Michaels served as a judicial intern to Senior United States District Judge Thomas J. McAvoy in the United States District Court for the

New York    |    Los Angeles    |    Berkeley
**www.glancylaw.com**

Northern District of New York and was a member of the Cardozo Journal of Conflict Resolution.

Mr. Sachs-Michaels is a member of the Bar of the State of New York. He is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second Circuit.

**CASEY E. SADLER** is a native of New York, New York.  After graduating from the University of Southern California, Gould School of Law, Mr. Sadler joined the Firm in 2010.  While attending law school, Mr. Sadler externed for the Enforcement Division of the Securities and Exchange Commission, spent a summer working for P.H. Parekh & Co. – one of the leading appellate law firms in New Delhi, India – and was a member of USC's Hale Moot Court Honors Program.

Mr. Sadler's practice focuses on securities and consumer litigation. A partner in the Firm's Los Angeles office, Mr. Sadler is admitted to the State Bar of California and the United States District Courts for the Northern, Southern, and Central Districts of California.

**EX KANO S. SAMS II** earned his Bachelor of Arts degree in Political Science from the University of California Los Angeles.  Mr. Sams earned his Juris Doctor degree from the University of California Los Angeles School of Law, where he served as a member of the *UCLA Law Review*.  After law school, Mr. Sams practiced class action civil rights litigation on behalf of plaintiffs.  Subsequently, Mr. Sams was a partner at Coughlin Stoia Geller Rudman & Robbins LLP (currently Robbins Geller Rudman & Dowd LLP), where his practice focused on securities and consumer class actions on behalf of investors and consumers.

During his career, Mr. Sams has served as lead counsel in dozens of securities class actions and complex-litigation cases throughout the United States.  Mr. Sams was one of the counsel for respondents in *Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, No. 15-1439, 2018 WL 1384564 (U.S. Mar. 20, 2018), 583 U.S. ___ (2018), in which the United States Supreme Court ruled unanimously in favor of respondents, holding that: (1) the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") does not strip state courts of jurisdiction over class actions alleging violations of only the Securities Act of 1933; and (2) SLUSA does not empower defendants to remove such actions from state to federal court.  Mr. Sams also participated in a successful appeal before a Fifth Circuit panel that included former United States Supreme Court Justice Sandra Day O'Connor sitting by designation, in which the court unanimously vacated the lower court's denial of class certification, reversed the lower court's grant of summary judgment, and issued an important decision on the issue of loss causation in securities litigation: *Alaska Electrical Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009).  The case settled for $55 million.

Mr. Sams has also obtained other significant results.  Notable examples include: *In re King Digital Entm't plc S'holder Litig.*, No. CGC-15-544770 (San Francisco Superior Court) (case settled for $18.5 million); *In re Castlight Health, Inc. S'holder Litig.*, Lead

Case No. CIV533203 (California Superior Court, County of San Mateo) (case settled for $9.5 million); *Wiley v. Envivio, Inc.*, Master File No. CIV517185 (California Superior Court, County of San Mateo) (case settled for $8.5 million); *In re CafePress Inc. S'holder Litig.*, Master File No. CIV522744 (California Superior Court, County of San Mateo) (case settled for $8 million); *Robinson v. Audience, Inc.*, Case No. 1:12-cv-232227 (California Superior Court, County of Santa Clara) (case settled for $6,050,000); *Estate of Gardner v. Continental Casualty Co.*, No. 3:13-cv-1918 (JBA), 2016 WL 806823 (D. Conn. Mar. 1, 2016) (granting class certification); *Forbush v. Goodale*, No. 33538/2011, 2013 WL 582255 (N.Y. Sup. Feb. 4, 2013) (denying motions to dismiss in a shareholder derivative action); *Curry v. Hansen Med., Inc.*, No. C 09-5094 CW, 2012 WL 3242447 (N.D. Cal. Aug. 10, 2012) (upholding securities fraud complaint; case settled for $8.5 million); *Wilkof v. Caraco Pharm. Labs., Ltd.*, 280 F.R.D. 332 (E.D. Mich. 2012) (granting class certification); *Puskala v. Koss Corp.*, 799 F. Supp. 2d 941 (E.D. Wis. 2011) (upholding securities fraud complaint); *Mishkin v. Zynex Inc.*, Civil Action No. 09-cv-00780-REB-KLM, 2011 WL 1158715 (D. Colo. Mar. 30, 2011) (denying defendants' motion to dismiss securities fraud complaint); and *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 WL 2151838 (D. Ariz. July 17, 2009) (granting class certification; case settled for $10 million).

Additionally, Mr. Sams has successfully represented consumers in class action litigation. Mr. Sams worked on nationwide litigation and a trial against major tobacco companies, and in statewide tobacco litigation that resulted in a $12.5 billion recovery for California cities and counties in a landmark settlement. He also was a principal attorney in a consumer class action against one of the largest banks in the country that resulted in a substantial recovery and a change in the company's business practices. Mr. Sams also participated in settlement negotiations on behalf of environmental organizations along with the United States Department of Justice and the Ohio Attorney General's Office that resulted in a consent decree requiring a company to perform remediation measures to address the effects of air and water pollution. Additionally, Mr. Sams has been an author or co-author of several articles in major legal publications, including "9th Circuit Decision Clarifies Securities Fraud Loss Causation Rule" published in the February 8, 2018 issue of the *Daily Journal*, and "Market Efficiency in the World of High-Frequency Trading" published in the December 26, 2017 issue of the *Daily Journal*.

**KARA M. WOLKE** is a partner in the firm's Los Angeles office. Ms. Wolke specializes in complex litigation, including the prosecution of securities fraud, derivative, consumer, and wage and hour class actions. She has extensive experience in written appellate advocacy in both State and Federal Circuit Courts of Appeals, and has successfully argued before the Court of Appeals for the State of California.

With over a decade of experience in financial class action litigation, Ms. Wolke has helped to recover hundreds of millions of dollars for injured investors, consumers, and employees. Notable cases include: *Farmington Hills Employees' Retirement System v. Wells Fargo Bank*, Case No. 10-4372 (D. Minn.) ($62.5 million settlement on behalf of participants in Wells Fargo's securities lending program. The settlement was reached on the eve of trial and ranked among the largest recoveries achieved in a securities

New York    |    Los Angeles    |    Berkeley
**www.glancylaw.com**

lending class action stemming from the 2008 financial crisis.); *Schleicher, et al. v. Wendt, et al.* (Conseco), Case No. 02-cv-1332 (S.D. Ind.) ($41.5 million securities class action settlement); *Lapin v. Goldman Sachs*, Case No. 03-850 (S.D.N.Y.) ($29 million securities class action settlement); *In Re: Mannkind Corporation Securities Litigation*, Case No. 11-929 (C.D. Cal) (approximately $22 million settlement - $16 million in cash plus stock); *Jenson v. First Trust Corp.*, Case No. 05-3124 (C.D. Cal.) ($8.5 million settlement of action alleging breach of fiduciary duty and breach of contract against trust company on behalf of a class of elderly investors); and *Pappas v. Naked Juice Co.*, Case No. 11-08276 (C.D. Cal.) ($9 million settlement in consumer class action alleging misleading labeling of juice products as "All Natural").

With a background in intellectual property, Ms. Wolke was a part of the team of lawyers who successfully challenged the claim of copyright ownership to the song "Happy Birthday to You" on behalf of artists and filmmakers who had been forced to pay hefty licensing fees to publicly sing the world's most famous song. In the resolution of that action, the defendant music publishing company funded a settlement of $14 million and, significantly, agreed to relinquish the song to the public domain. Previously, Ms. Wolke penned an article regarding the failure of U.S. Copyright Law to provide an important public performance right in sound recordings, 7 Vand. J. Ent. L. & Prac. 411, which was nationally recognized and received an award by the American Bar Association and the Grammy® Foundation.

Committed to the provision of legal services to the poor, disadvantaged, and other vulnerable or disenfranchised individuals and groups, Ms. Wolke also oversees the Firm's pro bono practice. Ms. Wolke currently serves as a volunteer attorney for KIND (Kids In Need of Defense), representing unaccompanied immigrant and refugee children in custody and deportation proceedings, and helping them to secure legal permanent residency status in the U.S.

Ms. Wolke graduated summa cum laude with a Bachelor of Science in Economics from The Ohio State University in 2001. She subsequently earned her J.D. (with honors) from Ohio State, where she was active in Moot Court and received the Dean's Award for Excellence during each of her three years.

Ms. Wolke is admitted to the State Bar of California, the Ninth Circuit Court of Appeals, as well as the United States District Courts for the Northern, Southern, and Central Districts of California. She lives with her husband and two sons in Los Angeles.

**OF COUNSEL**

**MARK S. GREENSTONE** specializes in consumer, financial fraud and employment-related class actions. Possessing significant law and motion and trial experience, Mr. Greenstone has represented clients in multi-million dollar disputes in California state and federal courts, as well as the Court of Federal Claims in Washington, D.C.

Mr. Greenstone received his training as an associate at Sheppard, Mullin, Richter & Hampton LLP where he specialized in complex business litigation relating to investment management, government contracts and real estate. Upon leaving Sheppard Mullin, Mr. Greenstone founded an internet-based company offering retail items on multiple platforms nationwide. He thereafter returned to law bringing a combination of business and legal skills to his practice.

Mr. Greenstone graduated Order of the Coif from the UCLA School of Law. He also received his undergraduate degree in Political Science from UCLA, where he graduated Magna Cum Laude and was inducted into the Phi Beta Kappa honor society.

Mr. Greenstone is a member of the Consumer Attorneys Association of Los Angeles, the Santa Monica Bar Association and the Beverly Hills Bar Association. He is admitted to practice in state and federal courts throughout California.

**ROBERT I. HARWOOD**, Of Counsel to the firm, graduated from William and Mary Law School in 1971, and has specialized in securities law and securities litigation since beginning his career in 1972 at the Enforcement Division of the New York Stock Exchange.  Mr. Harwood was a founding member of Harwood Feffer LLP.  He has prosecuted numerous securities, class, derivative, and ERISA actions.  He is a member of the Trial Lawyers' Section of the New York State Bar Association and has served as a guest lecturer at trial advocacy programs sponsored by the Practicing Law Institute. In a statewide survey of his legal peers published by Super Lawyers Magazine, Mr. Harwood has been consistently selected as a "New York Metro Super Lawyer."  Super Lawyers are the top five percent of attorneys in New York, as chosen by their peers and through the independent research.  He is also a Member of the Board of Directors of the MFY Legal Services Inc., which provides free legal representation in civil matters to the poor and the mentally ill in New York City.  Since 1999, Mr. Harwood has also served as a Village Justice for the Village of Dobbs Ferry, New York.

Commenting on Mr. Harwood's abilities, in *In re Royal Dutch/Shell Transport ERISA Litigation*, (D.N.J.), Judge Bissell stated:

> the Court knows the attorneys in the firms involved in this matter and they are highly experienced and highly skilled in matters of this kind. Moreover, in this case it showed.  Those efforts were vigorous, imaginative and prompt in reaching the settlement of this matter with a minimal amount of discovery . . . .  So both skill and efficiency were brought to the table here by counsel, no doubt about that.

Likewise, Judge Hurley stated in connection with *In re Olsten Corporation Securities Litigation*, No. 97 CV-5056 (E.D.N.Y. Aug. 31, 2001), wherein a settlement fund of $24.1 million was created:  "The quality of representation here I think has been excellent."  Mr. Harwood was lead attorney in *Meritt v. Eckerd*, No. 86 Civ. 1222 (E.D.N.Y. May 30, 1986), where then Chief Judge Weinstein observed that counsel conducted the litigation with "speed and skill" resulting in a settlement having a value "in the order of $20 Million Dollars."  Mr. Harwood prosecuted the *Hoeniger v. Aylsworth* class action litigation in

the United States District Court for the Western District of Texas (No. SA-86-CA-939), which resulted in a settlement fund of $18 million and received favorable comment in the August 14, 1989 edition of *The Wall Street Journal* ("*Prospector Fund Finds Golden Touch in Class Action Suit" p.* 18, col. 1).  Mr. Harwood served as co-lead counsel in *In Re Interco Incorporated Shareholders Litigation*, Consolidated C.A. No. 10111 (Delaware Chancery Court) (May 25, 1990), resulting in a settlement of $18.5 million, where V.C. Berger found, "This is a case that has an extensive record that establishes it was very hard fought.  There were intense efforts made by plaintiffs' attorneys and those efforts bore very significant fruit in the face of serious questions as to ultimate success on the merits."

Mr. Harwood served as lead counsel in *Morse v. McWhorter* (Columbia/HCA Healthcare Securities Litigation), (M.D. Tenn.), in which a settlement fund of $49.5 million was created for the benefit of the Class, as well as *In re Bank One Securities Litigation*, (N.D. Ill.), which resulted in the creation of a $45 million settlement fund.  Mr. Harwood also served as co-lead counsel in *In re Safety-Kleen Corp. Stockholders Litigation*, (D.S.C.), which resulted in a settlement fund of $44.5 million; *In re Laidlaw Stockholders Litigation*, (D.S.C.), which resulted in a settlement fund of $24 million; *In re AIG ERISA Litigation*, (S.D.N.Y.), which resulted in a settlement fund of $24.2 million*; In re JWP Inc. Securities Litigation*, (S.D.N.Y.), which resulted in a $37 million settlement fund; *In re Oxford Health Plans, Inc. Derivative Litigation*, (S.D.N.Y.), which resulted in a settlement benefit of $13.7 million and corporate therapeutics; and *In re UNUMProvident Corp. Securities Litigation*, (D. Me.), which resulted in the creation of settlement fund of $45 million.  Mr. Harwood has also been one of the lead attorneys in litigating claims in *In re FedEx Ground Package Inc. Employment Practices Litigation*, No. 3:05-MD-527 (MDL 1700), a multi-district litigation concerning employment classification of pickup and delivery drivers which resulted in a $242,000,000 settlement.

**STAN KARAS** of counsel in the Los Angeles office, is an experienced class action attorney, who works on every stage of such cases from pleading challenges to class certification proceedings to trial and appeal.  He is also an experienced trial lawyer, including as first chair.  Among other successes, he obtained a $3 million jury verdict for a client, along with a finding that the defendant was liable for punitive damages.  In another trial, the court granted non-suit in favor of Stan's client after he delivered the opening argument.

Mr. Karas started his legal career at Paul Hastings Janofsky and Walker, where he handled complex commercial and real estate litigation.  Subsequently, he joined Quinn Emanuel Urquhart & Sullivan, where he specialized in class actions, both on the plaintiff and the defense side, as well as intellectual property litigation.  Mr. Karas then worked at a plaintiff-side class action firm where he obtained tens of millions of dollars in settlements on behalf of his clients.

Mr. Karas is a graduate of Stanford University, where he received a degree in History and Literature and was elected to Phi Beta Kappa.  He graduated from Boalt Hall School of Law at UC Berkeley.  In law school, Mr. Karas served as Articles Editor of the *California Law Review* and Notes and Comments Editor of the *Berkeley Technology*

New York  |  Los Angeles  |  Berkeley

**www.glancylaw.com**

*Law Journal.* Mr. Karas has published on class action and privacy law issues including *Privacy, Identity, Databases*, 52 Am. U. L. Rev. 393 (2002) and *The Role of Fluid Recovery in Consumer Protection Litigation*, 90 Cal. L. Rev. 959 (2002).

## ASSOCIATES

**GRAHAM CLEGG** received his LLB in 1988 from the Manchester University School of Law in England, with Honors.  He was admitted to the New York State Bar in 2002.  Mr. Clegg has significant experience in the prosecution of class claims, including *In re Bristol-Myers Squibb Securities Litigation,* which settled for $185 million.

**CHRISTOPHER FALLON** focuses on securities, consumer, and anti-trust litigation. Prior to joining the firm, Mr. Fallon was a contract attorney with O'Melveny & Myers LLP working on anti-trust and business litigation disputes. He is a Certified E-Discovery Specialist through the Association of Certified E-Discovery Specialists (ACEDS).

Mr. Fallon earned his J.D. and a Certificate in Dispute Resolution from Pepperdine Law School in 2004. While attending law school, Christopher worked at the Pepperdine Special Education Advocacy Clinic and interned with the Rhode Island Office of the Attorney General. Prior to attending law school, he graduated from Boston College with a Bachelor of Arts in Economics and a minor in Irish Studies, then served as Deputy Campaign Finance Director on a U.S. Senate campaign.

**MEHRDAUD JAFARNIA** received his J.D. in 2001 from Southwestern University School of Law, having earlier earned a B.A. in Political Science/International Relations from the University of California at Los Angeles (UC Regents Merit Scholarship Award and the Vance Burch Scholarship).  Mr. Jafarnia served as a Staff Attorney for the 9th Circuit Court of Appeals and has represented financial institutions in adversary and evidentiary proceedings in the Bankruptcy Courts.

**THOMAS J. KENNEDY** works out of the New York office, where he focuses on securities, antitrust, mass torts, and consumer litigation.  He received a Juris Doctor degree from St. John's University School of Law in 1995.  At St. John's, he was a member of the ST. JOHN'S JOURNAL OF LEGAL COMMENTARY.  Mr. Kennedy graduated from Miami University in 1992 with a Bachelor of Science degree in Accounting and has passed the CPA exam.  Mr. Kennedy was previously associated with the law firm Murray Frank LLP.

**JENNIFER M. LEINBACH** served for nearly five years as a judicial law clerk for a number of judges in the Central District of California.  As a judicial law clerk, Ms. Leinbach was responsible for assisting these judges with case management, preparing for hearings and trial, and drafting rulings.  Ms. Leinbach worked on a variety of different cases, including cases involving financial fraud, insolvency and complex civil litigation. Ms. Leinbach was also responsible for assisting those judges, sitting by designation, on appellate cases.

Ms. Leinbach graduated magna cum laude from Vermont Law School and was a member of Vermont Law Review, where she focused on environmental law issues. During law school, Ms. Leinbach served as a judicial extern in the District of Vermont. She obtained her undergraduate degree cum laude from Pepperdine University.

**CHARLES H. LINEHAN** graduated summa cum laude from the University of California, Los Angeles with a Bachelor of Arts degree in Philosophy and a minor in Mathematics. Mr. Linehan received his Juris Doctor degree from the UCLA School of Law, where he was a member of the UCLA Moot Court Honors Board.  While attending law school, Mr. Linehan participated in the school's First Amendment Amicus Brief Clinic (now the Scott & Cyan Banister First Amendment Clinic) where he worked with nationally recognized scholars and civil rights organizations to draft amicus briefs on various Free Speech issues.

**DANIELLE L. MANNING** is a litigation associate in the firm's Los Angeles office.  Ms. Manning specializes in prosecuting complex class action lawsuits in state and federal courts nationwide, including consumer and securities fraud class actions.  She has particular experience litigating automobile defect and Telephone Consumer Protection Act ("TCPA") cases and excels at managing multiple significant matters at once.  Ms. Manning has experience in all phases of pre-trial litigation, including conducting fact investigation, drafting pleadings, researching and drafting briefs in the context of law and motion practice, drafting and responding to discovery requests, assisting with deposition preparation, and preparing for and negotiating settlements.  Ms. Manning is admitted to the State Bar of California, the Ninth Circuit Court of Appeals, United States District Courts for the Central and Northern Districts of California, and the Eastern District of Michigan.

A few of the matters Ms. Manning is currently taking an active role in are: *Gann et. al. v. Nissan  North America*, Case No. 3:18-cv-00966 (M.D. Tenn.) (preliminary approval granted July 16, 2019); *Salcedo v.  Häagen-Dazs Shoppe Company Inc.*, Case No. 5:17-cv-03504 (N.D. Cal.); *Andre Damico et. al. v. Hyundai  Motor America Inc.*, Case No. 30-2018-01008552-CU-BC-CXC (Cal. Super. Ct.) (demurrer overruled); *Elaine Hall et al. v. General Motors LLC*, Case No. 4:19-cv-10186 (E.D. Mich.) (motion to dismiss pending); *Mark Mina v. Red Robin International Inc.*, *et al.*, Case No. 2:18-cv-09472 (C.D. Cal.)(motion to dismiss pending) and *Kohna et al. v. Subaru of America Inc.*, Case No. 1:19-cv-09323 (D.N.J.)

Ms. Manning received her Juris Doctor degree from the University of California Los Angeles School of Law, where she served as Chief Managing Editor of the *Journal of Environmental Law and Policy*.  While attending law school, Ms. Manning externed for the Honorable Laurie D. Zelon in the California Court of Appeal and interned for the California Department of Justice, Office of the Attorney General.  Ms. Manning received her Bachelor of Arts degree with honors in Environmental Analysis from Claremont McKenna College.

**VAHE MESROPYAN** joined the firm in 2018 and focuses his practice on litigating securities class actions.  Immediately prior to joining the firm, Mr. Mesropyan served as

New York  |  Los Angeles  |  Berkeley
**www.glancylaw.com**

a judicial law clerk for multiple judges in the U.S. District Court for the Central District of California.  Prior to his clerkship, Mr. Mesropyan was an associate at Crowell & Moring LLP, where he represented Fortune 500 companies in complex antitrust matters.

Mr. Mesropyan received his J.D. from the University of California, Irvine School of Law as a Dean's Merit Scholarship recipient.  While in law school, he clerked for the Federal Trade Commission, Consumer Protection Unit and served as an extern for the Internal Revenue Service, Office of Chief Counsel.

**NATALIE S. PANG** is an associate in the firm's Los Angeles office. Ms. Pang has advocated on behalf of thousands of consumers during her career. Ms. Pang has extensive experience in case management and all facets of litigation: from a case's inception through the discovery process--including taking and defending depositions and preparing witnesses for depositions and trial--mediation and settlement negotiations, pretrial motion work, trial and post-trial motion work.

Prior to joining the firm, Ms. Pang lead the mass torts department of her last firm, where she managed the cases of over two thousand individual clients. There, Ms. Pang worked on a wide variety of complex state and federal matters which included cases involving pharmaceutical drugs, medical devices, auto defects, toxic torts, false advertising, and uninhabitable conditions. Ms. Pang was also trial counsel in the notable case, *Celestino Acosta et al. v. City of Long Beach et al.* (BC591412) which was brought on behalf of residents of a mobile home park built on a former trash dump and resulted in a $39.5 million verdict after an eleven-week jury trial in Los Angeles Superior Court.

Ms. Pang received her J.D. from Loyola Law School. While in law school, Ms. Pang received a Top 10 Brief Award as a Scott Moot Court competitor, was chosen to be a member of the Scott Moot Court Honor's Board, and competed as a member of the National Moot Court Team. Ms. Pang was also a Staffer and subsequently an Editor for Loyola's Entertainment Law Review as well as a Loyola Writing Tutor. During law school, Ms. Pang served as an extern for: the Hon. Rolf Treu (Los Angeles Superior Court), the Los Angeles City Attorney's Office, and the Federal Public Defender's Office. Ms. Pang obtained her undergraduate degree from the University of Southern California and worked in the healthcare industry prior to pursuing her career in law.

**JARED F. PITT** focuses on securities, consumer, and anti-trust litigation. Prior to joining the firm, Mr. Pitt was an associate at Willoughby Doyle LLP and was a senior financial statement auditor for KMPG LLP where he earned his CPA license.

Mr. Pitt earned his J.D. from Loyola Law School in 2010. Prior to attending law school he graduated with honors from both the University of Michigan's Ross School of Business and USC's Marshall School of Business where he received a Masters of Accounting.

**PAVITHRA RAJESH** is an associate in the firm's Los Angeles office. Ms. Rajesh graduated from University of California, Santa Barbara with a Bachelor of Science

New York   |   Los Angeles   |   Berkeley
**www.glancylaw.com**

degree in Mathematics and a Bachelor of Arts degree in Psychology. She received her Juris Doctor degree from UCLA School of Law. Ms. Rajesh has unique writing experience from her judicial externship for the Patent Pilot Program in the United States District Court for the Central District of California, where she worked closely with the Clerk and judges in the program on patent cases. While in law school, Ms. Rajesh was an Associate Editor for the UCLA Law Review.

**NOREEN R. SCOTT** received her J.D. in 2002 from Tulane Law School and earned a B.A. in Economics from Emory University in 1999. She served as a law clerk to the Hon. Charles R. Jones on the Louisiana State Court of Appeal, and has extensive experience prosecuting complex class action cases.

**LEANNE HEINE SOLISH** is an associate in GPM's Los Angeles office.  Her practice focuses on complex securities litigation.

Ms. Solish has extensive experience litigating complex cases in federal courts nationwide.  Since joining GPM in 2012, Ms. Solish has helped secure several large class action settlements for injured investors, including: *The City of Farmington Hills Employees Retirement System v. Wells Fargo Bank*, Case No. 10-4372--DWF/JJG (D. Minn.) ($62.5 million settlement on behalf of participants in Wells Fargo's securities lending program.  The settlement was reached on the eve of trial and ranked among the largest recoveries achieved in a securities lending class action stemming from the 2008 financial crisis.); *In re Penn West Petroleum Ltd. Securities Litigation*, Case No. 1:14-cv-06046-JGK (S.D.N.Y.) ($19 million settlement for the U.S. shareholder class as part of a $39 million global settlement); *In re ITT Educational Services, Inc. Securities Litigation (Indiana)*, Case No. 1:14-cv-01599-TWP-DML ($12.5375 million settlement); *In re Doral Financial Corporation Securities Litigation*, Case No. 3:14-cv-01393-GAG (D.P.R.) ($7 million settlement); *Larson v. Insys Therapeutics Incorporated, et al.*, Lead Case No. 14-cv-01043-PHX-GMS (D. Ariz.) ($6.125 million settlement); *In re Unilife Corporation Securities Litigation*, Case No. 1:16-cv-03976-RA ($4.4 million settlement); and *In re Provectus Biopharmaceuticals, Inc. Securities Litigation*, Case No. 3:14-cv-00338-PLR-HBG (E.D. Tenn.) ($3.5 million settlement).

*Super Lawyers Magazine* has selected Ms. Solish as a "Rising Star" in the area of Securities Litigation for the past three consecutive years, 2016 through 2018.

Ms. Solish is admitted to the State Bar of California, the Ninth Circuit Court of Appeals, and the United States District Courts for the Central, Northern, and Southern Districts of California.  Ms. Solish is also a Registered Certified Public Accountant in Illinois.

Ms. Solish received her J.D. from the University of Texas School of Law in 2011, where she was an editor of the Texas International Law Journal, represented clients in both the Immigration and Worker Rights student clinics, and interned with MALDEF and the Texas Civil Rights Project.  Ms. Solish graduated *summa cum laude* from Tulane University with a B.S.M. in Accounting and Finance in 2007, where she was a member of the Beta Alpha Psi honors accounting organization and was inducted into the Beta Gamma Sigma Business Honors Society.

**GARTH A. SPENCER** is based in the New York office. His work includes securities, antitrust, and consumer litigation. Mr. Spencer also works on whistleblower matters.

Mr. Spencer received his B.A. in Mathematics from Grinnell College in 2006. He received his J.D. in 2011 from Duke University School of Law, where he was a staff editor on the Duke Law Journal. From 2011 until 2014 he worked in the tax group of a large, international law firm. Since 2014 he has worked on tax whistleblower matters. Mr. Spencer received his LL.M. in Taxation from New York University in 2016 immediately prior to joining the firm.

**DANA K. VINCENT** received her J.D. in 2002 from Georgetown University Law Center in Washington D.C. and her B.A. cum laude from Spellman College in 1995. Dana also earned an M.A. in Economics from the New School in 1999, where she was the Aaron Diamond Fellow. Ms. Vincent has served as a Law Clerk to the Hon. Sterling Johnson, Jr. of Brooklyn, NY, and has significant experience in the New York Office of the Attorney General where she served as an Assistant Attorney General from 2003-2006. She was a consultant to the Marshall Project, an online journalism organization focusing on U.S. Criminal Justice issues.

**MELISSA WRIGHT** is a litigation associate in the firm's Los Angeles office. Ms. Wright specializes in complex litigation, including the prosecution of securities fraud and consumer class actions. She has particular expertise in all aspects of the discovery phase of litigation, including drafting and responding to discovery requests, negotiating protocols for the production of Electronically Stored Information (ESI) and all facets of ESI discovery, and assisting in deposition preparation. She has managed multiple document production and review projects, including the development of ESI search terms, overseeing numerous attorneys reviewing large document productions, drafting meet and confer correspondence and motions to compel where necessary, and coordinating the analysis of information procured during the discovery phase for utilization in substantive motions or settlement negotiations.

Ms. Wright received her J.D. from the UC Davis School of Law in 2012, where she was a board member of Tax Law Society and externed for the California Board of Equalization's Tax Appeals Assistance Program focusing on consumer use tax issues. Ms. Wright also graduated from NYU School of Law, where she received her LL.M. in Taxation in 2013.

# EXHIBIT E



**History**  Pomerantz LLP is one of the most respected law firms in the United States dedicated to representing investors. The Firm was founded in 1936 by the late Abraham L. Pomerantz, widely regarded as a legal pioneer and "dean" of the plaintiffs' securities bar, who helped secure the right of investors to bring class and derivative actions.

**Leadership**  Today, led by Managing Partner Jeremy A. Lieberman, the Firm maintains the commitments to excellence and integrity passed down by Abe Pomerantz.

**Results**  In 2018, Pomerantz achieved a historic $3 billion settlement for defrauded investors, and precedent-setting legal rulings, in *In re Petrobras Securities Litigation*. Pomerantz consistently shapes the law, having won landmark decisions that expanded and protected investor rights and initiated historic corporate governance reforms, including securing the rights of U.S. and foreign institutions that purchased BP shares abroad to bring common law claims in U.S. court.

**Global Expertise**  Jennifer Pafiti, Partner and Head of Client Services, is dually qualified to practice in the United States and United Kingdom. Our Paris office is headed by French lawyer, Nicolas Tatin, Pomerantz's Director-Business Development Consultant for France, Benelux, Monaco and Switzerland. In addition to the Firm's in-house team in the United States and Paris, Pomerantz utilizes an extensive network of prominent law firms in the United Kingdom, Switzerland, and the Middle East, so that we are ready to assist clients, wherever they are situated, in recovering monies lost due to corporate misconduct and securities fraud. Our team of attorneys is collectively fluent in English, Arabic, Mandarin Chinese, Farsi, French, Hebrew, Italian, Portuguese, Romanian, Spanish, and Taiwanese.

**Practice**  Pomerantz protects, expands, and vindicates shareholder rights through our securities litigation services and portfolio monitoring program. The Firm represents some of the largest pension funds, asset managers and institutional investors around the globe, monitoring assets of over $5 trillion, and growing. Pomerantz's practice includes corporate governance, antitrust, and strategic consumer litigation.

**Recognition**  In 2019, Jeremy Lieberman was honored as Plaintiff Attorney of the Year by Benchmark Litigation, and Pomerantz received Benchmark Litigation's National Case Impact Award for *In re Petrobras Securities Litig*. In 2018, Pomerantz was honored as a Law360 Securities Practice Group of the Year and was a finalist for the *National Law Journal*'s Elite Trial Lawyers award; Jeremy Lieberman was named a Law360 Titan of the Plaintiffs' Bar and a Benchmark Litigation Star. Among other accolades, many of our attorneys have been chosen by their peers, year after year, as Super Lawyers® Top-Rated Securities Litigation Attorneys and Rising Stars.

Pomerantz is headquartered in New York City, with offices in
Chicago, Los Angeles and Paris.

# Securities Litigation

## Significant Landmarks

### *In re Petrobras Sec. Litig.*, No. 14-cv-9662 (S.D.N.Y. 2018)

On January 3, 2018, in a significant victory for investors, Pomerantz, as sole Lead Counsel for the class, along with Lead Plaintiff Universities Superannuation Scheme Limited ("USS"), achieved a historic $2.95 billion settlement with Petróleo Brasileiro S.A. ("Petrobras") and its related entity, Petrobras International Finance Company, as well as certain of Petrobras' former executives and directors. On February 2, 2018, Pomerantz and USS reached a $50 million settlement with Petrobras' auditors, PricewaterhouseCoopers Auditores Independentes, bringing the total recovery for Petrobras investors to $3 billion.

This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

The class action, brought on behalf of all purchasers of common and preferred American Depositary Shares ("ADSs") on the New York Stock Exchange, as well as purchasers of certain Petrobras debt, principally alleged that Petrobras and its senior executives engaged in a multi-year, multi-billion-dollar money-laundering and bribery scheme, which was concealed from investors.

In addition to the multi-billion-dollar recovery for defrauded  investors, Pomerantz secured precedent-setting decisions  when the Second Circuit Court of Appeals squarely rejected defendants' invitation to adopt the heightened ascertainability requirement promulgated by the Third Circuit, which would have required plaintiffs to demonstrate that determining membership in a class is "administratively feasible." The Second Circuit's rejection of this standard is not only a victory for bondholders in securities class actions, but also for plaintiffs in consumer fraud class actions and other class actions where documentation regarding Class membership is not readily attainable. The Second Circuit also refused to adopt a requirement, urged by defendants, that all securities class action plaintiffs seeking class certification prove through direct evidence (i.e., an event study) that the prices of the relevant securities moved in a particular direction in response to new information.

### *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, No. 1:15-cv-07199-JMF (S.D.N.Y)

In August 2019. Pomerantz, as Lead Counsel, achieved final approval of a $110 million settlement for the Class in this high-profile securities class action. Plaintiffs alleged that Fiat Chrysler concealed from investors that it improperly outfitted its diesel vehicles with "defeat device" software designed to cheat NOx emissions regulations in the U.S. and Europe, and that regulators had accused Fiat Chrysler of violating the emissions regulations. The *Fiat Chrysler* recovery provides the class of investors with as much as 20% of recoverable damages—an excellent result when compared to historical statistics in class action settlements, where typical recoveries for cases of this size are between 1.6% and 3.3%.

In addition to creating precedent-setting case law in successfully defending the various motions to dismiss the *Fiat Chrysler* litigation, Pomerantz also significantly advanced investors' ability to obtain critically important discovery from regulators that are often at the center of securities actions. During the course of the litigation, Pomerantz sought the deposition of a former employee of the National Highway Traffic Safety Administration ("NHTSA"). The United States Department of Transportation ("USDOT"), like most federal agencies, has enacted a set of regulations — known as "Touhy regulations" — governing when its employees may be called by private parties to testify in court. On their face, USDOT's regulations apply to both "current" and "former" employees. In response to Pomerantz's request to depose a former employee of NHSTA that interacted with Fiat Chrysler, NHTSA denied the request, citing the Touhy regulation. Despite the widespread application, and assumed appropriateness, of applying these regulations to former employees throughout the case law, Pomerantz filed an action against USDOT and NHTSA, arguing that the statute pursuant to which the Touhy regulations were enacted speaks only of "employees," which should be interpreted to apply only to current employees. The court granted summary judgment in favor of Pomerantz's clients, holding that "USDOT's Touhy regulations are unlawful to the extent that they apply to former employees." This victory will greatly shift the discovery tools available, so that investor plaintiffs in securities class actions against highly-regulated entities (for example, companies subject to FDA regulations) will now be able to depose former employees of the regulators that interacted with the defendants during the class period to get critical testimony concerning the company's violations and misdeeds.

### *Strougo v. Barclays PLC,* No. 14-cv-5797 (S.D.N.Y.)

Pomerantz, as sole Lead Counsel in this high-profile securities class action, achieved a $27 million settlement for defrauded investors in 2019. Plaintiffs alleged that defendants concealed information and misled investors regarding its management of its "LX" dark pool, a private trading platform where the size and price of the orders are not revealed to other participants. On November 6, 2017, the Second Circuit affirmed former District Court Judge Shira S. Scheindlin's February 2, 2016, Opinion and Order granting plaintiffs' motion for class certification in the case.

The Court of Appeals in *Barclays* held that direct evidence of price impact is not always necessary to demonstrate market efficiency, as required to invoke the *Basic* presumption of reliance, and was not required here. Significantly, when handing down its decision, the Second Circuit cited its own *Petrobras* decision, stating, "We have repeatedly—and recently—declined to adopt a particular test for market efficiency." *Waggoner v. Barclays PLC,* 875 F.3d 79, 94 (2d Cir. 2017).

The court held that defendants seeking to rebut the *Basic* presumption of reliance on an efficient market must do so by a preponderance of the evidence. The court further held that it would be inconsistent with *Halliburton II* to "allow [ ] defendants to rebut the *Basic* presumption by simply producing *some* evidence of market inefficiency, but not demonstrating its inefficiency to the district court." *Id.* at 100. The court rejected defendants' contention that Federal Rule of Evidence 301 applies, and made clear that the *Basic* presumption is a judicially-created doctrine and thus the burden of persuasion properly shifts to defendants. The court thus confirmed that plaintiffs have no burden to show price impact at the class certification stage—a significant victory for investors.

### *In re Yahoo! Inc. Sec. Litig.*, No. 17-cv-00373 (N.D. Cal.)

On September 10, 2018, Pomerantz, as Co-Lead Counsel, achieved final approval of a historic $80 million settlement for the Class in this ground-breaking litigation. The complaint, filed in January 2017, alleged

that the internet giant intentionally misled investors about its cybersecurity practices in the wake of massive data breaches in 2013 and 2014 that compromised the personal information of all 3 billion Yahoo customers. Plaintiffs allege that Yahoo violated federal securities laws by failing to disclose the breaches, which caused a subsequent stock price dive. This represents the first significant settlement to date of a securities fraud class action filed in response to a data breach.

As part of due diligence, Pomerantz located critical evidence showing that Yahoo's management had concurrent knowledge of at least one of the data breaches. Importantly, these records showed that Yahoo's Board of Directors, including Defendant CEO Marissa Mayer, had knowledge of and received repeated updates regarding the breach. In its public filings, Yahoo denied that the CEO knew about the breach, and the CEO's knowledge was a key issue in the case.

After receiving Plaintiffs' opposition to the motion to dismiss, but before the federal District Court ruled on the motion, the case settled for $80 million. This early and large settlement reflects the strength of the complaint's allegations.

***Kaplan v. S.A.C. Capital Advisors, L.P*, No. 12-cv-9350 (S.D.N.Y.)**

In May 2017, Pomerantz, as Co-Lead Counsel, achieved final approval of a $135 million recovery for the Class in this securities class action that stemmed from what has been called the most profitable insider trading scheme in U.S. history. After years of vigorous litigation, billionaire Steven A. Cohen's former hedge fund, S.A.C. Capital Advisors LP, agreed to settle the lawsuit by investors in the drug maker Elan Corp, who said they lost money because of insider trading by one of his portfolio managers.

***In re BP p.l.c. Securities Litigation*, MDL No. 2185 (S.D. Tex.)**

Since 2012, Pomerantz has pursued ground-breaking claims on behalf of institutional investors in BP p.l.c. to recover losses in BP's common stock (which trades on the London Stock Exchange) stemming from the 2010 Gulf oil spill. The threshold challenge was how to litigate in U.S. court in the wake of the Supreme Court's 2010 decision in *Morrison v. National Australia Bank*, which barred recovery for losses in foreign-traded securities under the U.S. federal securities laws. In 2013 and 2014, Pomerantz secured a series of significant victories in individual actions pursued on behalf of institutional investors in *In re BP p.l.c. Securities Litigation*, MDL No. 2185 (S.D. Tex.). Pomerantz defeated BP's *forum non conveniens* arguments seeking dismissal of U.S. institutions and, later, foreign institutions, pursuing English common law claims seeking recovery of investment losses stemming in both NYSE-traded ADSs and London Stock Exchange (LSE)-traded common stock. Pomerantz also defeated BP's attempt to extend the Securities Litigation Uniform Standards Act to dismiss these claims. Thanks to these rulings, Pomerantz now leads the only litigation, post-*Morrison*, where U.S. and foreign investors, pursuing foreign claims seeking recovery for losses in foreign-traded stocks, are doing so in a U.S. court.

In July 2017, Pomerantz secured the right of investors in BP p.l.c. to pursue "holder claims." The ruling, by Judge Keith P. Ellison of the U.S. District Court for the Southern District of Texas, is significant, given the dearth of precedent from anywhere in the U.S. that both recognizes the potential viability of a holder claim under some body of non-U.S. federal law and holds that the plaintiffs pursuing one had sufficiently alleged facts giving rise to reliance and other required elements of the underlying legal claims.

***In re Comverse Technology, Inc. Sec. Litig.,*** **No. 06-CV-1825 (E.D.N.Y.)**

In June 2010, Judge Nicholas G. Garaufis of the U.S. District Court for the Eastern District of New York granted final approval of a $225 million settlement proposed by Pomerantz and Lead Plaintiff the Menora Group, with Comverse Technology and certain of Comverse's former officers and directors, after four years of highly contested litigation. The *Comverse* settlement is one of the largest securities class action settlements reached since the passage of the Private Securities Litigation Reform Act ("PSLRA").[1] It is the second-largest recovery in a securities litigation involving the backdating of options, as well as one of the largest recoveries – $60 million – from an individual officer-defendant, Comverse's founder and former CEO, Kobi Alexander.

**Other significant settlements**

Even before the enactment of the PSLRA, Pomerantz represented state agencies in securities class actions, including the Treasurer of the Commonwealth of Pennsylvania (recovered $100 million) against a major investment bank. *In re Salomon Brothers Treasury Litig.*, No. 91-cv-5471 (S.D.N.Y.).

Pomerantz recovered $50 million for the Treasurer of the State of New Jersey and several New Jersey pension funds in an individual action. This was a substantially higher recovery than what our clients would have obtained had they remained in a related federal class action. *Treasurer of State of New Jersey v. AOL Time Warner, Inc.* (N.J. Super. Ct. Law Div., Mercer Cty.).

Pomerantz has litigated numerous cases for the Louisiana School Employees' Retirement System. For example, as Lead Counsel, Pomerantz recovered $74.75 million in a securities fraud class action against Citigroup, its CEO Sanford Weill, and its now infamous telecommunications analyst Jack Grubman. *In re Salomon Analyst AT&T Litig.*, No. 02-cv-6801 (S.D.N.Y.) Also, the Firm played a major role in a complex antitrust and securities class action which settled for over $1 billion. *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.). Pomerantz was a member of the Executive Committee in *In re Transkaryotic Therapies, Inc. Securities Litigation*, C.A. No. 03-10165 (D. Mass.), helping to win a $50 million settlement for the class.

In 2008, together with Co-Counsel, Pomerantz identified a substantial opportunity for recovery of losses in Countrywide mortgage-backed securities ("MBS") for three large New Mexico funds (New Mexico State Investment Council, New Mexico Public Employees' Retirement Association, and New Mexico Educational Retirement Board), which had been overlooked by all of the firms then in their securities litigation pool. We then filed the first non-class lawsuit by a public institution with respect to Countrywide MBS. *See N.M. State Inv. Council v. Countrywide Fin. Corp.,* No. D-0101-CV-2008-02289 (N.M. 1st Dist. Ct.). In Fall 2010, we negotiated for our clients an extremely favorable but confidential settlement.

Over its long history, Pomerantz has achieved significant settlements in numerous cases, a sampling of which is listed below:

- *In re Petrobras Sec. Litig.*, No. 14-cv-9662 (S.D.N.Y. 2018)
  $3 billion settlement of securities class action in which Pomerantz was Lead Counsel.

---

[1] Institutional Shareholder Services, *SCAS Top 100 Settlements Quarterly Report* (Sept. 30, 2010).

- *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, No. 1:15-cv-07199-JMF (S.D.N.Y)
  $110 million settlementof securities class action in which Pomerantz was Lead Counsel
- *In re Yahoo! Inc. Sec. Litig.,* No. 17-cv-00373 (N.D. Cal. 2018)
  $80 million settlement of securities class action in which Pomerantz was Co-Lead Counsel
- *In re Libor Based Financial Instruments Antitrust Litig.,* 1:11-md-2262
  $31 billion partial settlement with three defendants in this multi-district litigation in which Pomerantz represents the Berkshire Bank and the Government Development Bank for Puerto Rico
- *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-cv-9350 (S.D.N.Y. 2017)
  $135 million settlement of class action in which Pomerantz was Co-Lead Counsel.
- *In re Groupon, Inc. Sec. Litig.*, No. 12-cv-02450 (N.D. Ill. 2015)
  $45 million settlement of class action in which Pomerantz was sole Lead Counsel.
- *In re Elan Corp. Sec. Litig.*, No. 05-cv-2860 (S.D.N.Y. 2005)
  $75 million settlement in class action arising out of alleged accounting manipulations.
- *In re Safety-Kleen Corp. Stockholders Litig.*, No. 00-cv-736-17 (D.S.C. 2004)
  $54.5 million in total settlements in class action alleging accounting manipulations by corporate officials and auditors; last settlement reached on eve of trial.
- *Duckworth v. Country Life Ins. Co.*, No. 1998-CH-01046 (Ill. Cir. Ct., Cook Cty. 2000)
  $45 million recovery.
- *Snyder v. Nationwide Ins. Co.*, No. 97/0633 (N.Y. Sup. Ct. Onondaga Cty. 1998)
  Settlement valued at $100 million in derivative case arising from injuries to consumers purchasing life insurance policies.
- *In re National Health Lab., Inc. Sec. Litig.*, No. CV 92-1949 (S.D. Cal. 1995)
  $64 million recovery.
- *In re First Executive Corp. Sec. Litig.*, No. 89-cv-07135 (C.D. Cal. 1994)
  $102 million recovery for the class, exposing a massive securities fraud arising out of the Michael Milken debacle.
- *In re Boardwalk Marketplace Sec. Litig.*, MDL No. 712 (D. Conn. 1994)
  Over $66 million benefit in securities fraud action.
- *In re Telerate, Inc. S'holders Litig.*, C.A. No. 1115 (Del. Ch. 1989)
  $95 million benefit in case alleging violation of fiduciary duty under state law.

Pomerantz has also obtained stellar results for private institutions and Taft-Hartley funds. Below are a few examples:

- *In re Charter Commc'ns, Inc. Sec. Litig.*, No. 02-cv-1186 (E.D. Mo. 2005) (sole Lead Counsel for Lead Plaintiff StoneRidge Investment Partners LLC); $146.25 million class settlement, where Charter also agreed to enact substantive improvements in corporate governance.
- *In re Am. Italian Pasta Sec. Litig.*, No. 05-cv-865 (W.D. Mo. 2008) (sole Lead Counsel for Lead Plaintiff Ironworkers Locals 40, 361 and 417; $28.5 million aggregate settlements).
- *Richardson v. Gray*, No. 116880/1995 (N.Y. Sup. Ct. N.Y. Cty. 1999); and *In re Summit Metals*, No. 98-2870 (Bankr. D. Del. 2004) (two derivative actions where the Firm represented C.C. Partners Ltd. and obtained judgment of contempt against controlling shareholder for having made "extraordinary" payments to himself in violation of a preliminary injunction; persuaded the court to jail him for two years upon his refusal to pay; and, in a related action, won a $43 million judgment after trial and obtained turnover of stock of two companies).

**Shaping the Law**

Not only has Pomerantz established a long track record of obtaining substantial monetary recoveries for our clients; whenever appropriate, we also pursue corporate governance reforms on their behalf. In *In re Chesapeake Shareholders Derivative Litig*ation, No. CJ-2009-3983 (Okla. Dist. Ct., Okla. Cty. 2011), for example, the Firm served as Co-Lead Counsel, representing a public pension client in a derivative case arising from an excessive compensation package granted to Chesapeake's CEO and founder. This was a derivative action, not a class action. Yet it is illustrative of the results that can be obtained by an institutional investor in the corporate governance arena. There we obtained a settlement which called for the repayment of $12.1 million and other consideration by the CEO. The Wall Street Journal (Nov. 3, 2011) characterized the settlement as "a rare concession for the 52-year old executive, who has run the company largely by his own rules since he co-founded it in 1989." The settlement also included comprehensive corporate governance reforms.

The Firm has won many landmark decisions that have enhanced shareholders' rights and improved corporate governance. These include decisions that established that:

- defendants seeking to rebut the *Basic* presumption of reliance on an efficient market must do so by a preponderance of the evidence. *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) (*Strougo v. Barclays PLC,* in the court below);
- plaintiffs have no burden to show price impact at the class certification stage. *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) (*Strougo v. Barclays PLC,* in the court below);
- the ascertainability doctrine requires only that a class be defined using objective criteria that establish a membership with definite boundaries. *Universities Superannuation Scheme Ltd. v. Petróleo Brasileiro S.A. Petrobras*, 862 F.3d 250 (2d Cir. 2017);
- companies cannot adopt bylaws to regulate the rights of former stockholders. *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. 2015);
- a temporary rise in share price above its purchase price in the aftermath of a corrective disclosure does not eviscerate an investor's claim for damages. *Acticon AG v. China Ne. Petroleum Holdings Ltd.,* 692 F.3d 34 (2d Cir. 2012);
- an MBS holder may bring claims if the MBS price declines even if all payments of principal and interest have been made. Transcript of Proceedings, *N.M. State Inv. Council v. Countrywide Fin. Corp.,* No. D-0101-CV-2008-02289 (N.M. 1st Dist. Ct. Mar. 25, 2009);
- when a court selects a Lead Plaintiff under the Private Securities Litigation Reform Act ("PSLRA"), the standard for calculating the "largest financial interest" must take into account sales as well as purchases. *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007);
- a managing underwriter can owe fiduciary duties of loyalty and care to an issuer in connection with a public offering of the issuer stock, even in the absence of any contractual agreement. Professor John C. Coffee, a renowned Columbia University securities law professor, commenting on the ruling, stated: "It's going to change the practice of all underwriting." *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y. 3d 11 (2005);
- purchasers of options have standing to sue under federal securities laws. *In re Green Tree Fin. Corp. Options Litig.*, No. 97-2679, 2002 U.S. Dist. LEXIS 13986 (D. Minn. July 29, 2002);
- shareholders have a right to a jury trial in derivative actions. *Ross v. Bernhard*, 396 U.S. 531 (1970);

---

- a company may have the obligation to disclose to shareholders its Board's consideration of important corporate transactions, such as the possibility of a spin-off, even before any final decision has been made. *Kronfeld v. Trans World Airlines, Inc*., 832 F.2d 726 (2d Cir. 1987);
- specific standards for assessing whether mutual fund advisors breach fiduciary duties by charging excessive fees. *Gartenberg v. Merrill Lynch Asset Mgmt., Inc*., 740 F.2d 190 (2d Cir. 1984);
- investment advisors to mutual funds are fiduciaries who cannot sell their trustee positions for a profit. *Rosenfeld v. Black*, 445 F.2d 1337 (2d Cir. 1971); and
- management directors of mutual funds have a duty to make full disclosure to outside directors "in every area where there was even a possible conflict of interest."  *Moses v. Burgin*, 445 F.2d 369 (1st Cir. 1971).

## Comments from the Courts

Throughout its history, courts time and again have acknowledged the Firm's ability to vigorously pursue and successfully litigate actions on behalf of investors.

In approving the settlement in *Strougo v. Barclays PLC* in June 2019, Judge Victor Marrero of the Southern District of New York wrote:

> Let me thank counsel on both sides for the extraordinary work both sides did in bringing this matter to a reasonable conclusion. As the parties have indicated, the matter was intensely litigated, but it was done in the most extraordinary fashion with cooperation, collaboration, and high levels of professionalism on both sides, so I thank you.

In approving the $3 billion settlement in *In re Petrobras Securities Litigation* in June 2018, Judge Jed S. Rakoff of the Southern District of New York wrote:

> [T]he Court finds that Class Counsel's performance was in many respects exceptional, with the result that, as noted, the class is poised to enjoy a substantially larger per share recovery [65%] than the recovery enjoyed by numerous large and sophisticated plaintiffs who separately settled their claims.

At the hearing for preliminary approval of the settlement in *In re Petrobras Securities Litigation* in February 2018, Judge Rakoff stated:

> [T]he lawyers in this case [are] some of the best lawyers in the United States, if not in the world.

Two years earlier, in certifying two Classes in *In re Petrobras Securities Litigation* in February 2016, Judge Rakoff wrote:

> [O]n the basis not only of USS's counsel's prior experience but also the Court's observation of its advocacy over the many months since it was appointed Lead Counsel, the Court concludes that Pomerantz, the proposed class counsel, is "qualified, experienced and able to conduct the litigation." ... [T]he Pomerantz firm has both the skill and resources to represent the Classes adequately.

In approving the settlement in *Thorpe v. Walter Investment Management Corp.*, No. 14-cv-20880, 2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 14, 2016) Judge Ursula Ungaro wrote:

> Class Counsel has developed a reputation for zealous advocacy in securities class actions. ... The settlement amount of $24 million is an outstanding result.

At the May 2015 hearing wherein the court approved the settlement in *Courtney v. Avid Technology, Inc.*, No. 13-cv-10686 (D. Mass. May 12, 2015), following oral argument by Jeremy A. Lieberman, Judge William G. Young stated:

> This has been very well litigated. It is always a privilege. I don't just say that as a matter of form. And I thank you for the vigorous litigation that I've been permitted to be a part of. [Tr. at 8-9.]

At the January 2012 hearing wherein the court approved the settlement in *In re Chesapeake Energy Corp. Shareholder Derivative Litigation*, No. CJ-2009-3983 (Okla. Dist. Ct., Okla. Cty. Jan. 30, 2012), following oral argument by Marc I. Gross, Judge Daniel L. Owens stated:

> Counsel, it's a pleasure, and I mean this and rarely say it. I think I've said it two times in 25 years. It is an extreme pleasure to deal with counsel of such caliber.
> [Tr. at 48.])

In approving the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.) in June 2010, Judge Nicholas G. Garaufis stated:

> As outlined above, the recovery in this case is one of the highest ever achieved in this type of securities action. ... The court also notes that, throughout this litigation, it has been impressed by Lead Counsel's acumen and diligence. The briefing has been thorough, clear, and convincing, and ... Lead Counsel has not taken short cuts or relaxed its efforts at any stage of the litigation.

In approving a $146.25 million settlement in *In re Charter Communications Securities Litigation*, No. 02-CV-1186, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005), in which Pomerantz served as sole Lead Counsel, Judge Charles A. Shaw praised the Firm's efforts, citing "the vigor with which Lead Counsel ... investigated claims, briefed the motions to dismiss, and negotiated the settlement." He further stated:

> This Court believes Lead Plaintiff achieved an excellent result in a complex action, where the risk of obtaining a significantly smaller recovery, if any, was substantial.

In approving a $24 million settlement in *In re Force Protection, Inc.,* No. 08 CV 845 (D.S.C. 2011), Judge C. Weston Houk described the Firm as "attorneys of great ability and great reputation" and commended the Firm for having "done an excellent job."

In certifying a class in a securities fraud action against analysts in *DeMarco v. Robertson Stephens Inc.*, 228 F.R.D. 468 (S.D.N.Y. 2005), Judge Gerard D. Lynch stated that Pomerantz had "ably and zealously represented the interests of the class."

Numerous courts have made similar comments:

- Appointing Pomerantz Lead Counsel in *American Italian Pasta Co. Securities Litigation*, No 05-CV-0725 (W.D. Mo.), a class action that involved a massive fraud and restatements spanning several years, the District Court observed that the Firm "has significant experience (and has been extremely effective) litigating securities class actions, employs highly qualified attorneys, and possesses ample resources to effectively manage the class litigation and protect the class's interests."

- In approving the settlement in *In re Wiring Devices Antitrust Litigation*, MDL No. 331 (E.D.N.Y. Sept. 9, 1980), Chief Judge Jack B. Weinstein stated that "Counsel for the plaintiffs I think did an excellent job. ... They are outstanding and skillful. The litigation was and is extremely complex. They assumed a great deal of responsibility. They recovered a very large amount given the possibility of no recovery here which was in my opinion substantial."

- In *Snyder v. Nationwide Insurance Co.*, No. 97/0633, (N.Y. Supreme Court, Onondaga Cty.), a case where Pomerantz served as Co-Lead Counsel, Judge Tormey stated, "It was a pleasure to work with you. This is a good result. You've got some great attorneys working on it."

- In *Steinberg v. Nationwide Mutual Insurance Co.* (E.D.N.Y. 2004), Judge Spatt, granting class certification and appointing the Firm as class counsel, observed: "The Pomerantz firm has a strong reputation as class counsel and has demonstrated its competence to serve as class counsel in this motion for class certification." (224 F.R.D. 67, 766.)

- In *Mercury Savings & Loan*, No. 90-cv-00087 LHM (C.D. Cal. 1993), Judge McLaughlin commended the Firm for the "absolutely extraordinary job in this litigation."

- In *Boardwalk Marketplace Securities Litigation*, MDL No. 712 (D. Conn.), Judge Eginton described the Firm's services as "exemplary," praised it for its "usual fine job of lawyering ...[in] an extremely complex matter," and concluded that the case was "very well-handled and managed." (Tr. at 6, 5/20/92; Tr. at 10, 10/10/92.)

- In *Nodar v. Weksel*, No. 84 Civ. 3870 (S.D.N.Y.), Judge Broderick acknowledged "that the services rendered [by Pomerantz] were excellent services from the point of view of the class represented, [and] the result was an excellent result." (Tr. at 21-22, 12/27/90.)

- In *Klein v. A.G. Becker Paribas, Inc.*, No. 83 Civ. 6456 (S.D.N.Y.), Judge Goettel complimented the Firm for providing "excellent ...absolutely top-drawer representation for the class, particularly in light of the vigorous defense offered by the defense firm." (Tr. at 22, 3/6/87.)

- In *Digital Securities Litigation*, No. 83-3255 (D. Mass.), Judge Young lauded the Firm for its "[v]ery fine lawyering." (Tr. at 13, 9/18/86.)

- In *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 40 (S.D.N.Y. 1977), Judge Frankel, referring to Pomerantz, said: "Their experience in handling class actions of this nature is known to the court and certainly puts to rest any doubt that the absent class members will receive the quality of representation to which they are entitled."

- In *Rauch v. Bilzerian*, No. 88 Civ. 15624 (N.J. Sup. Ct.), the court, after trial, referred to Pomerantz partners as "exceptionally competent counsel," and as having provided "top drawer, topflight [representation], certainly as good as I've seen in my stay on this court."

# Corporate Governance Litigation

Pomerantz is committed to ensuring that companies adhere to responsible business practices and practice good corporate citizenship. We strongly support policies and procedures designed to give shareholders the ability to oversee the activities of a corporation. We vigorously pursue corporate governance reform, particularly in the area of excess compensation, where it can address the growing disparity between the salaries of executives and the workers of major corporations. We have successfully utilized litigation to bring about corporate governance reform in numerous cases, and always consider whether such reforms are appropriate before any case is settled.

Pomerantz's Corporate Governance Practice Group, led by Partner Gustavo F. Bruckner, enforces shareholder rights and prosecutes actions challenging corporate transactions that arise from an unfair process or result in an unfair price for shareholders.

In September 2017, New Jersey Superior Court Judge Julio Mendez, of Cape May County Chancery Division, approved Pomerantz's settlement in a litigation against Ocean Shore Holding Co. The settlement provided non-pecuniary benefits for a non-opt out class. In so doing, Judge Mendez became the first New Jersey state court judge to formally adopt the Third Circuit's nine-part *Girsh* factors, *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). There has never before been a published New Jersey state court opinion setting out the factors a court must consider in evaluating whether a class action settlement should be determined to be fair and adequate. After conducting an analysis of each of the nine *Girsh* factors and holding that "class actions settlements involving non-monetary benefits to the class are subject to more exacting scrutiny," Judge Mendez held that the proposed settlement provided a material benefit to the shareholders.

In February 2018, the Maryland Circuit Court, Montgomery County, approved a $17.5 million settlement that plaintiffs achieved as additional consideration on behalf of a class of shareholders of American Capital, Ltd. *In re Am. Capital, Ltd. S'holder Litig.*, C.A. No. 422598-V (2018). The settlement resolved Plaintiffs' claims regarding a forced sale of American Capital.

Pomerantz filed an action challenging the sale of American Capital, a Delaware corporation with its headquarters in Maryland. Among other things, American Capital's board of directors (the "Board") agreed to sell the company at a price below what two other bidders were willing to offer. Worse, the merger price was even below the amount that shareholders would have received in the company's planned phased liquidation, which the company was considering under pressure from Elliott Management, an activist hedge fund and holder of approximate 15% of American Capital stock. Elliott was not originally named as a defendant, but after initial discovery showed the extent of its involvement in the Board's breaches of fiduciary duty, Elliott was added as a defendant in an amended complaint under the theory that Elliott exercised actual control over the Board's decision-making. Elliott moved to dismiss on jurisdictional grounds and additionally challenged its alleged status as a controller of American Capital. In June 2017, minutes before the hearing on defendants' motion to dismiss, a partial settlement was entered into with the members of the Board for $11.5 million. The motion to dismiss hearing proceeded despite the partial settlement, but only as to Elliott. In July 2017, the court denied the motion to dismiss, finding that Elliott, "by virtue solely of its own conduct, … has easily satisfied the transacting business prong of the Maryland long arm statute." The court also found that the "amended

complaint in this case sufficiently pleads that Elliott was a controller with respect to" the sale, thus implicating a higher standard of review. Elliott subsequently settled the remaining claims for an additional $6 million. Pomerantz served as Co-Lead Counsel.

In May 2017, the Circuit Court of the State of Oregon approved the settlement achieved by Pomerantz and co-counsel of a derivative action brought by two shareholders of Lithia Motors, Inc. The lawsuit alleged breach of fiduciary duties by the board of directors in approving, without any meaningful review, the Transition Agreement between Lithia Motors and Sidney DeBoer, its founder, controlling shareholder, CEO, and Chairman, who was stepping down as CEO. DeBoer and his son, the current CEO, Bryan DeBoer, negotiated virtually all the material terms of the Agreement, by which the company agreed to pay the senior DeBoer $1,060,000 and a $42,000 car allowance annually for the rest of his life, plus other benefits, in addition to the $200,000 per year that he would receive for continuing to serve as Chairman.

The *Lithia* settlement extracted corporate governance therapeutics that provide substantial benefits to Lithia and its shareholders and redress the wrongdoing alleged by plaintiffs. The board will now be required to have at least five independent directors -- as defined under the New York Stock Exchange rules -- by 2020; a number of other new protocols will be in place to prevent self-dealing by board members. Further, the settlement calls for the Transition Agreement to be reviewed by an independent auditor who will determine whether the annual payments of $1,060,000 for life to Sidney DeBoer are reasonable. Lithia has agreed to accept whatever decision the auditor makes.

In January 2017, the Group received approval of the Delaware Chancery Court for a $5.6 million settlement it achieved on behalf of a class of shareholders of Physicians Formula Holdings Inc. over an ignored merger offer in 2012. *In re Physicians Formula Holdings Inc.*, C.A. No. 7794-VCL (Del. Ch.).

The Group obtained a landmark ruling in *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch.), that fee-shifting bylaws adopted after a challenged transaction do not apply to shareholders affected by the transaction. They were also able to obtain a *25% price increase* for members of the class cashed out in the going private transaction.

In *Miller v. Bolduc*, No. SUCV 2015-00807 (Mass. Super. Ct.), the Group caused Implant Sciences to hold its first shareholder annual meeting in five years and put an important compensation grant up for a shareholder vote.

In *Smollar v. Potarazu*, C.A. No. 10287-VCN (Del. Ch.), the Group pursued a derivative action to bring about the appointment of two independent members to the board of directors, retention of an independent auditor, dissemination of financials to shareholders and the holding of first ever in-person annual meeting, among other corporate therapeutics.

In *Hallandale Beach Police Officers & Firefighters' Personnel Retirement Fund vs. Lululemon athletica, Inc.,* C.A. No. 8522-VCP (Del. Ch.), in an issue of first impression in Delaware, the Chancery Court ordered the production of the chairman's 10b5-1 stock trading plan. The court found that a stock trading plan established by the company's chairman, pursuant to which a broker, rather than the chairman himself, would liquidate a portion of the chairman's stock in the company, did not preclude potential liability for insider trading.

In *Strougo v. North State Bancorp*, No. 15 CVS 14696 (N.C. Super. Ct.), the Group caused the Merger Agreement to be amended to provide a "majority of the minority" provision for the holders of North State Bancorp's common stock in connection with the shareholder vote on the merger. As a result of the Action, common shareholders could stop the merger if they did not wish it to go forward.

Pomerantz's commitment to advancing sound corporate governance principles is further demonstrated by the more than 26 years that we have co-sponsored the Abraham L. Pomerantz Lecture Series with Brooklyn Law School. These lectures focus on critical and emerging issues concerning shareholder rights and corporate governance and bring together top academics and litigators.

Our bi-monthly newsletter, *The Pomerantz Monitor*, provides institutional investors updates and insights on current issues in corporate governance.

# Strategic Consumer Litigation

Pomerantz's Strategic Consumer Litigation practice group represents consumers in actions that seek to recover monetary and injunctive relief on behalf of class members while also advocating for important consumer rights. The attorneys in this group have successfully prosecuted claims involving California's Unfair Competition Law, California's Consumers Legal Remedies Act, the Song Beverly Consumer Warranty Act and the Song Beverly Credit Card Act. They have resolved data breach privacy cases and cases involving unlawful recording, illegal background checks, unfair business practices, misleading advertising and other consumer finance related actions. All of these actions also have resulted in significant changes to defendants' business practices.

Pomerantz currently represents consumers in a nationwide class action against Facebook for mistargeting ads. Plaintiff alleges that Facebook programmatically displays a material percentage of ads to users outside the defined target market and displays ads to "serial Likers" outside the defined target audience in order to boost Facebook's revenue. *IntegrityMessageBoards.com v. Facebook, Inc. (N.D. Cal.) Case No. 4:18 -cv-05286 PJH*.

Pomerantz has pioneered litigation to establish claims for public injunctive relief under California's unfair business practices statute. For example, Pomerantz has filed cases seeking to prevent major auto manufacturers from unauthorized access to, and use of, drivers' vehicle data without compensation, and seeking to require the auto companies to share diagnostic data extracted from drivers' vehicles. The Strategic Consumer Litigation practice group also is prosecuting class cases against auto manufacturers for failing to properly identify high-priced parts that must be covered in California under extended emissions warranties.

Other consumer matters handled by Pomerantz's Strategic Consumer Litigation practice group include actions involving cryptocurrency, medical billing, price fixing, and false advertising of various consumer products and services.

# Antitrust Litigation

Pomerantz has earned a reputation for prosecuting complex antitrust and consumer class actions with vigor, innovation, and success. Pomerantz's Antitrust and Consumer Group has recovered billions of dollars for the Firm's business and individual clients and the classes that they represent. Time and again, Pomerantz has protected our free-market system from anticompetitive conduct such as price fixing, monopolization, exclusive territorial division, pernicious pharmaceutical conduct, and false advertising. Pomerantz's advocacy has spanned across diverse product markets, exhibiting the Antitrust and Consumer Group's versatility to prosecute class actions on any terrain.

Pomerantz has served and is currently serving in leadership or Co-Leadership roles in several high-profile multi-district litigation class actions. In December 2018, the Firm achieved a $31 billion partial settlement with three defendants on behalf of a class of U.S. lending institutions that originated, purchased or held loans paying interest rates tied to the U.S. Dollar London Interbank Offered Rate (USD LIBOR). It is alleged that the class suffered damages as a result of collusive manipulation by the LIBOR contributor panel banks that artificially suppressed the USD LIBOR rate during the class period, causing the class members to receive lower interest payments than they would have otherwise received. *In re Libor Based Financial Instruments Antitrust Litig.,* 1:11-md-2262.

Pomerantz represented baseball and hockey fans in a game-changing antitrust class action against Major League Baseball and the National Hockey League, challenging the exclusive territorial division of live television broadcasts, internet streaming, and the resulting geographic blackouts. *See Laumann v. NHL* and *Garber v. MLB* (S.D.N.Y. 2012).

Pomerantz has spearheaded the effort to challenge harmful anticompetitive conduct by pharmaceutical companies—including Pay-for-Delay Agreements—that artificially inflates the price of prescription drugs by keeping generic versions off the market.

Even prior to the 2013 precedential U.S. Supreme Court decision in *Actavis*, Pomerantz litigated and successfully settled the following generic-drug-delay cases:

- *In re Flonase Antitrust Litig.* (E.D. Pa. 2008) ($35 million);
- *In re Toprol XL Antitrust Litig.* (D. Del. 2006) ($11 million); and
- *In re Wellbutrin SR Antitrust Litig.* (E.D. Pa. 2004) ($21.5 million).

Other exemplary victories include Pomerantz's prominent role in *In re NASDAQ Market-Makers Antitrust Litigation* (S.D.N.Y.), which resulted in a settlement in excess of $1 billion for class members, one of the largest antitrust settlements in history. Pomerantz also played prominent roles in *In re Sorbates Direct Purchaser Antitrust Litigation* (N.D. Cal.), which resulted in over an $82 million recovery, and in *In re Methionine Antitrust Litigation* (N.D. Cal.), which resulted in a $107 million recovery. These cases illustrate the resources, expertise, and commitment that Pomerantz's Antitrust Group devotes to prosecuting some of the most egregious anticompetitive conduct.

# A Global Advocate for Asset Managers
# and Public and Taft-Hartley Pension Funds

Pomerantz represents some of the largest pension funds, asset managers, and institutional investors around the globe, monitoring assets of over $5 trillion, and growing. Utilizing cutting-edge legal strategies and the latest proprietary techniques, Pomerantz protects, expands, and vindicates shareholder rights through our securities litigation services and portfolio monitoring program.

Pomerantz partners routinely advise foreign and domestic institutional investors on how best to evaluate losses to their investment portfolios attributable to financial misconduct and how best to maximize their potential recoveries worldwide. In particular, Pomerantz Partners, Jeremy Lieberman, Patrick Dahlstrom, Jennifer Pafiti, and Marc Gross regularly travel throughout the U.S. and across the globe to meet with clients on these issues and are frequent speakers at investor conferences and educational forums in North America, Europe, and the Middle East.

# Institutional Investor Services

Pomerantz offers a variety of services to institutional investors. Through the Firm's proprietary system, PomTrack®, Pomerantz monitor client portfolios to identify and evaluate potential and pending securities fraud, ERISA and derivative claims, and class action settlements. Monthly customized PomTrack® reports are included with the service.

When a potential securities fraud claim impacting a client is identified, Pomerantz offers to thoroughly analyze the case's merits and provide a written analysis and recommendation. If litigation is warranted, a team of highly skilled attorneys will provide efficient and effective legal representation. The experience and expertise of our attorneys – which have consistently been acknowledged by the courts – allow Pomerantz to vigorously pursue the claims of investors, taking complex cases to trial when warranted.

Pomerantz is committed to ensuring that companies adhere to responsible business practices and practice good corporate citizenship. The Firm strongly support policies and procedures designed to give shareholders the ability to oversee the activities of a corporation. Pomeranz has successfully utilized litigation to bring about corporate governance reform, and always considers whether such reforms are appropriate before any case is settled.

Pomerantz provides clients with insightful and timely commentary on matters essential to effective fund management in our bi-monthly newsletter, *The Pomerantz Monitor* and regularly sponsors conferences and roundtable events around the globe with speakers who are experts in securities litigation and corporate governance matters.

# Attorneys

## Partners

### Jeremy A. Lieberman

Jeremy A. Lieberman is Pomerantz's Managing Partner. Jeremy became associated with the Firm in August 2004 and was elevated to Partner in January 2010. He was honored as Benchmark Litigation's 2019 Plaintiff Attorney of the Year. In 2018, Jeremy was honored as a Titan of the Plaintiffs Bar by Law360 and as a Benchmark Litigation Star. The Pomerantz team that Jeremy leads was named a 2018 Securities Practice Group of the Year. Jeremy has been honored as a Super Lawyers® "Top-Rated Securities Litigation Attorney" from 2016 through 2019 – a recognition bestowed on no more than 5% of eligible attorneys in the New York Metro area. The Legal 500, in honoring Pomerantz as a Leading Firm for 2016 and 2017, stated that in New York, "Jeremy Lieberman is super impressive – a formidable adversary for any defense firm."

Jeremy led the litigation of *In re Petrobras Securities Litigation,* a closely-watched securities class action arising from a multi-billion-dollar kickback and bribery scheme involving Brazil's largest oil company, Petróleo Brasileiro S.A. – Petrobras, in which Pomerantz was sole Lead Counsel. The biggest instance of corruption in the history of Brazil ensnared not only Petrobras' former executives but also Brazilian politicians, including former president Lula da Silva and one-third of the Brazilian Congress. In January and February 2018, Jeremy achieved a historic $3 billion settlement for the Class. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Jeremy also secured a significant victory for Petrobras investors at the Second Circuit Court of Appeals, when the court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by the Third Circuit Courts of Appeals. The ruling will have a positive impact on plaintiffs in securities fraud litigation. Indeed, the *Petrobras* litigation was honored in 2019 as a National Impact Case by Benchmark Litigation.

In 2019, Jeremy achieved a $27 million settlement for the Class in *Strougo v. Barclays PLC*, a high-profile securities class action in which Pomerantz was Lead Counsel. Plaintiffs alleged that Barclays PLC misled institutional investors about the manipulation of the banking giant's so-called "dark pool" trading systems in order to provide a trading advantage to high-frequency traders over its institutional investor clients. This case turned on the duty of integrity owed by Barclays to its clients. In November 2017, Jeremy achieved precedent-setting victories for investors, when the Second Circuit Court of Appeals held that direct evidence of price impact is not always necessary to demonstrate market efficiency to invoke the presumption of reliance, and that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production.

Jeremy led the Firm's high-profile class action litigation against Yahoo! Inc., in which Pomerantz, as Lead Counsel, achieved an $80 million settlement for the Class in 2018. The case involved the biggest data breaches in U.S. history, in which over 3 billion Yahoo accounts were compromised.

In 2018 Jeremy achieved a $3,300,000 settlement for the Class in the Firm's securities class action against Corinthian Colleges, one of the largest for-profit college systems in the country, for alleged misrepresentations about its job placement rates, compliance with applicable regulations, and enrollment statistics. Pomerantz prevailed in the motion to dismiss the proceedings, a particularly noteworthy victory because Chief Judge George King of the Central District of California had dismissed two prior lawsuits against Corinthian with similar allegations. *Erickson v. Corinthian Colleges, Inc.* (C.D. Cal.).

Jeremy led the Firm's litigation team that in 2018 secured a $31 million partial settlement with three defendants in *In re Libor Based Financial Instruments Antitrust Litigation*, a closely watched multi-district litigation, which concerns the London Interbank Offered Rate (LIBOR) rigging scandal.

Jeremy heads the Firm's individual action against pharmaceutical giant Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc. (together, "Teva"), and certain of Teva's current and former employees and officers relating to alleged anticompetitive practices in Teva's sales of generic drugs. *Clal Insurance Company Ltd. v. Teva Pharmaceutical Industries Ltd.*

Jeremy also serves as Lead Counsel in a number of the most high-profile securities class actions pending in the U.S. courts, such as *In re Mylan N.V. Securities Litigation, In re Perrigo Co. Securities Litigation,* and *In re Fiat Chrysler Automobiles N.V. Securities Litigation.*

In *In re China North East Petroleum Corp. Securities Litigation*, Jeremy achieved a significant victory for shareholders in the United States Court of Appeals for the Second Circuit, whereby the Appeals Court ruled that a temporary rise in share price above its purchase price in the aftermath of a corrective disclosure did not eviscerate an investor's claim for damages. The Second Circuit's decision was deemed "precedential" by the *New York Law Journal* and provides critical guidance for assessing damages in a § 10(b) action.

Jeremy had an integral role in *In re Comverse Technology, Inc. Securities Litigation*, in which he and his partners achieved a historic $225 million settlement on behalf of the Class, which was the second-largest options backdating settlement to date.

Jeremy regularly consults with Pomerantz's international institutional clients, including pension funds, regarding their rights under the U.S. securities laws. Jeremy is working with the Firm's international clients to craft a response to the Supreme Court's ruling in *Morrison v. National Australia Bank, Ltd.*, which limited the ability of foreign investors to seek redress under the federal securities laws. Currently, Jeremy is representing several UK and EU pension funds and asset managers in individual actions against BP plc in the United States District Court for the Southern District of Texas.

Jeremy is a frequent lecturer regarding current corporate governance and securities litigation issues. In March 2017, he spoke at the ICGN conference in Washington D.C., regarding recent trends in foreign securities litigation. He has also led discussions regarding U.S. securities class actions in Paris, France.

Jeremy graduated from Fordham University School of Law in 2002. While in law school, he served as a staff member of the *Fordham Urban Law Journal*. Upon graduation, he began his career at a major New York law firm as a litigation associate, where he specialized in complex commercial litigation.

Jeremy is admitted to practice in the State of New York; the U.S. District Courts for the Southern and Eastern Districts of New York, the Southern District of Texas, the District of Colorado, the Eastern District of Michigan and Northern District of Illinois; the U.S. Courts of Appeals for the First, Second, Third, Fourth, Sixth, Ninth, and Tenth Circuits; and the United States Supreme Court.

## Patrick V. Dahlstrom

Patrick Dahlstrom joined Pomerantz as an associate in 1991 and was elevated to Partner in January 1996. He was Co-Managing Partner with Jeremy Lieberman in 2017 and 2018 and is now Senior Partner. Patrick is based in the Firm's Chicago office. He was honored as a Super Lawyers® "Top-Rated Securities Litigation Attorney" in 2018 and 2019.

Patrick, a member of the Firm's Institutional Investor Practice and New Case Groups, has extensive experience litigating cases under the PSLRA. He led *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in which the Firm, as Lead Counsel, recovered a $225 million settlement for the Class – the second-highest ever for a case involving back-dating options, and one of the largest recoveries ever from an individual officer-defendant, the company's founder and former CEO. In *Comverse*, the Firm obtained an important clarification of how courts calculate the "largest financial interest" in connection with the selection of a Lead Plaintiff, in a manner consistent with *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). Judge Garaufis, in approving the settlement, lauded Pomerantz: "The court also notes that, throughout this litigation, it has been impressed by Lead Counsel's acumen and diligence. The briefing has been thorough, clear, and convincing, and ... Lead Counsel has not taken short cuts or relaxed its efforts at any stage of the litigation."

In *DeMarco v. Robertson Stephens Inc.*, 228 F.R.D. 468 (S.D.N.Y. 2005), Patrick obtained the first class certification in a federal securities case involving fraud by analysts.

Patrick's extensive experience in litigation under the PSLRA has made him an expert not only at making compelling arguments on behalf of Pomerantz' clients for Lead Plaintiff status, but also in discerning weaknesses of competing candidates. *In re American Italian Pasta Co. Securities Litigation* and *Comverse* are the most recent examples of his success in getting our clients appointed sole Lead Plaintiff despite competing motions by numerous impressive institutional clients.

Patrick was a member of the trial team in *In re ICN/Viratek Securities Litigation* (S.D.N.Y. 1997), which, after trial, settled for $14.5 million. Judge Wood praised the trial team: "[P]laintiffs counsel did a superb job here on behalf of the class. ...This was a very hard fought case. You had very able, superb opponents, and they put you to your task. ...The trial work was beautifully done and I believe very efficiently done."

Patrick's speaking engagements include interviews by NBC and the CBC regarding securities class actions, and among others, a presentation at the November 2009 State Association of County Retirement Systems Fall Conference as the featured speaker at the Board Chair/Vice Chair Session entitled: "Cleaning Up After the 100 Year Storm. How trustees can protect assets and recover losses following the burst of the housing and financial bubbles."

Patrick is a 1987 graduate of the Washington College of Law at American University in Washington, D.C., where he was a Dean's Fellow, Editor in Chief of the *Administrative Law Journal*, a member of the Moot

Court Board representing Washington College of Law in the New York County Bar Association's Antitrust Moot Court Competition, and a member of the Vietnam Veterans of America Legal Services/Public Interest Law Clinic. Upon graduating, Patrick served as the Pro Se Staff Attorney for the United States District Court for the Eastern District of New York and was a law clerk to the Honorable Joan M. Azrack, United States Magistrate Judge.

Patrick is admitted to practice in New York and Illinois, the United States District Courts for the Southern and Eastern Districts of New York, Northern District of Illinois, Northern District of Indiana, Eastern District of Wisconsin, District of Colorado, Western District of Pennsylvania, the United States Courts of Appeals for the First, Fourth, Sixth, Seventh, Eighth, and Ninth Circuits, and the United States Supreme Court.

**Gustavo F. Bruckner**

Gustavo F. Bruckner heads Pomerantz's Corporate Governance practice area, which enforces shareholder rights and prosecutes litigation challenging corporate actions that harm shareholders. Under Gustavo's leadership, the Corporate Governance group has achieved numerous noteworthy litigation successes. He has been quoted frequently by Bloomberg, Law360, The New York Times, and Reuters, and was honored from 2016 through 2019 by Super Lawyers® as a "Top-Rated Securities Litigation Attorney," a recognition bestowed on no more than 5% of eligible attorneys in the New York Metro area. Gustavo regularly appears in state and federal courts across the nation.

In September 2017, Gustavo's Corporate Governance team achieved a settlement in New Jersey Superior Court that provided non-pecuniary benefits for a non-opt out class, in Pomerantz's litigation against Ocean Shore Holding Co. In approving the settlement, Judge Julio Mendez, of Cape May County Chancery Division, became the first New Jersey state court judge to formally adopt the Third Circuit's nine-part *Girsh* factors, *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). Never before has there been a published New Jersey state court opinion setting out the factors a court must consider in evaluating whether a class action settlement should be determined to be fair and adequate.

Gustavo successfully argued *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. 2015), obtaining a landmark ruling in Delaware that bylaws adopted after shareholders are cashed out do not apply to shareholders affected by the transaction. In the process, Gustavo and the Corporate Governance team beat back a fee-shifting bylaw and were able to obtain a 25% price increase for members of the class cashed out in the "going private" transaction. Shortly thereafter, the Delaware Legislature adopted legislation to ban fee-shifting bylaws.

In *Stein v. DeBoer* (Or. Cir. Ct. 2017), Gustavo and the Corporate Governance group achieved a settlement that provides significant corporate governance therapeutics on behalf of shareholders of Lithia Motors, Inc. The company's board had approved, without meaningful review, the Transition Agreement between the company and Sidney DeBoer, its founder, controlling shareholder, CEO, and Chairman, who was stepping down as CEO. DeBoer and his son, the current CEO, negotiated virtually all the material terms of the Agreement, by which the company agreed to pay the senior DeBoer $1,060,000 and a $42,000 car allowance annually for the rest of his life, plus other benefits, in addition to the $200,000 per year that he would receive for continuing to serve as Chairman.

In *Miller v. Bolduc*, No. SUCV 2015-00807 (Mass. Sup. Ct. 2015), Gustavo and the Corporate Governance group, by initiating litigation, caused Implant Sciences to hold its first shareholder annual meeting in 5 years and to place an important compensation grant up for a shareholder vote.

In *Strougo v. North State Bancorp*, No. 15 CVS 14696 (N.C. Super. Ct. 2015), Gustavo and the Corporate Governance team caused the North State Bancorp merger agreement to be amended to provide a "majority of the minority" provision for common shareholders in connection with the shareholder vote on the merger. As a result of the action, common shareholders had the ability to stop the merger if they did not wish it to go forward.

In *Hallandale Beach Police Officers and Firefighters' Personnel Retirement Fund vs. Lululemon athletica, Inc.*, C.A. No. 8522-VCP (Del. Ch. 2014), in an issue of first impression in Delaware, Gustavo successfully argued for the production of the company chairman's Rule 10b5-1 stock trading plan. The court found that a stock trading plan established by the company's chairman, pursuant to which a broker, rather than the chairman himself, would liquidate a portion of the chairman's stock in the company, did not preclude potential liability for insider trading.

Gustavo was Co-Lead Counsel in *In re Great Wolf Resorts, Inc. Shareholders Litigation*, C.A. No. 7328-VCN (Del. Ch. 2012), obtaining the elimination of stand-still provisions that allowed third parties to bid for Great Wolf Resorts, Inc., resulting in the emergence of a third-party bidder and approximately $94 million (57%) in additional merger consideration for Great Wolf shareholders.

Gustavo received his law degree in 1992 from the Benjamin N. Cardozo School of Law, where he served as an editor of the Moot Court Board and on the Student Council. Upon graduation, he received the award for outstanding student service.

After graduating law school, Gustavo served as Chief-of-Staff to a New York City legislator.

Gustavo is a Mentor and Coach to the NYU Stern School of Business, Berkley Center for Entrepreneurial Studies, New Venture Competition. He was a University Scholar at NYU where he obtained a B.S. in Marketing and International Business in 1988 and an MBA in Finance and International Business in 1989.

Gustavo is a Trustee and the Treasurer of the Beit Rabban Day School, and an arbitrator in the Civil Court of the City of New York.

Gustavo is licensed to practice in New York and New Jersey and is admitted to practice before the United States District Court for the Eastern, Northern, and Southern Districts of New York, the United States District Court for the District of New Jersey, United States Court of Appeals for the Second and Seventh Circuits, and the United States Supreme Court.

## Emma Gilmore

Emma Gilmore is a partner at the Firm and is regularly involved in high-profile class-action litigation. In 2018, Emma was honored as an MVP in Securities Litigation, part of an "elite slate of attorneys [who] have distinguished themselves from their peers by securing hard-earned successes in high-stakes litigation, complex global matters and record-breaking deals." Only up to six attorneys nationwide are

selected each year as MVPs in Securities Litigation. Emma is only the third woman in that practice group to have received this outstanding award since it was initiated in 2011. Emma was also honored in 2018 and 2019 as a Super Lawyer® in the New York Metro area.

Emma is regularly invited to speak about recent trends and developments in securities litigation. She was recently selected to serve on the New York City Bar's Securities Litigation Committee for a three-year term beginning on August 1, 2019. In that capacity she will have the opportunity to help shape law and public policy by, among other things, drafting reports, commenting and testifying on legislation, and submitting briefs.

Emma played a leading role in the Firm's class action case in the Southern District of New York against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm was sole Lead Counsel. The biggest instance of corruption in the history of Brazil had ensnared not only Petrobras' former executives but also Brazilian politicians, including former president Lula da Silva and one-third of the Brazilian Congress. Emma was the principal drafter of the complaint. She deposed and defended numerous fact and expert witnesses, including deposing the former CEO of Petrobras, the whistleblower, and the chief accountant. She was also the principal drafter of the appellate brief and played an instrumental role in securing a significant victory for investors in this case at the Second Circuit Court of Appeals, when the Court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by other circuit courts. She opposed defendants' petition for a writ of certiorari to the Supreme Court. In a significant victory for investors, Pomerantz has achieved a historic $3 billion settlement with Petrobras. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a class action involving a foreign issuer, the fifth-largest class action settlement ever achieved in the United States, and the largest settlement achieved by a foreign lead plaintiff.

Emma played a leading role in *Strougo v. Barclays PLC*, a high-profile securities class action that alleged Barclays PLC misled institutional investor clients about the extent of the banking giant's use of so-called "dark pool" trading systems. She drafted the complaint, defeated defendants' efforts to dismiss the action, and contributed to securing an important precedent-setting opinion from the Second Circuit. Emma organized a group of leading evidence experts who filed amicus briefs supporting plaintiffs' position in the Second Circuit.

Together with managing partner Jeremy Lieberman, Emma leads the securities class action litigation against Philip Morris International, arising from the development of its Reduced Risk smoking products.

Emma also plays a leading role in the Firm's class action litigation against Arconic, arising from the deadliest U.K. fire in more than a century.

She also represents Safra Bank in a class action against Samarco Mineração S.A., in connection with the Fundao dam-burst disaster, which is widely regarded as the worst environmental disaster in Brazil's history.

Emma played a leading role in the high-profile class action litigation against Yahoo! Inc., in which the Firm, as Lead Counsel, achieved an $80 million settlement for the Class. The case involved the biggest data breaches in U.S. history, in which over 3 billion Yahoo accounts were compromised.

Among other cases, Emma is part of the team prosecuting securities fraud claims against BP on behalf of many foreign and domestic public and private pension funds arising from the company's 2010 Deepwater Horizon oil spill. *In re BP p.l.c. Sec. Litig.*, No. 10-md-2185 (S.D. Tex.). She helped devise a cutting-edge strategy that established the right of individual foreign investors who purchased foreign-traded shares of a foreign corporation to pursue claims for securities fraud in a U.S. court, thereby overcoming obstacles created by the U.S. Supreme Court's 2010 decision in *Morrison v. National Australia Bank Ltd*.

Emma secured a unanimous decision by a panel of the Ninth Circuit Court of Appeals, benefitting defrauded investors in *Costa Brava Partnership III LP v. ChinaCast Education Corp*. In an issue of first impression, the Ninth Circuit held that imputation of the CEO's scienter to the company was warranted vis-a-vis innocent third parties, despite the fact that the executive acted for his own benefit and to the company's detriment.

She has also devoted a significant amount of time to pro bono matters. She played a critical role in securing a unanimous ruling by the Arkansas Supreme Court striking down as unconstitutional a state law banning cohabiting individuals from adopting children or serving as foster parents. The ruling was a relief for the 1,600-plus children in the state of Arkansas who needed a permanent family. The litigation generated significant publicity, including coverage by the Arkansas Times, the Wall Street Journal, and the New York Times.

Before joining Pomerantz, Emma was a litigation associate with the firms of Skadden, Arps, Slate, Meagher and Flom, LLP, and Sullivan & Cromwell, LLP, where she was involved in commercial and securities matters. Her experience includes working on the *WorldCom Securities Litigation,* representing more than a dozen prominent banks and also representing clients such as General Electric, Columbia University, Samsung, LG Electronics, Sony, Philips, BT, and JVC.

She also served as a law clerk to the Honorable Thomas C. Platt, former U.S. Chief Judge for the Eastern District of New York.

Emma graduated *cum laude* from Brooklyn Law School, where she served as a staff editor for the *Brooklyn Law Review*. She was the recipient of two CALI Excellence for the Future Awards, being the highest scoring student in the subjects of evidence and discovery. She graduated *summa cum laude* from Arizona State University, with a BA in French and a minor in Business.

She serves on the Firm's Anti-Harassment and Discrimination Committee.

Emma is admitted to practice in the State of New York; the United States District Courts for the Southern and Eastern Districts of New York; and the United States Court of Appeals for the Ninth Circuit.

## **Michael Grunfeld**

Michael Grunfeld joined Pomerantz in July 2017 as Of Counsel and was elevated to Partner in 2019.

He has played a leading role in some of the Firm's significant class action litigation, including its case against Yahoo! Inc. arising out of the biggest data breaches in U.S. history, in which the Firm, as Lead

Counsel, achieved an $80 million settlement on behalf of the Class.  This settlement made history as the first substantial shareholder recovery in a securities fraud class action related to a cybersecurity breach. Michael also plays a leading role in many of the Firm's other ongoing class actions.

Michael was named a 2019 Rising Star by Law360, a prestigious honor awarded to a select few top litigators under 40 years old "whose legal accomplishments transcend their age." He was honored in 2018 and 2019 as a Super Lawyers® Rising Star.

Michael is the co-author of a chapter on damages in securities class actions in the LexisNexis treatise, *Litigating Securities Class Actions*.

Michael served as a clerk for Judge Ronald Gilman of the Sixth Circuit Court of Appeals and as a foreign law clerk for Justice Asher Grunis of the Israeli Supreme Court. Before joining Pomerantz, he was a litigation associate at Shearman & Sterling LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP.

Michael has extensive experience in securities, complex commercial, and white-collar matters in federal and state courts around the country. In particular, Michael has represented issuers, underwriters, and individuals in securities class actions dealing with a wide variety of industries. He has also represented financial institutions and individuals in cases related to RMBS, securities lending, foreign exchange practices, insider trading, and other financial matters.

Michael graduated from Columbia Law School in 2008, where he was a Harlan Fiske Stone Scholar and Submissions Editor of the Columbia Business Law Review. He graduated from Harvard University with an A.B. in Government, *magna cum laude*, in 2004.

Michael is admitted to practice in the State of New York, the Second, Fourth, and Sixth Circuit Courts of Appeals, and the United States District Courts for the Southern and Eastern Districts of New York and the District of Colorado.

**Jordan L. Lurie**

Jordan L. Lurie joined Pomerantz as a partner in the Los Angeles office in December 2018. Jordan heads Pomerantz's Strategic Consumer Litigation practice.

Jordan has litigated shareholder class and derivative actions, complex corporate securities and consumer litigation, and a wide range of fraud and misrepresentation cases brought under state and federal consumer protection statutes involving unfair competition, false advertising, and privacy rights. Among his notable representations, Jordan served as Lead Counsel in the prosecution and successful resolution of major nationwide class actions against Nissan, Ford, Volkswagen, BMW, Toyota, Chrysler and General Motors. He also successfully preserved a multi-million dollar nationwide automotive class action settlement by convincing the then Chief Judge of the Ninth Circuit and his wife, who were also class members and had filed objections to the settlement, to withdraw their objections and endorse the settlement.

Jordan has argued cases in the California Court of Appeals and in the Ninth Circuit that resulted in published opinions establishing class members' rights to intervene and clarifying the standing

requirements for an objector to appeal. He also established a Ninth Circuit precedent for obtaining attorneys' fees in a catalyst fee action. Jordan has tried a federal securities fraud class action to verdict. He has been a featured speaker at California Mandatory Continuing Legal Education seminars and is a trained ombudsman and mediator.

Outside of his legal practice, Jordan is an active educator and community leader and has held executive positions in various organizations in the Los Angeles community. Jordan participated in the first Wexner Heritage Foundation leadership program in Los Angeles and the first national cohort of the Board Member Institute for Jewish Nonprofits at the Kellogg School of Management.

Prior to joining Pomerantz, Jordan was the Managing Partner of the Los Angeles office of Weiss & Lurie and Senior Litigator at Capstone Law APC.

Jordan graduated cum laude from Yale University in 1984 with a B.A in Political Science and received his law degree in 1987 from the University of Southern California Law Center, where he served as Notes Editor of the *University of Southern California Law Review*.

Jordan is a member of the State Bar of California and has been admitted to practice before the United States District Courts for the Northern, Southern, Central and Eastern Districts of California, the Eastern and Western Districts of Michigan, and the District of Colorado.

## Jennifer Pafiti

Jennifer Pafiti became associated with the Firm in May 2014 and was elevated to Partner in December 2015. A dually qualified U.K. solicitor and U.S. attorney, she is the Firm's Head of Client Services and also takes an active role in complex securities litigation, representing clients in both class and non-class action securities litigation. In 2019 Jennifer was named to Benchmark Litigation's exclusive *40 & Under Hot List* of the best young attorneys in the United States; was honored by Super Lawyers® as a Southern California Rising Star; and was named by The American Registry as one of Southern California's Top Young Lawyers. In 2018, Jennifer was recognized as a Lawyer of Distinction, an honor bestowed upon less than 10% of attorneys in any given state. She was honored by Super Lawyers® in 2017 as both a Rising Star and one of the Top Women Attorneys in Southern California. In 2016, the *Daily Journal* selected Jennifer for its prestigious "Top 40 Under 40" list of the best young attorneys in California.

Jennifer was an integral member of the Firm's litigation team for *In re Petrobras Securities Litigation,* a case relating to a multi-billion-dollar kickback and bribery scheme at Brazil's largest oil company, Petróleo Brasileiro S.A.- Petrobras, in which the Firm was sole Lead Counsel. She helped secure a significant victory for investors in this case at the Second Circuit Court of Appeals, when the court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by other Circuit courts such as the Third and Sixth Circuit Courts of Appeals. Working closely with Lead Plaintiff, Universities Superannuation Scheme Limited, she was also instrumental in achieving the historic settlement of $3 billion for Petrobras investors. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Jennifer is also involved in the litigations of *Dabe v. Calavo Growers, Flynn v. Sientra, Inc., Isensee v. KaloBios, Robb v. FitBit, Inc., Monachelli v. Hortonworks, Inc., Plumley v. Sempra Energy, and Greenberg v. Sunrun, Inc.,* in which the Firm is Lead Counsel.

Jennifer earned a Bachelor of Science degree in Psychology at Thames Valley University in England, prior to studying law. She earned her law degrees at Thames Valley University (G.D.L.) and the Inns of Court School of Law (L.P.C.) in the U.K. Jennifer is admitted to practice law in England and Wales (Solicitor) and in California.

Before studying law in England, Jennifer was a regulated financial advisor and senior mortgage underwriter at a major U.K. financial institution. She holds full CeFA and CeMAP qualifications. After qualifying as a Solicitor, Jennifer specialized in private practice civil litigation, which included the representation of clients in high-profile cases in the Royal Courts of Justice. Prior to joining Pomerantz, Jennifer was an associate with Robbins Geller Rudman & Dowd LLP in their San Diego office.

Jennifer regularly travels throughout the U.S. and Europe to advise clients on how best to evaluate losses to their investment portfolios attributable to financial fraud or other misconduct, and how best to maximize their potential recoveries.

Jennifer serves on the Honorary Steering Committee of Equal Rights Advocates ("ERA"), which focuses on specific issues that women face in the legal profession. ERA is an organization that protects and expands economic and educational access and opportunities for women and girls.

Jennifer is a member of the National Association of Pension Fund Attorneys and represents the Firm as a member of the California Association of Public Retirement Systems, the State Association of County Retirement Systems, the National Association of State Treasurers, the National Conference of Employee Retirement Systems, the Texas Association of Public Employee Retirement Systems, and the U.K.'s National Association of Pension Funds.

Jennifer is admitted to practice in England and Wales; the State of California; and the United States District Courts for the Northern, Central and Southern Districts of California. She is based in Los Angeles.

## Joshua B. Silverman

Joshua B. Silverman is a partner in the Firm's Chicago office. He specializes in individual and class action securities litigation. Josh was Lead Counsel in *In re Groupon, Inc. Securities Litigation,* achieving a $45 million settlement, one of the highest percentage recoveries in the Seventh Circuit. He was also Lead or Co-Lead Counsel in *In re MannKind Corp. Securities Litigation* ($23 million settlement); *In re AVEO Pharmaceuticals, Inc. Securities Litigation* ($18 million settlement, more than four times larger than the SEC's fair fund recovery in parallel litigation); *New Mexico State Investment Council v. Countrywide Financial Corp.* (very favorable confidential settlement); *New Mexico State Investment Council v. Cheslock Bakker & Associates* (summary judgment award in excess of $30 million); *Sudunagunta v. NantKwest, Inc.* ($12 million settlement); *Bruce v. Suntech Power Holdings Corp.* ($5 million settlement); *In re AgFeed, Inc. Securities Litigation* ($7 million settlement); and *In re Hemispherx BioPharma Securities Litigation* ($2.75 million settlement). Josh also played a key role in the Firm's representation of investors

before the United States Supreme Court in *StoneRidge,* and prosecuted many of the Firm's other class cases, including *In re Sealed Air Corp. Securities Litigation* ($20 million settlement).

Several of Josh's cases have set important precedent. For example, *In re MannKind* established that investors may support complaints with expert information. *New Mexico v. Countrywide* recognized that investors may show Section 11 damages for asset-backed securities even if there has been no interruption in payment or threat of default. More recently, *NantKwest* was the first Section 11 case in the nation to recognize statistical proof of traceability.

In addition to prosecuting cases, Josh regularly speaks at investor conferences and continuing legal education programs.

Before joining Pomerantz, Josh practiced at McGuireWoods LLP and its Chicago predecessor, Ross & Hardies, where he represented one of the largest independent futures commission merchants in commodities fraud and civil RICO cases. He also spent two years as a securities trader, and continues to actively trade stocks, futures, and options for his own account.

Josh is a 1993 graduate of the University of Michigan, where he received Phi Beta Kappa honors, and a 1996 graduate of the University of Michigan Law School.

Josh is admitted to practice in Illinois, the United States District Court for the Northern District of Illinois, the United States Courts of Appeal for the First, Second, Third, Seventh, Eighth and Ninth Circuits, and the United States Supreme Court.

### Leigh Handelman Smollar

Leigh Handelman Smollar, formerly Of Counsel to Pomerantz, was elevated to Partner in January 2012.

As a member of Pomerantz' Securities Litigation Group, Leigh plays a key role in litigating class actions against public companies for securities fraud. She recently achieved a settlement of $11,900,000 for the Class in a litigation against medical device company Thoratec Corporation alleging that the company misled investors about the safety of one of its primary products, the HeartMate II Left Ventricular Assist Device. *Cooper v. Thoratec Corp.*, No. 14-cv-360 (N.D. Cal.) She was an integral member of the litigation team that achieved a settlement of $19 million in cash and $1 million worth of shares of common stock on behalf of investors who suffered losses as the result of an alleged "pump and dump" scheme orchestrated by Galena Biopharma. *In re Galena Biopharma, Inc.*, No. 14-cv-00367 (D. Or.) Leigh is currently litigating *Luczak v. National Beverage Corp.*, No. 18-cv-61631 (S.D. Fla.); *Veal v. LendingClub Corp.*, No. 5:18-cv-02599 (N.D. Cal.); and *Brady v. Top Ships, Inc*., No. 17-cv-04987 (E.D.N.Y.)

Leigh was a member of the Pomerantz team in its successful litigation on behalf of three New Mexico pension funds related to Countrywide's mortgage-backed securities, resulting in a very favorable confidential settlement. Leigh has been a member of the Pomerantz litigation team for many of the cases where significant settlements were obtained. *See In re Sealed Air Corp. Sec. Litig.*, No. 03-CV-4372 (D.N.J.) ($20 million settlement approved December 2009); and *In re Safety-Kleen Stockholders Sec. Litig.*, No. 00-736-17 (D.S.C.) (as Co-Lead Counsel, Firm obtained a $54.5 million settlement).

In 2015, Leigh published an article in the Loyola Law Journal entitled, *The Importance of Conducting Thorough Investigations of Confidential Witnesses in Securities Fraud Litigation*. She has authored several articles and updates for the Illinois Institute for Continuing Legal Education (IICLE), including *Shareholder Derivative Suits and Stockholder Litigation in Illinois*, published in IICLE Chancery and Special Remedies 2004 Practice Handbook; *Prosecuting Securities Fraud Class Actions*, published in IICLE Chancery and Special Remedies 2009 Practice Handbook, including a 2011 supplement to Chancery and Special Remedies; and a new chapter in the 2013 Edition of the Chancery and Special Remedies Practice Handbook. In June 2011, as a panelist at the Illinois Public Employee Retirement Systems Summit in Chicago, Illinois, Leigh gave a presentation entitled *Carrying out Fiduciary Responsibilities in Management and Investments*.

Leigh is a 1993 graduate of the University of Illinois at Champaign-Urbana, where she graduated from the School of Commerce with high honors, and a 1996 graduate of the Chicago-Kent College of Law. Leigh spent the next five years specializing in insurance defense litigation.

Leigh is admitted to practice in Illinois, the United States District Court for the Northern District of Illinois, and the United States Courts of Appeals for the Seventh and Eighth Circuits.

## Matthew L. Tuccillo

Matthew L. Tuccillo joined Pomerantz in 2011 and was named a Partner in December 2013. He is responsible, on an ongoing basis, for the Firm's litigation of numerous securities fraud class actions pending nationwide, currently including:  *In re Toronto-Dominion Bank Securities Litigation*, 1:17-cv-01735 (D.N.J.) and *Chun v. Fluor Corp., et al.*, No. 3:18-cv-01338-S (N.D. Tex.).

Mr. Tuccillo oversees and is the lead litigator on the Firm's securities fraud lawsuits arising from BP's 2010 Gulf oil spill, pending in Multidistrict Litigation 2185, *In re BP p.l.c. Secs. Litig.*, No. 4:10-md-2185 (S.D. Tex.). He briefed and argued successful oppositions to three rounds of BP's motions to dismiss the claims of roughly 100 institutional investors, drawing the court's praise for the "quality of lawyering," which it called "uniformly excellent." In leading the BP litigation, Mr. Tuccillo has secured some of the Firm's most ground-breaking rulings:

•      He successfully argued that foreign and domestic investors had asserted viable "holder claims" seeking to recover investment losses due to their retention of already-owned shares in reliance upon the fraud, which is believed to be the first ruling by a U.S. court sustaining such a theory under English common law.

•      He successfully argued against *forum non conveniens* dismissal, obtaining the first ruling after the Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010) to permit foreign investors pursuing foreign law claims to seek recovery for losses on a foreign stock exchange in a U.S. court.

•      He successfully argued that the Securities Litigation Uniform Standards Act of 1998 (SLUSA), which extinguishes U.S. state law claims in deference to the U.S. federal securities laws, should not be extended to foreign common law claims being pursued by both domestic and foreign investors.

Mr. Tuccillo also fulfills Pomerantz's roles as MDL 2185 Individual Action Plaintiffs Steering Committee member and sole Liaison with BP and the Court. The Firm's BP clients include 32 public and private pension funds, investment management firms, limited partnerships, and investment trusts from the U.S., Canada, the U.K., France, the Netherlands, and Australia, seeking recovery for losses in BP's common stock (traded on the London Stock Exchange) and American Depository Shares (traded on the NYSE).

As the Firm's lead litigator in *Perez v. Higher One Holdings, Inc., et al.*, No. 14-cv-00755-AWT (D. Conn.), Mr. Tuccillo persuaded the court, after an initial dismissal, to uphold a second amended complaint that pled five separate threads of fraud over a multi-year period by an education funding company and its executives. Among other rulings, court agreed that the company's reported financial and operating results violated Regulation S-K, Item 303, 17 C.F.R. §229.303, for failure to disclose known trends regarding the underlying misconduct and its impacts on reported results – a rare ruling in the absence of any accounting restatement. He negotiated a $7.5 million class-wide settlement that was approved by the court.

As the Firm's lead litigator in *In re KaloBios Pharmaceuticals, Inc. Securities Litigation*, No. 15-cv-05841 (N.D. Cal.), Mr. Tuccillo negotiated two court-approved class-wide settlements worth over $3.25 million in the aggregate, from a bankrupt pharmaceutical company, its jailed former CEO, and two separate D&O insurers. Significantly, he secured payments of cash and stock directly from the bankrupt company, which also required bankruptcy court approval.

As the Firm's lead litigator in *In re Silvercorp Metals, Inc. Securities Litigation*, No. 1:12-cv-09456 (S.D.N.Y.), Mr. Tuccillo worked closely with mining, accounting, damages, and market efficiency experts to defeat a motion to dismiss and oversee discovery in a securities class action involving a Canadian company with mining operations in China and stock traded on the NYSE.  After two mediations, the case was resolved for a $14 million all-cash fund. In granting final approval of the settlement, Judge Rakoff noted that the case was "unusually complex," given the technical nature of mining metrics, the need to compare mining standards in Canada, China, and the U.S., and the volume of Chinese-language evidence requiring translation.

Mr. Tuccillo's prior casework also includes litigation and resolution of complex disputes over roll ups of consulting companies and of commercial real estate interests. At Pomerantz, he was on the multi-firm team that litigated and settled *In re Empire State Realty Trust, Inc. Investor Litig.*, No. 650607/2012 (N.Y. Sup. Ct.), representing investors in public and private commercial real estate interests against the long-term lessees/operators, the Malkin family and the Estate of Leona Helmsley, regarding a proposed consolidation, REIT formation, and IPO centered around New York's iconic Empire State Building. These efforts achieved broad relief for the class, including a $55 million cash/securities settlement fund, a restructured deal creating a $100 million tax benefit, expansive remedial disclosures, and important deal protections.

Before joining Pomerantz, Mr. Tuccillo began his career at a large full-service Boston firm, litigating primarily for corporate clients. He also worked at plaintiff-side firms in Boston and Connecticut, litigating securities, consumer, and wage and hour class actions, as well as complex sale of business disputes. He has negotiated numerous multi-million dollar settlements, through both mediation and direct negotiation. His pro bono work includes securing Social Security benefits for a veteran suffering from non-service-related disabilities.

Mr. Tuccillo has been honored as a 2016 - 2019 Super Lawyers® "Top-Rated Securities Litigation Attorney," a recognition bestowed on 5% of eligible attorneys in the New York Metro area, after a rigorous process overseen by Thompson Reuters. In 2018, he was recognized by *Lawyer Monthly* as its Lawyer of the Year (U.S.A.) in the Federal Tort & Military category, based on a ten-point assessment including significance of legal matters, case value, legal expertise, innovation in client care, activity level, and peer recognition. Also in 2018, he was a New York honoree in both the National Trial Lawyers' Class Action Trial Lawyers Association Top 25 and in America's Top 100 High Stakes Litigators® for New York. Since 2016, he has been a recommended securities litigator by The Legal 500, which evaluates law firms worldwide for cutting edge, innovative work based on client feedback, practitioner interviews, and independent research. Since 2014, he has maintained Martindale-Hubbell's highest-available AV® Preeminent™ peer rating, scoring 5.0 out of 5.0 in Securities Law, Securities Class Actions, and Securities Litigation while being described as a "First class, top flight lawyer, especially in complex litigation."

Mr. Tuccillo graduated from the Georgetown University Law Center in 1999, where he made the Dean's List. He graduated from Wesleyan University in 1995, and among his various volunteer activities, he currently serves as President of the Wesleyan Lawyers Association.

Mr. Tuccillo is a member of the Bars of the Supreme Court of the United States; the State of New York; the State of Connecticut; the Commonwealth of Massachusetts; the Second and Ninth Circuit Courts of Appeals; and the United States District Courts for the Southern and Eastern District of New York, Connecticut, Massachusetts, the Northern District of Illinois, and the Southern District of Texas. He is regularly admitted to practice *pro hac vice* in state and federal courts nationwide.

## Murielle Steven Walsh

Murielle Steven Walsh joined the Firm in 1998 and was elevated to Partner in 2007. She was honored as a 2019 Super Lawyers® "Top-Rated Securities Litigation Attorney," a recognition bestowed on 5% of eligible attorneys in the New York Metro area. Murielle was also recognized as a 2018 Lawyer of Distinction, an honor bestowed upon less than 10% of attorneys in any given state.

During her career at Pomerantz, Murielle has prosecuted highly successful securities class action and corporate governance cases. She was one of the lead attorneys litigating *In re Livent Noteholders' Securities Litigation*, a securities class action in which she obtained a $36 million judgment against the company's top officers, a ruling which was upheld by the Second Circuit on appeal. Murielle was also part of the team litigating *EBC I v. Goldman Sachs*, where the Firm obtained a landmark ruling from the New York Court of Appeals, that underwriters may owe fiduciary duties to their issuer clients in the context of a firm-commitment underwriting of an initial public offering.

Murielle currently leads the high-profile securities class action against Wynn Resorts Ltd., in which Pomerantz is lead counsel. The litigation arises from the company's concealment of a long-running pattern of sexual misconduct against Wynn employees by billionaire casino mogul Stephen Wynn, the company's founder and former Chief Executive Officer. *Ferris v. Wynn Resorts Ltd*., No. 18-cv-479 (D. Nev.). She also leads the Firm's ground-breaking litigation arising from the popular Pokémon Go game, in which Pomerantz is lead counsel. Pokémon Go is an "augmented reality" game in which players use their smart phones to "catch" Pokémon in real-world surroundings. GPS coordinates provided by

defendants to gamers included directing the public to private property without the owners' permission, amounting to an alleged mass nuisance. *In re Pokémon Go Nuisance*, No. 3:16-cv-04300 (N.D. Cal.)

Murielle was co-lead counsel in *Thorpe v. Walter Investment Management Corp.*, No. 14-cv-20880 (S.D. Fla.), a securities fraud class action challenging the defendants' representations that their lending activities were regulatory-compliant, when in fact the company's key subsidiary engaged in rampant violations of federal consumer financial protection laws, subjecting it to various government investigations and a pending enforcement action by the CFPB and FTC. In 2016, the Firm obtained a $24 million settlement on behalf of the class. She is also co-lead counsel in *Robb v. Fitbit Inc.*, No. 16-cv-00151 (N.D. Cal.), a securities class action alleging that the defendants misrepresented that their key product delivered "highly accurate" heart rate readings when in fact their technology did not consistently deliver accurate readings during exercise and its inaccuracy posed serious health risks to users of Fitbit's products. The Firm obtained a $33 million settlement on behalf of the investor class in this action.

In 2018 Murielle, along with then-Senior Partner Jeremy Lieberman, achieved a $3,300,000 settlement for the Class in the Firm's case against Corinthian Colleges, one of the largest for-profit college systems in the country, for alleged misrepresentations about its job placement rates, compliance with applicable regulations, and enrollment statistics. Pomerantz prevailed in the motion to dismiss the proceedings, a particularly noteworthy victory because Chief Judge George King of the Central District of California had dismissed two prior lawsuits against Corinthian with similar allegations. *Erickson v. Corinthian Colleges, Inc.*, No. 2:13-cv-07466 (C.D. Cal.).

Murielle serves as a member and on the Executive Committee of the Board of Trustees of the non-profit organization Court Appointed Special Advocates for Children ("CASA") of Monmouth County. She also serves on the Honorary Steering Committee of Equal Rights Advocates ("ERA"), which focuses on and discusses specific issues that women face in the legal profession. ERA is an organization that protects and expands economic and educational access and opportunities for women and girls. In the past, Murielle served as a member of the editorial board for Class Action Reports, a Solicitor for the Legal Aid Associates Campaign, and has been involved in political asylum work with the Association of the Bar of the City of New York.

Murielle serves on the Firm's Anti-Harassment and Discrimination Committee.

Murielle graduated *cum laude* from New York Law School in 1996, where she was the recipient of the Irving Mariash Scholarship. During law school, Murielle interned with the Kings County District Attorney and worked within the mergers and acquisitions group of Sullivan & Cromwell.

Murielle is admitted to practice in New York, the United States District Court for the Southern District of New York, the United States Court of Appeals for the Second Circuit and the United States Court of Appeals for the Sixth Circuit.

### Tamar A. Weinrib

Tamar A. Weinrib joined Pomerantz in early 2008. She was Of Counsel to the Firm from 2014 through 2018 and was elevated to Partner in 2019. Tamar was named a 2018 Rising Star under 40 years of age by Law360, a prestigious honor awarded to a select few "top litigators and dealmakers practicing at a level

usually seen from veteran attorneys." Tamar has been recognized by Super Lawyers® as a New York Metro Rising Star every year from 2014 through 2019.

In 2019, Tamar and Managing Partner Jeremy Lieberman achieved a $27 million settlement for the Class in *Strougo v. Barclays PLC*, a high-profile securities class action in which Pomerantz was Lead Counsel. Plaintiffs alleged that Barclays PLC misled institutional investor clients about the extent of the banking giant's use of so-called "dark pool" trading systems. This case turned on the duty of integrity owed by Barclays to its clients. In November 2016, Tamar and Jeremy achieved precedent-setting victories for investors, when the Second Circuit Court of Appeals held that direct evidence of price impact is not always necessary to demonstrate market efficiency to invoke the presumption of reliance, and that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production. In 2018, Tamar successfully opposed Defendants' petition to the Supreme Court for a writ of certiorari.

In approving the settlement in *Strougo v. Barclays PLC* in June 2019, Judge Victor Marrero of the Southern District of New York stated:

> Let me thank counsel on both sides for the extraordinary work both sides did in bringing this matter to a reasonable conclusion. As the parties have indicated, the matter was intensely litigated, but it was done in the most extraordinary fashion with cooperation, collaboration, and high levels of professionalism on both sides, so I thank you.

Tamar was the attorney responsible for the litigation of *In re Delcath Systems, Inc. Securities Litigation*, in which Pomerantz achieved a settlement of $8,500,000 for the Class. She successfully argued before the Second Circuit in *In re China North East Petroleum Securities Litigation,* to reverse the district court's dismissal of the defendants on scienter grounds. In addition to her involvement in several other securities matters pending nationwide, Tamar is the Pomerantz attorney responsible for the litigation of *KB Partners I, L.P. v. Pain Therapeutics, Inc.*, a securities fraud case for which Judge Sparks of the Western District of Texas granted final approval for a settlement of up to $8,500,000 for class members.

Before coming to Pomerantz, Tamar had over three years of experience as a litigation associate in the New York office of Clifford Chance US LLP, where she focused on complex commercial litigation. Tamar has successfully tried pro bono cases, including two criminal appeals and a housing dispute filed with the Human Rights Commission.

Tamar graduated from Fordham University School of Law in 2004 and, while there, won awards for successfully competing in and coaching Moot Court competitions.

Tamar is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second, Third, Fourth, and Ninth Circuits.

### Michael J. Wernke

Michael J. Wernke joined Pomerantz as Of Counsel in 2014 and was elevated to Partner in 2015.

---

Michael led the litigation in *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, No. 1:15-cv-07199-JMF (S.D.N.Y), in which the Firm, as Lead Counsel, recently achieved a $110 million settlement for the class. This high-profile securities class action alleges that Fiat Chrysler concealed from investors that it improperly outfitted its diesel vehicles with "defeat device" software designed to cheat NOx emissions regulations in the U.S. and Europe, and that regulators had accused Fiat Chrysler of violating the emissions regulations. The *Fiat Chrysler* recovery provides the class of investors with as much as 20% of recoverable damages—an excellent result when compared to historical statistics in class action settlements, where typical recoveries for cases of this size are between 1.6% and 3.3%.

In December 2018, Michael, along with Pomerantz Managing Partner Jeremy A. Lieberman, secured a $31 million partial settlement with three defendants in *In re Libor Based Financial Instruments Antitrust Litigation*, a closely watched multi-district litigation, which concerns the LIBOR rigging scandal.

In October 2018, Michael secured a $15 million settlement in *In re Symbol Technologies, Inc. Securities Litigation*, No. 2:05-cv-03923-DRH-AKT (E.D.N.Y.), a securities class action that alleges that, following an accounting fraud by prior management, Symbol's management misled investors about state of its internal controls and the Company's ability to forecast revenues.

He was Lead Counsel in *Thomas v. Magnachip Semiconductor Corp.*, in which he achieved a $23.5 million partial settlement with certain defendants, securing the settlement despite an ongoing investigation by the Securities and Exchange Commission and shareholder derivative actions. He played a leading role in *In re Lumber Liquidators, Inc. Securities Litigation*, in which Pomerantz, as Co-Lead Counsel, achieved a settlement of $26 million in cash and 1,000,000 shares of Lumber Liquidators common stock for the Class. Michael also secured a $7 million settlement (over 30% of the likely recoverable damages) in the securities class action *Todd v. STAAR Surgical Company, et. al.*, No. 14-cv-05263-MWF-RZ (C.D. Cal.), which alleged that STAAR concealed from investors violations of FDA regulations that threatened the approval of STAAR's long awaited new product.

In the securities class action *In re Atossa Genetics, Inc. Securities Litigation*, No. 13-cv-01836-RSM (W.D. Wash.), Michael secured a decision by the Ninth Circuit Court of Appeals that reversed the district court's dismissal of the complaint. The Ninth Circuit held that the CEO's public statements that the company's flagship product had been approved by the FDA were misleading despite the fact that the company's previously filed registration statement stated that that the product did not, at that time, require FDA approval.

Michael is also Lead Counsel in the securities class action *Zwick Partners, LP v. Quorum Health Corp., et al.*, No. 3:16-cv-2475, which alleges that defendants misrepresented to investors the poor prospects of hospitals that the parent company spun-off into a stand-alone company. In defeating the defendants' motions to dismiss the complaint, Michael successfully argued that company from which Quorum was spun-off was a "maker" of the false statements even though all the alleged false statements concerned only Quorum's financials and the class involved only purchasers of Quorum's common stock.

During the nine years prior to coming to Pomerantz, Michael was a litigator with Cahill Gordon & Reindel LLP, with his primary focus in the securities defense arena, where he represented multinational financial institutions and corporations, playing key roles in two of only a handful of securities class actions to go to jury verdict since the passage of the PSLRA.

---

In 2019, Michael was honored as a Super Lawyers® "Top Rated Securities Litigation Attorney." In 2014 and 2015, he was recognized as a Super Lawyers® New York Metro Rising Star.

Michael received his J.D. from Harvard Law School in 2004. He also holds a B.S. in Mathematics and a B.A. in Political Science from Ohio State University, where he graduated *summa cum laude*.

He serves on the Firm's Anti-Harassment and Discrimination Committee.

Michael is admitted to practice in the State of New York and the United States District Court for the Southern District of New York.

## Senior Counsel

### Marc I. Gross

Marc I. Gross has been with Pomerantz LLP for over four decades, serving as its Managing Partner from 2009 to 2016. During that time frame, Marc led securities lawsuits against SAC Capital (Steven Cohen - insider trading); Chesapeake Energy (Aubrey McClendon - insider bail out); Citibank (analyst Jack Grubman - AT&T research report upgrade to facilitate underwriting role); Charter Communications (Paul Allen - accounting fraud); and numerous others. He also litigated the market efficiency issues in the firm's landmark $3 billion recovery in *Petrobras*.

Marc is the President-Elect of the Institute of Law and Economic Policy ("ILEP"), which has organized symposiums each year where leading academics have presented papers on securities law and consumer protection issues. These papers have been cited in over 60 cases, including several in the United States Supreme Court. http://www.ilep.info.

Marc has addressed numerous forums in the United States on shareholder-related issues, including ILEP; Loyola University Chicago School of Law's Institute for Investor Protection Conference; the National Conference on Public Employee Retirement Systems' ("NCPERS") Legislative Conferences; PLI conferences on Current Trends in Securities Law; and a panel entitled *Enhancing Consistency and Predictability in Applying Fraud-on-the-Market Theory*, sponsored by the Duke Law School Center for Judicial Studies.

Marc is also valued by foreign investors for his expertise, having addressed the Tel Aviv Institutional Investors Forum, the National Association of Pension Funds Conference in Edinburgh, and law students at Bar Ilan University in Tel Aviv.

Among other articles, Marc co-authored, with Jeremy Lieberman, *Back to Basic(s): Common Sense Trumps Econometrics*, N.Y.L.J. (Jan. 8, 2018); *Class Certification in a Post-Halliburton II World*, 46 Loyola-Chicago L.J. 485 (2015); and *Loser-Pays - or Whose "Fault" Is It Anyway: A Response to Hensler-Rowe's "Beyond 'It Just Ain't Worth It,'"* 64 L. & Contemp. Probs. 163 (Duke Law School 2001).

Marc is also a Board member of T'ruah, The Rabbinic Call for Human Rights, and graduate of NYU Law '76 and Columbia College '73.

Marc is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, the United States Courts of Appeals for the First, Second, Eighth, and Ninth Circuits, and the United States Supreme Court.

Marc has been honored as a Super Lawyers® "Top Rated Securities Litigation Attorney" from 2006 through 2009 and from 2013 through 2019.

Marc serves on the Firm's Anti-Harassment and Discrimination Committee.

## Stanley M. Grossman

Stanley M. Grossman, Senior Counsel, is the former Managing Partner of Pomerantz. He is recognized as a leader in the plaintiffs' securities bar. He was selected by *Super Lawyers®* as an outstanding attorney in the United States for the years 2006 through 2011 and was featured in the *New York Law Journal* article *Top Litigators in Securities Field -- A Who's Who of City's Leading Courtroom Combatants*. Stan has litigated securities (individual and class), derivative, and antitrust actions with the Firm for 39 years.

Stan has primarily represented plaintiffs in securities and antitrust class actions, including many of those listed in the Firm biography. *See, e.g., Ross v. Bernhard*, 396 U.S. 531 (1970); *Rosenfeld v. Black*, 445 F.2d 137 (2d Cir. 1971); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987); and *In re Salomon Bros. Treasury Litig.*, 9 F.3d 230 (2d Cir. 1993). In 2008 he appeared before the United States Supreme Court to argue that scheme liability is actionable under Section 10(b) and Rule 10b-5(a) and (c). *See StoneRidge Inv. Partners, LLC v. Sci.-Atlanta*, *Inc.,* No. 06-43 (2008). Other cases where he was the Lead or Co-Lead Counsel include: *In re Salomon Brothers Treasury Litigation*, No. 91 Civ. 5471 (S.D.N.Y. 1994) ($100 million cash recovery); *In re First Executive Corporation Securities Litigation*, No. CV-89-7135 (C.D. Cal. 1994) ($100 million settlement); and *In re Sorbates Direct Purchaser Antitrust Litigation*, No. C98-4886 (N.D. Cal. 2000) (over $80 million settlement for the class).

In 1992, Senior Judge Milton Pollack of the Southern District of New York appointed Stan to the Executive Committee of counsel charged with allocating to claimants hundreds of millions of dollars obtained in settlements with Drexel Burnham & Co. and Michael Milken.

Many courts have acknowledged the high quality of legal representation provided to investors by Stan. In *Gartenberg v. Merrill Lynch Asset Management, Inc.*, No. 79 Civ. 3123 (S.D.N.Y.), where Stan was lead trial counsel for plaintiff, Judge Pollack noted at the completion of the trial:

> [I] can fairly say, having remained abreast of the law on the factual and legal matters that have been presented, that I know of no case that has been better presented so as to give the Court an opportunity to reach a determination, for which the court thanks you.

Stan was also the lead trial attorney in *Rauch v. Bilzerian* (N.J. Super. Ct.) (directors owed the same duty of loyalty to preferred shareholders as common shareholders in a corporate takeover), where the court described the Pomerantz team as "exceptionally competent counsel." He headed the six week trial on liability in *Walsh v. Northrop Grumman* (E.D.N.Y.) (a securities and ERISA class action arising from Northrop's takeover of Grumman), after which a substantial settlement was reached.

www.pomerantzlaw.com                                                                                                    34

Stan frequently speaks at law schools and professional organizations. In 2010, he was a panelist on *Securities Law: Primary Liability for Secondary Actors*, sponsored by the Federal Bar Council, and he presented *Silence Is Golden – Until It Is Deadly: The Fiduciary's Duty to Disclose*, at the Institute of American and Talmudic Law. In 2009, Stan was a panelist on a Practicing Law Institute "Hot Topic Briefing" entitled StoneRidge - *Is There Scheme Liability or Not?*

Stan served on former New York State Comptroller Carl McCall's Advisory Committee for the NYSE Task Force on corporate governance. He is a former president of NASCAT. During his tenure at NASCAT, he represented the organization in meetings with the Chairman of the Securities and Exchange Commission and before members of Congress and of the Executive Branch concerning legislation that became the PSLRA.

Stan served for three years on the New York City Bar Association's Committee on Ethics, as well as on the Association's Judiciary Committee. He is actively involved in civic affairs. He headed a task force on behalf of the Association, which, after a wide-ranging investigation, made recommendations for the future of the City University of New York. He serves on the board of the Appleseed Foundation, a national public advocacy group.

Stan is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, Central District of California, Eastern District of Wisconsin, District of Arizona, District of Colorado, the United States Courts of Appeals for the First, Second, Third, Ninth and Eleventh Circuits, and the United States Supreme Court.

## Of Counsel

### Brian Calandra

Brian Calandra joined Pomerantz in June 2019 as Of Counsel. He has extensive experience in securities, antitrust, complex commercial, and white-collar matters in federal and state courts nationwide. Brian has represented issuers, underwriters, and individuals in securities class actions involving the financial, telecommunications, real estate, and pharmaceutical industries. He has also represented financial institutions in antitrust class actions concerning foreign exchange; supra-national, sub-sovereign and agency bonds; bonds issued by the government of Mexico; and credit card fees.

Brian has written multiple times on developments in securities law and other topics, including co-authoring an overview of insider trading law and enforcement for *Practical Compliance & Risk Management for the Securities Industry*, co-authoring an analysis of anti-corruption compliance risks posed by sovereign wealth funds for *Risk & Compliance*, and authoring an analysis of the effects of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act on women in bankruptcy for the *Women's Rights Law Reporter*.

Before joining Pomerantz, Brian was a litigation associate at Shearman & Sterling LLP. Brian graduated from Rutgers School of Law-Newark in 2009, *cum laude*, Order of the Coif. While at Rutgers, Brian was co-editor-in-chief of the *Women's Rights Law Reporter* and received the Justice Henry E. Ackerson Prize

for Distinction in Legal Skills and the Carol Russ Memorial Prize for Distinction in Promoting Women's Rights.

Brian is admitted to practice in the State of New York, the State of New Jersey, the United States Supreme Court, the Third Circuit Court of Appeals, and the United States District Courts for the Southern District of New York, Eastern District of New York, Northern District of New York and District of New Jersey.

### Cara David

Cara David focuses her practice on securities fraud litigation.

Prior to joining Pomerantz, she was an associate at both Schulte Roth & Zabel LLP and Cadwalader, Wickersham & Taft LLP. Cara represented defendants in some of the highest profile securities class actions in the last decade. She also has extensive government investigation experience. Cara was named a Super Lawyers® New York Metro Rising Star from 2017-2019 and was the recipient of Schulte's pro bono service award from 2014-2018.

Cara graduated from Cardozo School of Law in an accelerated 2 ½ year program. During law school, she served on Law Review and participated in the Mediation Clinic. She was awarded a Dean's Merit Scholarship and named to Order of the Coif.

Cara is a proud graduate of Wellesley College and is very active in alumnae activities.

Cara is admitted to practice in the States of New York, New Jersey and Connecticut; the United States District Courts for the Southern District of New York, Eastern District of New York and District of New Jersey; and the U.S. Courts of Appeals for the Second and Third Circuits.

### J. Alexander Hood II

J. Alexander Hood II joined Pomerantz in June 2015 and was elevated to Of Counsel to the Firm in 2019. Alex leads the Firm's case origination team, identifying and investigating potential violations of the federal securities laws. He was honored in 2019 as a Super Lawyers® Rising Star.

Alex played a key role in securing Pomerantz's appointment as Lead Counsel in actions against Yahoo! Inc., Fiat Chrysler Automobiles N.V., Wynn Resorts Limited, Mylan N.V., The Western Union Company, Perrigo Company plc, Blue Apron Holdings, Inc., AT&T Inc., and Allergan plc, among others.

Alex also assists Pomerantz clients with respect to evaluating and pursuing recovery in foreign jurisdictions, including matters in the Netherlands, Germany, the UK, Australia, Denmark, and elsewhere.

Prior to joining Pomerantz, Alex practiced at Alston & Bird LLP and Bernstein Litowitz Berger & Grossmann LLP, where he was involved in commercial, financial services, corporate governance and securities matters.

Alex graduated from Boston University School of Law (J.D.) and from the University of Oregon School of Law (LL.M.). During law school, he served as a member of the Boston University Review of Banking & Financial Law and participated in the Thomas Tang Moot Court Competition. In addition, Alex clerked for the American Civil Liberties Union of Tennessee and, as a legal extern, worked on the Center for Biological Diversity's Clean Water Act suit against BP in connection with the Deepwater Horizon oil spill.

Alex is admitted to practice in the State of New York and the United States District Courts for the Southern, Eastern and Northern Districts of New York, the District of Colorado, the Eastern District of Michigan, the Northern District of Illinois, and the Southern District of Texas.

## Louis C. Ludwig

Louis C. Ludwig joined Pomerantz in April 2012 and was elevated to Of Counsel in 2019. He has been honored as a 2016 and 2017 Super Lawyers® "Rising Star" and as a 2018 and 2019 Super Lawyers® "Top-Rated Securities Litigation Attorney."

Louis focuses his practice on securities fraud litigation, and has served as a member of the litigation team in multiple actions that concluded in successful settlements for the Class, including *Satterfield v. Lime Energy Co.*, (N.D. Ill.); *Blitz v. AgFeed Industries, Inc.* (M.D. Tenn.); *Frater v. Hemispherx Biopharma, Inc.* (E.D. Pa.); *Bruce v. Suntech Power Holdings Co.* (N.D. Cal.); *In re: Groupon, Inc. Securities Litigation* (N.D. Ill.); *Flynn v. Sientra, Inc.* (C.D. Cal.); *Thomas v. MagnaChip Semiconductor Corp.* (N.D. Cal.); *In re: AVEO Pharmaceuticals, Inc. Securities Litigation* (N.D. Cal.); and *In re: Akorn, Inc. Securities Litigation* (N.D. Ill.).

Louis graduated from Rutgers University School of Law in 2007, where he was a Dean's Law Scholarship Recipient. He served as a law clerk to the Honorable Arthur Bergman, Superior Court of New Jersey. Prior to joining Pomerantz, Louis specialized in litigating consumer protection class actions at Bock & Hatch LLC in Chicago, Illinois.

Louis is admitted to practice in New Jersey, Illinois, the United States Courts of Appeal for the Seventh and Ninth Circuits, and the United States District Courts for the District of New Jersey and the Northern District of Illinois.

## H. Adam Prussin

Adam Prussin specializes in securities litigation and has extensive experience in derivative actions. He was special litigation counsel in the derivative actions on behalf of Summit Metals, Inc., actions which resulted in entry of a judgment, after trial, of $43 million in cash, plus an order transferring the stock of two multi-million-dollar companies to the plaintiff.

Adam has published several articles on the subject of the standards and procedures for the maintenance or dismissal of derivative actions, including *Termination of Derivative Suits Against Directors on Business Judgment Grounds: From* Zapata *to* Aronson, 39 Bus. Law. 1503 (1984); *Dismissal of Derivative Actions Under the Business Judgment Rule:* Zapata *One Year Later*, 38 Bus. Law. 401 (1983); and *The Business Judgment Rule and Shareholder Derivative Actions: Viva* Zapata*?* 37 Bus. Law. 27 (1981). In June 2009 he

spoke at the 6th Annual Securities Litigation Conference in New York, participating in the panel discussion, *From Behind Enemy Lines: The Perspective of Two Prominent Plaintiff Attorneys*.

Before joining the Firm, Adam was a named partner in Silverman, Harnes, Harnes, Prussin & Keller, which specializes in representing plaintiffs in shareholder derivative and class action litigation, particularly those involving self-dealing by corporate officers, directors and controlling shareholders. He played a key role in several landmark derivative cases in the Delaware courts, and has appeared frequently before the Delaware Supreme Court.

Adam graduated *cum laude* from Yale College in 1969 and, after obtaining a master's degree from the University of Michigan in 1971, received his J.D. degree from Harvard Law School in 1974.

Adam is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second, Ninth and D.C. Circuits.

## Brenda Szydlo

Brenda Szydlo joined Pomerantz in January 2016 as Of Counsel. She brings to the Firm thirty years of experience in complex civil litigation in federal and state court on behalf of plaintiffs and defendants, with a particular focus on securities and financial fraud litigation, litigation against pharmaceutical corporations, accountants' liability, and commercial litigation.

Brenda played a leading role in the Firm's securities class action case in the Southern District of New York against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a precedent-setting legal ruling and a historic $3 billion settlement for the Class. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Brenda has represented investors in additional class and private actions that have resulted in significant recoveries, such as *In re Pfizer, Inc. Securities Litigation*, where the recovery was $486 million, and *In re Refco, Inc. Securities Litigation*, where the recovery was in excess of $407 million. She has also represented investors in opt-out securities actions, such as *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*.

Prior to joining Pomerantz, Brenda served as Senior Counsel at Grant & Eisenhofer P.A., where she represented plaintiffs in securities and financial fraud litigation, and litigation against pharmaceutical corporations and accounting firms. Brenda also served as Counsel in the litigation department of Sidley Austin LLP in New York, and its predecessor, Brown & Wood LLP, where her practice focused on securities litigation and enforcement, accountants' liability defense, and commercial litigation.

Brenda is a 1988 graduate of St. John's University School of Law, where she was a St. Thomas More Scholar and member of the Law Review. She received a B.A. in economics from Binghamton University in 1985.

Brenda is admitted to practice in the State of New York; United States District Courts for the Southern and Eastern Districts of New York; the U.S. Courts of Appeals for the Second and Ninth Circuits; and the United States Supreme Court.

## Nicolas Tatin

French lawyer Nicolas Tatin joined Pomerantz in April 2017 as Of Counsel. He heads the Firm's Paris office and serves as its Director-Business Development Consultant for France, Benelux, Monaco and Switzerland. Nicolas advises institutional investors in the European Union on how best to evaluate losses to their investment portfolios attributable to financial misconduct, and how best to maximize their potential recoveries in U.S. and international securities litigations.

Nicolas was previously a financial lawyer at ERAFP, France's €24bn pension and retirement fund for civil servants, where he provided legal advice on the selection of management companies and the implementation of mandates entrusted to them by ERAFP.

Nicolas began his career at Natixis Asset Management, before joining BNP Paribas Investment Partners, where he developed expertise in the legal structuring of investment funds and acquired a global and cross-functional approach to the asset management industry.

Nicolas graduated in International law and received an MBA from IAE Paris, the Sorbonne Graduate Business School.

## Austin P. Van

Austin P. Van joined Pomerantz in January 2017 as Of Counsel. He brings to the Firm experience in a variety of federal and state securities law matters, including disputes involving publicly traded stocks, RMBS and other ABS, securities lending disputes, and breach-of-trust matters arising in the securities law context. Austin was honored in 2018 and 2019 as a Super Lawyers® Rising Star.

Austin also has experience in complex commercial litigation, including contract disputes, business torts, consumer fraud, and antitrust matters. He has represented investment banks and other financial sector clients, as well as public and private companies in the technology, energy, pharmaceutical, telecommunications and shipping industries, among others. Austin was previously an associate at WilmerHale and at Cravath, Swaine & Moore, both in New York City.

Austin received a J.D. from Yale Law School, where he was an editor of the Yale Law Journal and the Yale Journal of International Law. He has a B.A. from Yale University and an M.Sc. from the London School of Economics.

Austin is admitted to practice law in the State of New York; the United States District Courts for the Southern and Eastern Districts of New York; and the U.S. Court of Appeals for the First Circuit.

## Associates

### Samuel J. Adams

Samuel J. Adams focuses his practice on corporate governance litigation.

Mr. Adams was previously an associate at Robbins Geller Rudman & Dowd LLP, where he focused his practice on securities fraud litigation and other complex matters. He has been recognized as a Super Lawyers® "Rising Star" for the New York Metro area for every year from 2015 through 2019.

Sam is a 2009 graduate of the University of Louisville Louis D. Brandeis School of Law. While in law school, he was a member of the National Health Law Moot Court Team. He also participated in the Louis D. Brandeis American Inn of Court.

Sam is admitted to practice in New York, the United States District Courts for the Southern, Northern, and Eastern Districts of New York, and the United States District Court for the Eastern District of Wisconsin.

### Ari Y. Basser

Ari Y. Basser focuses his practice on strategic consumer litigation.

Prior to joining Pomerantz, Ari was an associate at major litigation law firms in Los Angeles. Ari also worked as a Law Clerk in the Economic Crimes Unit of the Santa Clara County Office of the District Attorney. Ari has litigated antitrust violations, product defect matters, and a variety of fraud and misrepresentation cases brought under state and federal consumer protection statutes involving unfair competition and false advertising. He has also been deputized in private attorneys general enforcement actions to recover civil penalties from corporations, on behalf of the State of California, for violations of the Labor Code.

Ari is a contributing author to the Competition Law Journal, the official publication of the Antitrust, UCL, and Privacy Section of the State Bar of California, where he has examined trends in antitrust litigation and the regulatory authority of the Federal Trade Commission.

Ari received dual degrees in Economics and Psychology from the University of California, San Diego in 2004. He earned his Juris Doctor in 2010 from Santa Clara University School of Law.

Ari is a member of the State Bar of California and has been admitted to practice before the United States District Courts for the Northern, Southern, Central and Eastern Districts of California.

### Jessica N. Dell

Jessica Dell focuses her practice on securities fraud litigation.

She has worked on dozens of cases at Pomerantz, including the Firm's securities fraud lawsuits arising from BP's 2010 Gulf oil spill, pending in Multidistrict Litigation. Jessica has expertise in

managing discovery and a nose for investigating complex fraud across many sectors, including pharmaceuticals, medical devices, and data security. True to her roots in public interest law, she has also worked in complex pro bono class action litigation at Pomerantz.

Jessica graduated from CUNY School of Law in 2005. She was the recipient of an Everett fellowship for her work at Human Rights Watch. She also interned at the Urban Justice Center and National Advocates for Pregnant Women. While in the CUNY clinical program, she represented survivors of domestic violence facing deportation and successfully petitioned under the Violence Against Women Act. She also successfully petitioned for the release of survivors incarcerated as drug mules in Central America. After Hurricane Katrina, Jessica traveled to Louisiana to aid emergency efforts to reunite families and restore legal process for persons lost in the prison system weeks after the flood.

Jessica is a member of the New York City and State Bar Associations and the National Lawyers Guild.

**Aatif Iqbal**

Aatif Iqbal focuses his practice on securities fraud litigation.

Before joining Pomerantz, Aatif was a litigation associate at Cleary Gottlieb Steen & Hamilton LLP, where his practice involved bankruptcy, securities, and complex commercial litigation matters. Aatif also served as a law clerk for the Honorable Patricia A. Seitz, United States District Judge for the Southern District of Florida.

Aatif graduated cum laude from Harvard Law School, where he earned a Dean's Scholarship in First Amendment Law and served as Managing Editor of the Harvard International Law Journal and Managing Technical Editor of the Harvard Human Rights Journal. He graduated cum laude from Yale University with a B.A. in Political Science.

Aatif is admitted to practice in New York.

**Omar Jafri**

Omar Jafri's practice focuses on securities fraud litigation. Omar played an integral role in *In re Juno Therapeutics, Inc. Securities Litigation*, in which the Firm, as Lead Counsel, achieved a $24 million settlement for the Class in 2018. Omar also played an integral role where Pomerantz was Lead or Co-Lead Counsel in *In re Aveo Pharmaceuticals, Inc. Securities Litigation* ($18 million settlement, which was more than four times larger than the SEC's fair fund recovery in its parallel litigation); *Sudunagunta v. NantKwest, Inc.* ($12 million settlement); and *Thomas v. MagnaChip Semiconductor Corp. Securities Litigation* ($6.2 million settlement with majority shareholder, Avenue Capital). Omar currently plays a key role in the Firm's representation of investors in connection with several complex cases that involve billions of dollars in damages.

During the last several years, Omar has litigated major disputes on behalf of institutional investors arising out of the credit crisis, including disputes relating to Collateralized Debt Obligations, Residential Mortgage-Backed Securities, Credit Default Swaps and other complex financial investments. He also has

provided pro bono representation to several individuals charged with first-degree murder and attempted murder in the State and Federal courts of Illinois.

Before joining Pomerantz LLP, Omar was a law clerk to Judge William S. Duffey, Jr. of the United States District Court for the Northern District of Georgia. He was also an associate at Jenner & Block LLP's Chicago Office, where he represented clients in a wide variety of matters, including securities litigation, complex commercial litigation, white collar criminal defense, and internal investigations.

Omar graduated, *magna cum laude* and *Order of the Coif*, from the University of Illinois College of Law, where he was a Harno Scholar and a recipient of the Rickert Award for Excellence in Advocacy. He received his B.A. from the University of Texas at Austin, where he was on the Dean's Honor List and the University Honors List.

Omar is admitted to practice in Illinois, the United States District Courts for the Northern District of Illinois and the Northern District of Indiana, and the United States Court of Appeals for the Ninth Circuit.

### Jonathan Lindenfeld

Jonathan Lindenfeld focuses his practice on securities fraud litigation. Prior to joining Pomerantz, Jonathan was an associate at a national plaintiffs' securities litigation firm where he focused on securities fraud litigation and stockholder derivative suits.

Jonathan graduated *cum laude* from Hofstra University School of Law in 2015, where he received Honors in Business Law, was awarded Merit Based Scholarships, and was on the Dean's Honor List. While in law school, Jonathan gained experience in the U.S. Attorney's Office for the Eastern District of New York and a boutique law firm specializing in forex and derivative exchanges. Jonathan also served as an editor of the Hofstra Journal of International Business and Law. Jonathan earned a Bachelor of Arts in Economics from City University of New York-Queens College in 2012.

In 2015, Jonathan published "The CFTC's Substituted Compliance Approach: An Attempt to Bring About Global Harmony and Stability in the Derivatives Market," in the Journal of International Business and Law: Vol. 14: Iss. 1, Article 6.

The article is available at: http://scholarlycommons.law.hofstra.edu/jibl/vol14/iss1/6.

Jonathan is admitted to practice in New York, New Jersey, and the United States District Courts for the Southern District of New York and District of New Jersey.

### James M. LoPiano

James M. LoPiano focuses his practice on securities fraud litigation.

Prior to joining Pomerantz, James served as a Fellow at Lincoln Square Legal Services, Inc., a non-profit law firm run by faculty of Fordham University School of Law.

James earned his J.D. in 2018 from Fordham University School of Law, where he was awarded the Archibald R. Murray Public Service Award, *cum laude*, and merit-based scholarship. While in law school, James served as Senior Notes and Articles Editor of the *Fordham Intellectual Property, Media and Entertainment Law Journal*. James also completed a legal internship at Lincoln Square Legal Services, Inc.'s *Samuelson-Glushko Intellectual Property and Information Law Clinic*, where he counseled clients and worked on matters related to Freedom of Information Act litigation, trademarks, and copyrights. As part of his internship, James was granted temporary permission to appear before the United States Patent and Trademark Office for trademark-related matters. Additionally, James completed both a legal externship and legal internship with the Authors Guild. James also served as a judicial intern to the Honorable Stephen A. Bucaria in the Nassau County Supreme Court, Commercial Division, of the State of New York, where he drafted legal memoranda on summary judgment motions, including one novel issue pertaining to whether certain service fees charged by online travel companies were commingled with county taxes.

James earned his B.A. from Stony Brook University, where he double-majored in English and Cinema and Cultural Studies, completed the English Honors Program, and was inducted into the Stony Brook University chapter of the International English Honors Society. Additionally, James earned the university's Thomas Rogers Award, given to one undergraduate student each year for the best analytical paper in an English course.

James has authored several publications over the course of his legal career, including "Public Fora Purpose: Analyzing Viewpoint Discrimination on the President's Twitter Account," Note, 28 FORDHAM INTELL. PROP. MEDIA & ENT. L.J. 511 (2018); "Lessons Abroad: How *Access Copyright v. York University* Helped End Canada's Educational Pirating Regime," Legal Watch, Authors Guild Fall 2017/Winter 2018 Bulletin; and "International News: Proposal for New EU Copyright Directive and India High Court's Educational Photocopy Decision," Legal Watch, Authors Guild Summer 2017 Bulletin.

James is admitted to practice in the State of New York.

### Veronica V. Montenegro

Veronica V. Montenegro focuses her practice on securities fraud litigation.

Prior to joining Pomerantz, Veronica served for seven years as an Assistant Attorney General in the Investor Protection Bureau in the Office of the New York State Attorney General. Veronica represented the Office in some of its most high-profile financial fraud prosecutions. She worked on a case against a Madoff feeder-fund manager which resulted in the return of millions of dollars to defrauded investors. She was a member of the Residential Mortgage Backed Securities (RMBS) Working Group, comprised of State and Federal prosecutors tasked with investigating and prosecuting mortgage securities fraud, which has resulted in billions of dollars in recoveries. In recognition of her work in the RMBS Working Group, Veronica was awarded the Louis Lefkowitz Award for Exceptional Service. Veronica also worked on cases involving insider trading, auction rate securities and foreign exchange execution.

Veronica graduated from Fordham University School of Law in 2008. During law school, she served as a member of the Fordham International Law Journal and in Fordham's Moot Court Board. Additionally, she served as a judicial extern to the Honorable Ronald L. Ellis, Magistrate Judge for the Southern

District of New York. Veronica graduated from New York University's College of Arts and Science in 2004, *cum laude*, with a double major in Political Science and Latin American Studies.

Veronica is admitted to practice in the States of New York and New Jersey and the United States District Court for the Southern District of New York.

### Jared M. Schneider

Jared M. Schneider focuses his practice on securities fraud litigation.

Before joining Pomerantz LLP, Jared was a law clerk to the Honorable Charles R. Norgle of the United States District Court for the Northern District of Illinois. Jared was also an associate at Higgins & Burke, P.C., where he represented family offices and high net worth individuals in matters involving securities fraud and other types of financial-services misconduct. During law school, Jared worked with FINRA's Department of Enforcement in prosecuting members for violations of securities laws and regulations.

Jared earned his Juris Doctor *cum laude* from the John Marshall Law School and is a member of the National Order of Scribes. While in law school, Jared was a member of the American Bar Association National Appellate Advocacy Competition, and the Irving R. Kaufman Memorial Securities Law Moot Court Competition. Jared was also a staff editor for the *John Marshall Law Review*, an Associate Justice of the Moot Court Executive Board, and served as a teaching assistant in the School's appellate-advocacy program. Jared received his B.S. from the Kelley School of Business at Indiana University.

Jared is admitted to practice in Illinois, the United States District Courts for the Northern District of Illinois and the Northern District of Indiana.

### Villi Shteyn

Villi Shteyn focuses his practice on securities fraud litigation.

Before joining Pomerantz, Villi was employed by a boutique patent firm, where he worked on patent validity issues in the wake of the landmark *Alice* decision, in which the court ruled that an abstract idea does not become eligible for a patent simply by being implemented on a generic computer. He also helped construct international patent maintenance tools for clients and assisted in pursuing injunctive relief for a patent-holder client against a large tech company.

Villi graduated from The University of Chicago Law School (J.D., 2017). In 2014, he graduated *summa cum laude* from Baruch College with a Bachelor of Science in Public Affairs.

Villi is admitted to practice in the State of New York.

### Jennifer Banner Sobers

Jennifer Banner Sobers focuses her practice on securities fraud litigation.

Jennifer played an integral role on the team litigating *In re Petrobras Securities Litigation,* in the Southern District of New York*,* a securities class action arising from a multi-billion-dollar kickback and bribery scheme involving Brazil's largest oil company, Petróleo Brasileiro S.A. - Petrobras. The Firm, as sole Lead Counsel, achieved a historic $3 billion settlement on behalf of investors in Petrobras securities. Among Jennifer' contributions to the team's success were: managing the entire third-party discovery in the United States, which resulted in the discovery of key documents and witnesses; deposing several underwriter bank witnesses; and drafting portions of Plaintiffs' amended complaints that withstood motions to dismiss the claims and Plaintiffs' successful opposition to Defendants' appeal in the Second Circuit, which resulted in precedential rulings.

Jennifer is a key member of the litigation teams of other nationwide cases, including: *In re BP p.l.c Securities Litigation*, the MDL pending in the Southern District of Texas, which are securities fraud lawsuits on behalf of institutional investors in BP p.l.c. to recover losses in BP's common stock (which trades on the London Stock Exchange), arising from BP's 2010 Gulf oil spill and for which the team has successfully opposed several motions to dismiss the claims; *In re KaloBios Pharmaceuticals Inc. Securities Litigation,* pending in the Northern District of California, which secured successful settlements for the Class; and *Perez v. Higher One Holdings, Inc.,* pending in the District of Connecticut, which survived dismissal and was successfully settled, pending court approval.

Prior to joining Pomerantz, Jennifer was an associate with a prominent law firm in New York where her practice focused on complex commercial litigation, including securities law and accountants' liability. An advocate of pro bono representation, Jennifer earned the Empire State Counsel honorary designation from the New York State Bar Association and received an award from New York Lawyers for the Public Interest for her pro bono work.

Jennifer received her B.A. from Harvard University (with honors), where she was on the Dean's List, a Ron Brown Scholar, and a recipient of the Harvard College Scholarship. She received her J.D. from University of Virginia School of Law where she was a participant in the Lile Moot Court Competition and was recognized for her pro bono service.

She is a member of the Federal Bar Council, New York City Bar Association, and New York State Bar Association. She is also a member of the Association of Arbitrators.

Jennifer is admitted to practice in New York, the United States District Court for the Southern District of New York, and the United States Courts of Appeals for the Second and Ninth Circuits.

## Roxanna Talaie

Roxanna Talaie focuses her practice on securities litigation.

As a member of the Firm's investor relations group, she also frequently travels throughout the United States to inform clients on how best to evaluate losses to their investment portfolios attributable to financial fraud or other misconduct. In 2019, Roxanna was recognized as a Lawyer of Distinction, an honor bestowed upon less than 10% of attorneys in any given state.

Roxanna earned a Bachelor of Arts in Political Science from the University of Southern California in Los Angeles, California. She earned her law degree from Pepperdine University School of Law. During her time at Pepperdine, Roxanna participated in Pepperdine's Community Justice Clinic, in which she acted as general counsel for nonprofits, nongovernmental organizations, and other community groups working to promote social justice, human rights and develop economic opportunities and resources for vulnerable, underserved people and communities. She also earned a certificate in Dispute Resolution from Pepperdine's Straus Institute for Dispute Resolution, the highest ranked dispute resolution program in the United States.

Roxanna is admitted to practice in the State of California and the United States District Court for the Northern, Central and Southern Districts of California. She is based in Los Angeles.

## Staff Attorneys

### Átila de Carvalho Beatrice Condini

Átila de Carvalho Beatrice Condini, an international attorney at Pomerantz, focuses on class action securities litigation.

Átila brings to Pomerantz his 13 years' expertise in complex Brazilian federal legal, procedural, and regulatory issues. He is a member of Pomerantz's team for three securities class actions against Brazilian companies: *In re Petrobras Sec. Litig.*, *Manidhar Kukkadapu, et al. v. Embraer, et al.*, and *Banco Safra S.A. - Cayman Islands Branch* v. *Samarco Mineração S.A.* et al.

Átila is a partner (on leave) at the law firm, Condini & Tescari Advogados, in São Paolo, Brazil, where he was responsible for the tax and litigation divisions. Before that, he was an associate and senior associate at two other major Brazilian law firms in São Paolo. During that period, he successfully worked on cases that became benchmarks in the Brazilian legal scenario. In one of them, he prepared a brief in the Extraordinary Appeal nº 559.937, whose thesis was accepted by the Brazilian Supreme Court, reducing the social contribution taxes (PIS / COFINS-Importação) levied on imports. In another case, he defended an advanced interpretation about D&O responsibilities, which was also accepted by the Brazilian Supreme Court in the Extraordinary Appeal nº 562.276.

Átila has also been attentive to social causes, not only practicing pro bono, but also in the human rights field. For example, Átila conducted a legal research project that ultimately resulted in the human rights group, Tortura Nunca Mais, being able to help fund and support the creation of a free virtual library focused on keeping alive Brazilian recent history for future generations. In 2006, Átila received a Bachelor of Laws degree from Pontifical University Catholic of São Paulo ("PUC/SP"). In 2008, he received a specialized law degree in taxation from PUC/SP.

### Timor Lahav

Timor Lahav focuses his practice on securities fraud litigation.

Timor participated in the Firm's securities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole

Lead Counsel, achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings. Timor also participated in the firm's landmark litigation against Yahoo!. Inc., for the massive security breach that compromised 1.5 billion users' personal information.

Timor received his LL.B. from Tel Aviv University School of Law in Israel, following which he clerked at one of Israel's largest law firms. He was an associate at a law firm in Jerusalem, where, among other responsibilities, he drafted motions and appeals, including to the Israeli Supreme Court, on various civil matters.

He received his LL.M. from Benjamin N. Cardozo School of Law in New York. There, Timor received the Uriel Caroline Bauer Scholarship, awarded to exceptional Israeli law graduates.

Timor brings to Pomerantz several years' experience as an attorney in New York, including examining local SOX anti-corruption compliance policies in correlation with the Foreign Corrupt Practices Act; and analysis of transactions in connection with DOJ litigation and SEC enforcement actions.

Timor was a Captain in the Israeli Defense Forces. He is a native Hebrew speaker and is fluent in Russian.

He is admitted to practice in New York and Israel.

**Laura M. Perrone**

Laura M. Perrone focuses on class action securities litigation.

Prior to joining Pomerantz, Laura worked on securities class action cases at Labaton Sucharow. Preceding that experience, she represented plaintiffs at her own securities law firm, the Law Offices of Laura M. Perrone, PLLC.

At Pomerantz, Laura participated in the Firm's securities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings.

Laura has also represented bondholders against Citigroup for its disastrous investments in residential mortgage backed securities, shareholders against Barclays PLC for misrepresentations about its dark pool trading system known as Barclays LX, and shareholders against Fiat Chrysler Automobiles for misrepresentations about its recalls and its diesel emissions defeat devices.

Laura graduated from the Benjamin N. Cardozo School of Law, where she was on the editorial staff of Cardozo's Arts and Entertainment Law Journal and was the recipient of the Jacob Burns Merit Scholarship.

Laura is admitted to practice in the New York State Courts, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second and the Fifth Circuits.

### Samir Sidi

Samir Sidi focuses his practice on securities fraud litigation.

Samir participated in the Firm's securities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings.

Previously, Samir represented plaintiffs in disputes related to a variety of financial investments, including the Federal Home Loan Bank of Seattle and the FDIC in their multi-billion-dollar actions against securities dealers to rescind the purchase of certificates backed by residential mortgage loans. He also represented institutional investors in a securities fraud action against Vivendi Universal (*In re Vivendi Universal, S.A. Sec. Litig.*, 02 Civ. 5571 (S.D.N.Y.)), where in January 2010 the jury returned a verdict that at the time had an estimated value of up to $9 billion.

Samir also served as a judicial intern for the Administrative Office of the Federal Judiciary – Office of Legislative Affairs in Washington, D.C.

Samir received his LL.L. from the University of Ottawa, and his LL.M. in Banking & Financial Law from the Boston University School of Law.

Samir is admitted to practice in New York State.

### Allison Tierney

Allison Tierney focuses her practice on securities fraud litigation.

Allison brings to Pomerantz her 10 years' expertise in large-scale securities class action litigation. She participated in the Firm's securities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings.

Prior to joining Pomerantz, Allison worked on securities class action cases at several top New York law firms, representing institutional investors. She has represented plaintiffs in disputes related to antitrust violations, corporate financial malfeasance, and residential mortgage-backed securities fraud.

Allison earned her law degree from Hofstra University School of Law, where she served as notes and comments editor for the *Cyberlaw Journal*. She received her B.A. in Psychology from Boston University, where she graduated magna cum laude.

Allison is conversant in Spanish and is currently studying to become fluent.

Allison is admitted to practice in New York State.

# EXHIBIT F



## FIRM RESUME

Kendall Law Group was founded by former federal judge Joe Kendall.  It is a boutique trial law firm.  Led by Judge Kendall, the firm brings value-added assistance to their clients in complex class action, securities, and business litigation matters.

Since 2002, in class action securities fraud cases, the lawyers at Kendall Law Group have participated in obtaining over $1 billion dollar for shareholders.  The Kendall Law Group has served as lead, co-lead, or liaison counsel in numerous merger & acquisition, derivative, and securities fraud class action matters, including: *The George Leon Family Trust, Individually and on Behalf of All Others Similarly Situated v. Chicago Bridge & Iron Company N.V., et al.*, Lead Case No. 4:18-cv-0273 (S.D.Tex.); *Mona Abouzied, Individually and on Behalf of All Others Similarly Situated v. Applied Optoelectronics, Inc., et al.*, Civil Action No. 4:17-cv-02399 (S.D. Tex.); *Pedro Ramirez, Jr. Individually and on Behalf of All Others Similarly Situated v. Exxon Mobil Corporation, et al.*, Case No. 3-16-cv-3111-K (N.D. Tex.); *Anthony Giovagnoli, Individually and on Behalf of All Others Similarly Situated v. GlobalSCAPE, et al.*, Case No. 5:17-cv-00753 (S.D. Tex.); *City of Pontiac General Employees' Retirement System, Individually and On Behalf of All Others Similarly Situated v. Hanger, Inc., et al.*, Case No. A-14-CA-1026-SS (W.D. Tex.); *Mary McCloskey, Individually and On Behalf of All Others Similarly Situated v. Match Group, Inc., et al.*, Civil Action No. 3:16-cv-00549-S (N.D. Tex.);  *Anton Steyn, Derivatively on Behalf of 3D Systems Corporation v. Abraham N. Reichental, et al.*, Case No. 2015-CP-46-2225 (16th Judicial Circuit Court of Common Pleas, South Carolina);  *In re United Development Funding IV Securities Litigation,*

1

Master File No. 3:15-cv-4030-M (N.D. Tex.); *Richard J. Isolde, Individually and on Behalf of all Others Similarly Situated, v. Trinity Industries, Inc., et al.*, Civil No. 3:15-CV-2093-K, (N.D. Tex.); *In re EZCORP, Inc. Securities Litigation*, Master File No. 1:15-cv-00608-SS, (W.D. Tex.); *Yochanan Markman, Individually and on Behalf of All Others Similarly Situated, v. Whole Foods Market, Inc., et al.*, Civil Action No. 1:15-cv-00681-LY, (W.D. Tex.);   *In re BP plc Securities Litigation*, Civil Action Nos. 4:10-md-02185, 4:12-cv-3714, 4:12-cv-3715, 4:15-cv-02704, (S.D. Tex.); *Edward Ogden, Derivatively on Behalf of Cobalt International Energy Inc. v. Joseph H. Bryant, et al.*, Civil Action No. 4:15-cv-00139 (S.D. Tex.); *City of Pontiac General Employees' Retirement System v. Dell Inc., et al.*, Civil Action No. 1:15-cv-00374-LY (W.D. Tex.); *Margaret Budde and Daniel Ream, Individually and On Behalf of All Others Similarly Situated v. Global Power Equipment Group, Inc.*, et al., Civil Action No. 3:15-cv-1679-M (W.D. Tex.); *City of Pontiac General Employees' Retirement System v. Hanger, Inc., et al.*, Civil Action No. 1:14-cv-01026-SS (W.D. Tex.); *Jan Buettgen, on Behalf of Himself and All Others Similarly Situated v. Katherine J. Harless, et al.*, Civil Action No. 3:09-cv-00791-K (N.D. Tex.); *In re Key Energy Services, Inc. Securities Litigation*, Civil Action No. 4:14-cv-2368 (S.D. Tex.); *In re Kosmos Energy Ltd Securities Litigation*, Civil Action No. 3:12-cv-373 (N.D. Tex.); *Nasser Moradi, et al., v. Sheldon Gary Adelson, et al.*, Case No. 2:11-cv-490 (D. Nevada); *In re Life Partners Holdings, Inc. Derivative Litigation*, Civil Action No. 2:11-cv-00043 (W.D. Tex.); *Mary K. Jones v. Pfizer Inc., et al.*, Civil Action No. 1:10-cv-03864 (S.D.N.Y.); *Richard Steck v. Santander Consumer USA Holdings Inc., et al.*, Civil Action No. 3:15-cv-2129 (N.D. Tex.); *Justin Pierce and Hillary Kay, Derivatively on Behalf of AT&T Inc. v. Randall L. Stephenson, et al.*, Cause No. DC-14-13645, (193rd District Court, Dallas County, Texas); *Jacob Hulsebus, et al. v. Belo Corp., et al.*, Cause No. DC-13-06601, (68th District Court, Dallas County, Texas); *Ron Phillips and Scott Moorehead,*

2

*Derivatively on Behalf of CLST Holdings, Inc., v. Timothy S. Durham, et al.*, Cause No. DC-10-07655 (134th District Court, Dallas County, Texas); *Regan Held, et al., v. C. Kelly Hall, et al.*, Cause No. CC-11-05258-D, (County Court No. 4, Dallas County, Texas); *David Flecker, Individually and on Behalf of All Others Similarly Situated and Derivatively on Behalf of Pioneer Southwest Energy Partners L.P.*, Cause No. DC-13-05371-G (134th District Court, Dallas County, Texas); *In re U.S. Home Systems, Inc. Shareholder Litigation*, Cause No. CC-12-04962-B (County Court No. 2, Dallas County, Texas); *Terry Neff, Derivatively on Behalf of Weatherford International Ltd., et al., v. Nicholas F. Brady, et al.*, Cause No. 2010-40764 (270th District Court, Harris County, Texas); *In re Burlington Northern Santa Fe Corporation Shareholder Class Action Litigation,* Cause No. 348-241465-09, (348th District Court, Tarrant County, Texas) *In re Affiliated Computer Services Derivative Litigation*, Master File No. 3:06-cv-1110-M (N.D. Tex.); *In re Cablevision Systems Corp. Shareholder Derivative Litigation*, Master File No. CV-06-4130 (E.D.N.Y.); *Ryan v. Flowserve Corp.,* Civil Action No. 3:03-CV-01769 (N.D. Tex.); *Blackmoss Investments v. Gravity Corp., et. al.,* Civil Action No. 1:05-CV-04804-LAP (S.D.N.Y.); *In re Guidant Corp. Securities Litigation*, Master File No. 1:05- CV-01658-SEB-WTL (S.D. Ind.); *In re 7-Eleven Shareholders Litigation*, No. 05-089344-M (District Court Dallas County, Texas); *In re Impac Mortgage Holdings, Inc., Case No.* 8:06-cv-00091-CJC-RNB (C.D. Cal.); *In re Fossil Derivative Litigation*, Cause No. 3:06-cv-01672-P (N.D. Tex.); *Dillingham v. Schmitz,* Cause No. 2005C119934 (288th District Court, Bexar County, Texas); *Alaska Electrical Pension Fund v. Brown, et al.*, Cause No. 6:04-CV-464 (E.D. Tex.); *Holowach v. Gilliland, et al.*, Cause No. 017-221963-07 (17th District Court, Tarrant County, Texas); *Levy Investments v. Donald Steen, et al.,* Cause No. DC-07-00208 (101st District Court Dallas County, Texas); *In re Petco Animal Supplies, Inc., Shareholder Litigation,* Case No. GIC 869399 (Superior Court, San Diego, California); *Frank Capovilla v. Lone*

3

*Star Technologies, Inc., et al.,* Cause No. DC-07-002979 (14th District Court, Dallas County, Texas); *Louis Dudas v. Encore Medical Corporation, et al.,* Cause No. D-1-GN-002495 (345th District Court, Travis County, Texas); *Waggoner v. Ryan, et al,* Cause No. CC-05-13893 (County Court at Law No. 2, Dallas County, Texas); *Evans v. Paulson, et al.,* Cause No. 05-01818-JMR-FLN (D. Minn.); In *re Accuray, Inc. Shareholder Derivative* Litigation, Case No. C 09 05580 CW (N.D. Cal.); *In re Microtune, Inc. Litigation,* Cause No. 219-03729-2010 (219th District Court, Collin County, Texas); *Edward Ferguson v. Louis Raspino, et al*., Cause No. 2010-23805 (281st District Court, Harris County, Texas); *In re Duncan Energy Partners L.P. Shareholder Litigation*, Cause No. 2011-13981 (269th District Court, Harris County, Texas); and others.

4

**JOE KENDALL**

Former United States District Judge Joe Kendall is the managing partner of Kendall Law Group. Mr. Kendall served on the federal bench in the Northern District of Texas from 1992-2002, appointed by President George Herbert Walker Bush. He was unanimously confirmed by the U.S. Senate. At the time of his appointment, he was the youngest U.S. District Judge in the country. He also served as a state district judge on the 195th Judicial District Court in Dallas from 1987-1992. In his judicial career, he has presided over approximately 500 jury trials and disposed of over 11,000 cases. Mr. Kendall has a B.B.A. from the Cox School of Business at Southern Methodist University and a law degree from Baylor University. Mr. Kendall served as a Commissioner on the United States Sentencing Commission from 1999 through 2002, appointed by President Bill Clinton.

Since leaving the bench and returning to trial work, Mr. Kendall has had tremendous success at the prosecution of patent, consumer and securities class action litigation either as lead, co-lead or liaison counsel.

While on the federal bench, Mr. Kendall handled numerous class actions of various types and presided over in excess of 100 civil jury trials, including complex litigation, securities, antitrust, qui tam, medical malpractice, products liability, and patent infringement cases. He presided over a multi-district litigation case, and also handled environmental and CERCLA cases. Author of more than 250 judicial opinions published in the federal reporters or legal research databases, his more notable cases include, *Ozee v. American Council on Gift Annuities* (an antitrust class action against the most prominent charities in the nation), *SBC Communications v. AT&T* (to determine the constitutionality of certain provisions of the Telecommunications Act of 1996), *American Airlines, Inc. v. Allied Pilots Association* (the pilots sickout dispute in 1999), and *Johnson v. City of Dallas* (a case brought by homeless persons to determine the constitutionality of a city ordinance prohibiting

5

sleeping in public).   In his career as a lawyer, Mr. Kendall has tried more than 100 jury trials to judgment.

Additionally, Mr. Kendall taught new federal judges for the Federal Judicial Center in Washington, D.C. and has taught docket management techniques to experienced federal judges throughout the country.  He is a former board member of the Federal Judges Association and was editor of *In Camera*, the newsletter of the Federal Judges Association.

### SIGNIFICANT DECISIONS OF JUDGE JOE KENDALL

| | |
|---|---|
| 1. *Sharju Ltd. Partnership v. Choice Hotels International, Inc.*, Case No. 3:01-CV-2605-X | 2. *Smith v. Nine West Group, Inc.*, Case No. 3:98-CV-1331-X. |
| 3.  *BKS Properties v. Shumate*, 271 B.R. 794. | 4. *Jones v. Prime, Inc.*, Case No. 3:99-CV-1514-X. |
| 5. *Kennedy v. Barnhart*, Case No. 3:00-CV-2472-X. | 6. *Sentry Insurance Co. v. Greenleaf Software, Inc.*, Case No. 3:99-CV-1232-X. |
| 7. *Loosier v. Anderson*, Case No. 3:00-CV-2528-X. | 8. *Poindexter v. R.J. Reynolds Tobacco Co.*, Case No. 3:99-CV-0262-X. |
| 9. *Gibson v. Atlantic Southeast Airlines*, Case No. 3:00-CV-2712-X. | 10. *Whitworth v. TNT Bestway Transportation, Inc.*, Case No. 3:96-CV-0382-X. |
| 11. *Methodist Hospitals v. Prudential Healthcare*, Case No. 3:01-CV-1999-X. | 12. *Media Farm, Inc. v. eToll, Inc.*, Case No. 3:99-CV-2578-X. |
| 13. *McMillon v. Fleming*, Case No. 4:01-CV-815-X. | 14. *In re Great Southern Life Insurance Co. Sales Practices Litigation*, MDL No. 1214. |
| 15. *United States v. Morris*, 176 F. Supp.2d 668. | 16. *Martin v. United States Postal Service*, Case No. 3:99-CV-0670-X. |
| 17. *Smith v. Tarrant County*, Case No. 4:99-CV-0657-X. | 18. *Taylor v. Underwood*, Case No. 3:99-CV-2632-X. |
| 19. *Wilkerson v. Wells Fargo Bank*, Case No. 3:01-CV-0117-X. | 20. *Harrison v. City of Dallas*, Case No. 3:99-CV-1209-X. |
| 21. *Martinez v. 291st Judicial District Court*, Case No. 3:01-CV-1907-X. | 22. *Kondos Employee Health Care Plan v. First Integrated Health, Inc.*, Case No. 3:99-CV-2190-X. |
| 23. *Ventura Vera v. Estrada*, Case No. 3:01-CV-1044-X. | 24. *Jones v. Fujitsu Network Communications, Inc.*, 81 F. Supp.2d 688. |
| 25. *Patt v. Sweetheart Cup Co.*, Case No. 3:99-CV-2443-X. | 26. *Sims v. Ware*, Case No. 3:95-CV-177-X. |

6

| | |
|---|---|
| 27. *Ross v. Massanari*, Case No. 3:00-CV-2454-X. | 28. *United States v. Hughes*, 71 F. Supp.2d 605. |
| 29. *Cunningham v. Gibson*, Case No. 3:01-CV-1522-X. | 30. *American Airlines, Inc. v. Allied Pilots Association*, 53 F. Supp.2d 909. |
| 31. *Ramirez v. Cornet Enterprises, Inc.*, Case No. 3:01-CV-1317-X. | 32. *Barrett v. Clarendon National Insurance Co.*, Case No. 3:93-CV-1451-X. |
| 33. *Collins v. Merck-Medco Prescription Services of Texas*, LLC, Case No. 3:00-CV-1852-X. | 34. *Heritage Worldwide, Inc. v. World Color Press, Inc.*, Case No. 3:96-CV-3356-X. |
| 35. *Cunningham v. Bienfang*, Case No. 3:00-CV-0448-X. | 36. *Seawright v. Charter Furniture Rental, Inc.*, 39 F. Supp.2d 795. |
| 37. *Transamerica Equipment Financial Services Corp. v. Amwest Surety Insurance Co.*, Case No. 3:00-CV-2321-X. | 38. *Lockhart v. AT&T*, Case No. 3:97-CV-3021-X. |
| 39. *Securities & Exchange Commission v. Bachani*, Case No. 3:01-CV-1744. | 40. *Golman-Hayden Co. v. Fresh Source Produce*, 27 F. Supp.2d 723. |
| 41. *Rogers v. Paquet*, Case No. 3:01-CV-0969-X. | 42. *Mayes v. LIN TV*, Case No. 3:96-CV-0396-X. |
| 43. *PriceWaterhouse Coopers, LLP v. Litzler (In re Harbor Financial Group, Inc.)*, Case No. 3:00-CV-1283-X. | 44. *Gossom v. J.O.S., Inc.*, Case No. 3:96-CV-0374-X. |
| 45. *Washington International v. Industry Insurance Co.*, Case No.3:00-CV-0196-X. | 46. *Morse v. Escobedo*, Case No. 3:98-CV-0686-X. |
| 47. *Estep v. Dallas County*, Case No. 3:95-CV-0799-X. | 48. *Richardson v. Apfel*, 9 F. Supp.2d 666. |
| 49. *Seppy v. City of Irving*, Case No.3:00-CV-0386-X. | 50. *Myers v. Top Tobacco Co., L.P.*, Case No. 3:97-CV-2464-X. |
| 51. *Friday v. Halter*, Case No. 3:01-CV-0901X. | 52. *Colbert v. Georgia-Pacific Corp.*, 995 F. Supp. 697. |
| 53. *Rodriguez v. Snider*, Case No. 3:01-CV-0688-X. | 54. *ARA Automobile Group v. Central Garage*, Case No. 3:89-CV-1389. |
| 55. *Kisiel v. RAS Securities Corp.*, Case No. 3:01-CV-0294-X. | 56. *Hanafy v. United States*, 991 F. Supp. 794. |
| 57. *Compana, L.L.C. v. Agile Software Corp.*, Case No. 3:01-CV-1164-X. | 58. *SBC Communications. v. Federal Communications Commission*, 981 F. Supp. 996. |
| 59. *Guan v. Harrington*, Case No. 3:00-CV-2347-X. | 60. *Gonzales v. Johnson*, 994 F. Supp. 759. |
| 61. *Management Insights, Inc. v. APG, Inc.*, Case No. 3:00-CV-2779-X. | 62. *Dippin' Dots v. Mosey*, Case No. 3:96-CV-1959-X. |

7

| | |
|---|---|
| 63. *Zurich Automobile Insurance Co. v. Boyes (In re Zurich Automobile Insurance Co.)*, Case No. 3:99-CV-2350-X. | 64. *Waste Control Specialists v. United States Department of Energy*, Case No. 7:97-CV-202-X. |
| 65. *Dalfort Aerospace, Inc. v. Airline Division of the International Brotherhood of Teamsters*, Case No. 3:01-CV-006-X. | 66. *In re Future Communications, Inc. Securities Litigation*, Case No. 3:93CV-2064X. |
| 67. *Martin Marietta Materials Southwest, Ltd v. St. Paul Guardian Insurance Co.*, 145 F. Supp. 2d 794. | 68. *Venable v. Keever*, Case No. 3:96-CV-0580-X. |
| 69. *Hooks v. Hilite Industries*, Case No. 3:00-CV-2358-X. | 70. *Richie v. American Council on Gift Annuities*, 943 F. Supp. 685. |
| 71. *Weinberg v. Silber*, 140 F. Supp.2d 712. | 72. *Joseph N. Main P.C. v. Electronic Data Systems Corp.*, Case No. 3: 95-CV-1993-X. |
| 73. *Johnson v. City of Dallas*, 141 F. Supp.2d 645. | 74. *United States v. Grant*, 933 F. Supp. 610. |
| 75. *Rose v. Digital Convergence Communications, Inc.*, Case No. 3:00-CV-2057-X. | 76. *Calmes v. United States*, 926 F. Supp. 582. |
| 77. *Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*, Case No. 3:00-CV-1516-X. | 78. *Roberts v. Dayton Hudson Corp.*, 914 F. Supp. 1421. |
| 79. *Johnson v. Dillard Department Stores, Inc.*, Case No.3:00-CV-2674-X. | 80. *McDaniel v. Southern Pacific Transportation*, 932 F. Supp. 163. |
| 81. *Bank One Arizona, N.A. v. Wilton Partners Hurst, et al*, Case No. 3:00-CV-2254-X. | 82. *Burnett Plaza Associates v. NCNB Texas National Bank*, Case No. 3:89-CV-1290-X. |
| 83. *Williams v. GTE*, Case No. 3:00-CV-2380-X. | 84. *Holdbrook v. California Federal Bank*, 905 F. Supp. 367. |
| 85. *Harrison v. GMC*, Case No. 3:00-CV-1272-X. | 86. *Nelson v. Reddy*, 898 F. Supp. 409. |
| 87. *Alfaro v. Leather Center, Inc.*, Case No. 3:00-CV-2107-X. | 88. *Maxus Energy Corp. v. United States*, 898 F. Supp. 399. |
| 89. *Transamerica Equipment Financial Services Corp. v. Amwest Surety Insurance Co.*, Case No. 3:00-CV-2321-X. | 90. *DSC Communications Corp. v. DGI Technologies*, 898 F. Supp. 1183. |
| 91. *Hines v. AC & S, Inc.*, Case No. 3:00-CV-2637X. | 92. *Trinity Industries v. United Steelworkers*, 891 F. Supp. 342. |
| 93. *Chambless v. Travelers Lloyds of Texas Insurance Co.*, Case No. 3:00-CV-784-X. | 94. *Bluebonnet Savings Bank v. Federal Deposit Insurance Corporation*, 891 F. Supp. 332. |
| 95. *Mayfield-George v. Texas Rehabilitation Commission*, Case No. 3:99-CV-2735-X. | 96. *McCratic v. Bristol-Myers Squibb & Co.*, Case No. 3:95-CV-1122-X. |
| 97. *Southwest Materials Handling Co. v. Nissan Motor Co.*, Case No. 3:98-CV-2367-X. | 98. *Finlan v. City of Dallas*, 888 F. Supp. 779. |

8

| 99. *Foster v. Simpson*, Case No. 3:99-CV-2293-X. | 100. *Ozee v. American Council on Gift Annuities*, 888 F. Supp. 1318. |
|---|---|
| 101. *Fina Technologies, Inc. v. Ewen*, Case No. 3:93-CV-2529-X. | 102. *Dallas Fire Fighters Association v. City of Dallas*, 885 F. Supp. 915. |
| 103. *Vation v. Gainey Transportation Services*, Case No.3:99-CV-2388-X. | 104. *Maryland Casualty Co. v. Texas Commerce Bancshares*, 878 F. Supp. 939. |
| 105. *Hulett v. City of Dallas*, Case No. 3:98-CV-2301-X. | 106. *Thornton v. Micrografx*, 878 F. Supp. 931. |
| 107. *Doherty v. Center for Assisted Reproduction, P.A.*, 108 F. Supp.2d 672. | 108. *Scott v. City of Dallas*, 876 F. Supp. 852. |
| 109. *Aegis v. Shared Medical Systems Corp.*, Case No. 3:99-CV-2697-X. | 110. *Johnson v. J.C. Penney Co.*, 876 F. Supp. 135. |
| 111. *Payne v. Powers*, Case No. 3:99-CV-2182-X. | 112. *Black v. Callahan*, 876 F. Supp. 131 |
| 113. *Clear Entertainment, L.L.C. v. KPMG, L.L.P.*, Case No. 3:99-CV-2518-X. | 114. *Clark v. Collins*, 870 F. Supp. 132. |
| 115. *Searcy v. Texas Universal Health Plan, Inc.*, Case No. 3:99-CV-2380-X. | 116. *Figari & Davenport, L.L.P. v. Continental Casualty Co.*, 864 F. Supp. 11. |

**KARL RUPP**

Mr. Rupp's highly specialized practice consists of complex litigation primarily in the federal courts. Licensed in Texas and California, as well as numerous federal trial and appellate courts, including the Federal Circuit and US Supreme Court, Mr. Rupp has personally tried numerous jury trials to judgment and successfully argued before various courts of appeal.

Born in Texas and receiving his legal education in California, Mr. Rupp obtained his California law license in 1993 and in Texas in 2002.  Mr. Rupp was raised in Colombia and reads, writes and speaks Spanish fluently. Mr. Rupp has dual degrees in telecommunications and international relations, and is comfortable communicating with both judges and juries.